UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ESTATE OF KENNETH ANDERSON, JR., | § | |
| KENNETH DARIUS ANDERSON, | § | |
| KRISTEN SANDOVAL, A/N/F OF | § | |
| N.B.A. AND N.K.A., AND ALL | § | |
| WRONGFUL DEATH BENEFICIARIES | § | |
| OF KENNETH ANDERSON JR. | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-cv-3730 |
| | § | |
| HARRIS COUNTY, TEXAS, | § | |
| DEPUTY MOHANAD ALOBAIDI, | § | |
| DEPUTY CRYSTAL ESTRADA, | § | |
| DEPUTY VICTOR PAGE, AND | § | |
| DEPUTY MERCY GARCIA-FERNANDEZ | § | |
| | § | |
| *Defendants.* | § | JURY TRIAL DEMANDED |

**PLAINTIFFS' RESPONSE TO DEFENDANT MERCY GARCIA-FERNANDEZ'S MOTION TO DISMISS ALL CLAIMS IN PLAINTIFFS' FIRST AMENDED COMPLAINT**

Plaintiffs file this Response to Defendant Mercy Garcia-Fernandez's, ("Defendant"), Motion to Dismiss Plaintiffs' First Amended Complaint, and for such would respectfully show the Court as follows:

**I. BRIEF STATEMENT OF POSITION AND NATURE AND STAGE OF PROCEEDINGS**

This is a case of a tragic denial of medical and mental health care desperately needed by Kenneth Anderson, Jr. Harris County deputies intentionally drive-stunned Mr. Anderson immediately after he had been in a single vehicle accident, resulting in his atrocious death. Mr. Anderson did not receive required and necessary medical and mental care after he was drive-

stunned far beyond the recommended maximum of 15 seconds. In fact, he was drive-stunned 12 times. He never should have been drive-stunned in the first place.

This case was filed on November 22, 2021, has not yet been set for trial, and no scheduling order has yet been issued. Plaintiffs have plead violations of 42 U.S.C. § 1983, 4th, 8th, and 14th Amendment claims, negligence, gross negligence, assault and battery, violations of the Americans with Disabilities Act, and violations of the Rehabilitation Act of 1973. Defendant seeks to dismiss all of Plaintiffs' claims. Taking all material facts as true and resolving all inferences in Plaintiffs' favor, the Court should deny Defendant's Motion.

## II.     TEXAS LAW IS CLEAR THAT THE COURT NEED NOT GRANT MOTIONS TO DISMISS

### 1.     RULE 12(b)(6) MOTION TO DISMISS SHOULD BE DENIED

#### A.  RULE 12(B)(6) STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED R. CIV. P. 8(a)(2). A party against whom claims are asserted may move to dismiss those claims when the non-movant has failed "to state a claim upon which relief can be granted." See FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007; *Funk v. Stryker Corp.*, 673 F. Supp. 2d 522, 525 (S.D. Tex. 2009). Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact). *Twombly*, 550 U.S. at 555. "The pleading must contain something more…than...a statement of facts that merely creates suspicion[.]" *Twombly*,

550 U.S. at 555, 556. The court must assume that all material facts contained in the complaint are true and resolve all inferences in the plaintiff's favor.

Further, Rule 12(b)(6) motions are disfavored in light of liberal pleading policies of the Federal Rules of Civil Procedure. *See* "O'Connor's Federal Rules * Civil Trials (2018)," §5.1, p. 232. Under most circumstances, if the court decides to consider extrinsic materials, the motion must be converted into a motion for summary judgment. *See* FED. R. CIV. P. 12(d). Conversion to a summary judgment motion takes place at the court's discretion, when the court affirmatively decides to consider extrinsic materials. *Finlet Lines Joint Prot. Bd. V. Norfolk S. Corp.*, 109 F.3d 993, 996-7 (4th Cir. 1997). If the court converts the motion, the parties must be given notice to prevent unfair surprise and allowed an opportunity to take reasonable discovery. *See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). Under limited circumstances, the court can consider extrinsic materials without converting the motion. *See Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013). The court may be able to consider extrinsic materials such as exhibits, affidavits, matters of public record, or matters taken by judicial notice. *See Miller v. Redwood Toxicology Lab.*, 688 F.3d 928, 931 & n.3 (8th Cir. 2012); *see also Halebian v. Berv*, 644 F.3d 122, 130 n.7 (2nd Cir. 2011 (court can consider documents that either are in Plaintiff's possession or Plaintiff had knowledge of and that Plaintiff relied on in bringing suit)).

Motions to dismiss for failure to state a claim are viewed with disfavor and rarely granted. *Calhoun v. Villa*, 761 Fed. Appx. 297, 299 (5th Cir. 2019). Defendant heavily relies on the footage of the Body Worn Camera ("BWC") footage, stating that it "shows that Garcia did not use excessive force…did not fail to intervene… and did not deprive him of medical care". Defendant's Motion Dkt. No. 70 at ¶ 3. However, when reviewing a motion to dismiss, courts are required to

accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Lindquist v. City of Pasadena*, 525 F.3d 383, 386 (5th Cir. 2008) (internal citations omitted). *See also Richardson v. Axiom Logistics, LLC,* 780 F.3d 304, 306 (5th Cir. 2015). As such, Defendant's attempts to re-frame the case (such as by falsely stating that Plaintiff has no claim under the Texas Tort Claims Act ("TTCA")) for negligence and gross negligence must be disregarded.

"In ruling on an FRCP 12(b)(6) motion, the court must (1) identify allegations that, because they are merely conclusions, are not entitled to an assumption of truth and (2) consider the factual allegations to determine if they plausibly suggest a claim for relief." *See* "O'Connor's Federal Rules * Civil Trials (2018)," §5.1, p. 232 citing *Iqbal*, 556 U.S. at 679; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations," it only "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "This standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *Morgan v. Hubert*, 335 Fed. Appx. 466, 470 (5th Cir. 2009). "All questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor." *Covington v. City of Madisonville, Tex.*, 812 Fed. Appx. 219, 224 (5th Cir. 2020) (reversing grant of motion to dismiss).

**Moreover, when the government or its agents are the defendants, as is the case here, plaintiffs will often not have access to critical information before discovery.** Thus, "only minimal factual allegations should be required at the motion to dismiss stage." *Thomas v. City of Galveston*, 800 F.Supp.2d 826, 842-43 (S.D. Tex. 2011); *Sanchez v. Gomez*, 283 F.Supp.3d 524, 532 (W.D. Tex. 2017); *King v. City of Austin, Tex.*, No. A-16-CA-1020-SS, 2017 WL 1097110, *6 (W.D. Tex. Mar. 21, 2017) (Sparks, J.); *Schaeffer v. Whitted*, 121 F.Supp.3d 701, 718 (W.D.

4

Tex. 2015) (Sparks, J.); *Crisp v. Dutton*, No. A-15-CV-0431-LY-ML, 2015 WL 7076483, *8 (W.D. Tex. Nov. 12, 2015) (Lane, Mag. J.); *Callaway v. City of Austin, Tex.*, No. A-15-CV-00103-SS, 2015 WL 4323174, *9 (W.D. Tex. July 14, 2015) (Sparks, J.). Sufficient allegations can include "misconduct that occurred in the open, multiple officials involved in the misconduct, or the specific topic of the challenged policy of training inadequacy." *Sanchez*, 283 F.Supp.3d at 532 (citing *Thomas*, 800 F.Supp.2d at 843-44).

### III. EVIDENCE OF EXCESSIVE FORCE, FAILURE TO INTERVENE, AND DENIAL OF MEDICAL CARE

Defendant was present at the time Mr. Anderson was tased. Amended Complaint at ¶26. Before this, initially Mr. Anderson was handcuffed and placed into the back of Defendant Cristal Estrada's patrol vehicle at the arrest scene. Estrada then drove into the Faddy's Parking lot with Mr. Anderson still in handcuffs. Amended Complaint at ¶29. Mr. Anderson was moved from Estrada's vehicle to Defendant's vehicle, while he was still in handcuffs and under the control and supervision of four deputies, including Defendant. *Id.*

As stated in the Amended Complaint, Plaintiffs' counsel has only been permitted to see a small fraction of the BWC footage. Amended Complaint at ¶31. However, it is apparent from the footage that Defendant is present during the tasing of Mr. Anderson, and she did not intervene when he was tased 12 times, which was excessive force and in violation of the 4th and 14th Amendment. Amended Complaint ¶104. Defendant was present when Defendant Alobaidi boasted that he tased Mr. Anderson 12 times. Amended Complaint Dkt. No. 30 at ¶31. Defendant was present when the EMS arrived on site and she did not ask that Mr. Anderson be given medical care, in violation of Sherriff's Office policy. Defendant was present when Defendant Alobaidi said that Mr. Anderson should not receive medical care and she did not intervene or ask for Mr. Anderson be provided medical care in violation of the 14th Amendment. Defendant was aware that

5

Mr. Anderson was unresponsive while she read him his DIC-23-25 warnings and she still failed to seek adequate medical care for him. Amended Complaint Dkt. No. 30 at ¶35. In fact, at no point does she report to EMS that he was unresponsive and likely unconscious during her reading.

Defendant was present when Mr. Anderson stated that he "could not breath" to Defendant Page and she did not provide medical attention or intervene in the choke hold that Defendant Page was placing on Mr. Anderson, which was excessive force in violation of the 4th and 14th Amendment. Amended Complaint Dkt. No. 30 at ¶33. Upon information and belief, at all times Defendant was within 25 feet of Mr. Anderson and the other Defendants. Defendant knew that Mr. Anderson's constitutional rights were being violated by the other Defendants, she had a reasonable opportunity to prevent the violation, and she chose to do nothing. Amended Complaint Dkt. No. 30 at ¶104.

Mr. Anderson was arrested at or about 3:30am and was tased 12 times at or about 4:50am, nearly an hour and a half after being arrested and put in custody. Defendant did not ask for medical attention for Mr. Anderson after Mr. Anderson was tased, in violation of Sherriff's Office policy, or after he was placed in a choke hold, or after his unresponsiveness to her reading Mr. Anderson his DIC-23-25. Defendant failed on multiple occurrences to act when she saw Mr. Anderson's 4th and 14th Amendment constitutional rights were being violated and her failure to obtain medical care was in violation of not only Sherriff's Office Policy, but also a violation of Mr. Anderson's 14th Amendment constitutional rights.

Plaintiffs disagree that *Kingsley* does not apply to Defendant. The Fourth and Fourteenth Amendment claims do apply to Defendant. There are disputed facts over whether Mr. Anderson was a pre-trial detainee or an arrestee or both that prevent Defendant's Motion from being granted.

Further, Plaintiffs disagree with Defendant's characterization of the *Valencia* case it cites to try to preclude Mr. Anderson as being treated as a pre-trial detainee. Defendant states that:

> "the Fifth Circuit has provided three conditions to be considered when drawing the line between arrestee and pretrial detainee; specifically, that an arrestee has become a pretrial detainee "*after* the incidents of arrest are completed, *after* the plaintiff has been released from the arresting officer's custody, and *after* the plaintiff has been in detention awaiting trial for a significant period of time." *Valencia,* 981 F.2d at 1444 (5th Cir. 1993) (emphasis in original).

Defendant's Motion Dkt. No. 70 at ¶12.

This is not a correct characterization of *Valencia*. The *Valencia* court actually states ("Graham itself offers no explicit suggestion as to when a Fourth Amendment seizure comes to an end, although its facts indicate that a seizure under the Fourth Amendment does not end the moment the police gain custody and control over a suspect.") *Valencia v. Wiggins,* 981 F.2d 1440, 1449 (5th Cir. 1993).

*Valencia* goes further on to state:

> <u>Precisely when the arrest mode ceases and the pretrial detainment mode begins remains an unanswered question, albeit one of increasingly diminishing importance in excessive force cases</u> given the continued convergence of the various tests under the Fourth, Eighth and Fourteenth Amendments for maltreatment of arrestees, detainees or convicted prisoners, respectively. Under any test, the instant jailhouse altercations occurred well after all incidents of Valencia's arrest had ceased, so an effort to write a bright line of demarcation between arrest and detention here would produce obiter dicta at best. We therefore leave to a future panel the task of addressing that issue when the appropriate factual setting presents itself.

*Id.* at n.44 (emphasis added).

Further, Defendant relies on *Jones v. McIntosh* to support her argument that the violent death caused by all the Defendants does not violate Mr. Anderson's rights because he was not a pre-trial detainee. *See* Defendant's Motion Dkt. No. 70 at ¶14-15 (citing *Jones v. McIntosh*, No 4:15-CV-4462016, 2016 WL 4430481, at *5 (E.D. Tex. Aug. 22, 2016)). This reliance is misplaced.

First, *Jones* is not authoritative in the Southern District and does not bind this Court. In fact, this case has never been cited by any other court let alone the Southern District. Second, the case in fact supports Plaintiffs' position that Mr. Anderson was indeed a pre-trial detainee. The *Jones* court found that the woman who had been arrested and had only been detained for a few minutes, was in fact, a pre-trial detainee and thus, protected by the Fourteenth Amendment. *Jones v. McIntosh*, No 4:15-CV-4462016, 2016 WL 4430481, at n.2 (E.D. Tex. Aug. 22, 2016)

Should the Southern District find this case persuasive it should be noted that Mr. Anderson was arrested at approximately 3:30am, and he was then relinquished by Defendant Cristal Estrada to the custody and control of Defendant Alobaidi and Defendant Garcia. Therefore, Mr. Anderson had been released from the arresting officer's custody. Mr. Anderson was read his DIC-23-25 warnings by Defendant Garcia, nearly an hour and a half after being arrested. Amended Complaint Dkt. No. 30 ¶35. Mr. Anderson was being held in detention awaiting trial in a patrol vehicle when excessive force was used against him.

Defendant has on several occurrences joined on filings with Defendant Harris County, another Defendant in this case, including: certificates and motions. Defendant states that Mr. Anderson is not a pre-trial detainee. However, Defendant Harris County admits on **multiple occasions that Mr. Anderson was in fact a pre-trial detainee**: "He was a pretrial detainee who was under arrest and being transported to the Harris County Joint Processing Center at the time

of his death" and "It is undisputed that Anderson was a pretrial detainee at all relevant times." *See* Dkt. No. 41 at ¶7 & ¶8; *see also* Dkt. No. 47 at ¶18. While Defendants attempt to portray a unified front, it is clear that there is a substantive deviation in arguments. This shows that there are fact issues that only a jury could properly decide, or at the very least, require further review and investigation.

Taking all material facts contained in Plaintiffs' Amended Complaint are true and all inferences are resolved in Plaintiffs' favor, Defendant's motion should be denied.

Plaintiffs have shown all required elements of the Fourth and the Fourteenth Amendment Claims for excessive force. Mr. Anderson sustained multiple injuries, which were a direct result and only from the use of force that was clearly excessive to the need, which was objectively unreasonable.

Mr. Anderson died as a result of his injuries. Amended Complaint at Dkt. No. 30 ¶ 40. His injuries were caused by being placed in a choke hold as well as being tased 12 times. Amended Complaint Dkt. No. 30 at ¶¶ 31 and 33, respectively. This treatment was clearly excessive force. Mr. Anderson had no weapon, he was not a threat to the deputies, he was in handcuffs, and in a patrol vehicle and had been under their supervision for nearly an hour and a half. He was not attempting to harm the deputies. He only wanted a drink of water. This horrible treatment was applied intentionally and with deliberate indifference to Mr. Anderson's constitutional rights. The application of this objectively unreasonable and excessive force ended his life too short. Mr. Anderson was tased 12 times, this is objectively unreasonable. Mr. Anderson was also drive-stunned in violation of HCSO policy, which was also objectively unreasonable. Mr. Anderson was placed in a choke hold this is objectively unreasonable. Although Defendant was present for the entire ordeal, she took no action to intervene, with her assistance, they applied this excessive force,

killing Mr. Anderson. Likewise, Defendant never called for any medical assistance in spite of this objectively unreasonable force being applied and the distress it had caused Mr. Anderson. In fact, Defendant never requested Mr. Anderson receive medical despite her knowledge that Mr. Anderson was unresponsive during her reading of the DIC-23-25 warning.

Finally, Plaintiffs' counsel have not been able to view all of the BWC footage. Amended Complaint Dkt. No. 30 at ¶ 31. Therefore, counsel is unable to address the statement in Defendant's motion that the "footage indisputably shows that Garcia never injured, never used excessive force on Mr. Anderson…" Defendant's Motion Dkt. No. 70 at footnote 1. If Defendants turn over all footage, this matter could be more squarely addressed. However, under Fifth Circuit jurisprudence, Plaintiffs bear no such burden at this early stage, and have adequately alleged causes of action upon which relief can be granted.

### IV. QUALIFIED IMMUNITY DOES NOT SHIELD DEFENDANT

Defendant is not entitled to qualified immunity.[1] Defendant claims she is protected by qualified immunity while Defendant Cristal Estrada failed to make the same argument, and with good reason—this argument wholly fails. *See* Defendant's Motion Dkt. No. 70 at ¶12. The judge-made doctrine of qualified immunity shields a government official from civil liability for damages

---

[1] Plaintiffs respectfully make a good faith argument for the modification of existing law, such that the court–created doctrine of qualified immunity be abrogated or limited. The defense of qualified immunity is, and should be held to be, a legally impermissible defense. In the alternative, it should be held to be a legally impermissible defense except as applied to state actors protected by immunity in 1871 when 42 U.S.C. § 1983 was enacted. Justices including Justice Thomas, Justice Breyer, Justice Kennedy, and Justice Sotomayor have criticized qualified immunity. *See Cole v. Carson*, 935 F.3d 444, 470-72 & n. 1, 10 (5th Cir. 2019) (*en banc*) (Willett, J., dissenting). Additionally, qualified immunity violates the separation of powers doctrine of the Constitution. See generally Katherine Mims Crocker, Qualified Immunity and Constitutional Structure, 117 MICH. L. REV. 1405 (2019) (available at https://repository.law.umich.edu/mlr/vol117/iss7/3). Plaintiffs include allegations in this footnote to assure that, if legally necessary, the qualified immunity abrogation or limitation issue has been preserved.

based on the performance of discretionary functions if the official's acts were objectively reasonable in light of clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The facts established in Plaintiffs' Amended Complaint ¶¶12-106 show actions on behalf of the deputy Defendants that are not objectively reasonable in light of clearly established law. Defendant cannot argue that she did not knowingly violate the law because adequate detail and particularity were pleaded, as established in *Anderson v. Pasadena Independent School District*. *Anderson v. Pasadena Indep. Sch. Dist,*, 184 F.3d 439, 443 (5th Cir. 1999). Courts have stated that identifying that an officer was the one to commit an action like Defendant did, is more than sufficient at the pleading stage, even under the heightened standard applied to public officials sued in their individual capacity. *Huff v. Refugio Cnty. Sheriff's Dep't*, Civil Action No. 6:13-CV-00032, at *6 (S.D. Tex. Oct. 9, 2013) *See, e.g., Shaw v. Hardberger,* 2007 WL 1174202, at *4-5 (W.D. Tex . Apr. 19, 2007) (denying two of the six defendant officers' qualified immunity claims where the two officers were alleged to be present at the altercation); *see also Bias v. Lundy,* 188 F. App'x. 248, 249-50 (5th Cir. 2006) (vacating the grant of qualified immunity as to two officers who were alleged to have attacked the plaintiff but affirming as to four officers where the plaintiff presented no evidence of their involvement in the use of excessive force). Discovery can be used to flesh out further details but at this time Defendant should not be shielded by the doctrine of qualified immunity.

    Defendant clearly violated Mr. Anderson's established constitutional rights. It is clearly established that a pretrial detainee is entitled to reasonable medical care as part of his Fourteenth Amendment due process rights. *Burton v. Cameron Cty, Tex*. 884 F. Supp 234, 238 (S.D. Tex. 1995) (citing *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2D 447, 1979)); *Grabowski v. Jackson Cty*, 47 F.3d 1386, 1396 (5th Cir. 1995). Federal law allows an individual who believes

that his or her constitutional rights have been violated to bring civil action against the government to recover the damages sustained as result of the violation. Specifically, 42 U.S.C. §1983 provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws by any person acting under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory. *Gomez v. Toledo*, 446 U.S. 635, 638 (1980) (internal quotations omitted).

In *Gomez*, the Supreme Court determined that only two elements need to be plead in order to properly assert a cause of action under §1983. First, the Plaintiff must specifically identify the constitutional right of which he or she was deprived and second, that the person who deprived him of that right acted under color of state or territorial law. *Id.* at 638. Defendant knew that Mr. Anderson suffered from a debilitating psychiatric disease. The Rehabilitation Act of 1973 was the first disability civil rights law enacted in the United States. Mr. Anderson was a protected person under the Rehabilitation Act and the Americans with Disabilities Act, and the deliberate denial of medical treatment for PTSD is a violation of these statutes. Defendant knew of Mr. Anderson's protected status and intentionally discriminated against him because of his disability.

Defendant's footnote 1 of her Motion should be disregarded because Defendant cannot deny Plaintiffs' discovery of the BWC footage on the one hand, and then, rely on that same BWC footage to claim that she applied no force to Mr. Anderson's body. On the contrary, Defendant assisted in holding Mr. Anderson down and trying to slam the patrol car door on his legs, which is force, and excessive.

The denial of reasonable medical and mental health care, and other actions and/or inaction, such as failing to provide Mr. Anderson with even a basic check on his vital signs as required by

the HCSO policy, actually caused, proximately caused, and/or were producing causes of Mr. Anderson's suffering, injury, and other damages.

This action and inaction on the part of Defendant is also objectively unreasonable. An officer is "entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). Additionally, a defendant's actions must be egregious and "cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm. *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001). Defendant knew that Mr. Anderson suffered from a debilitating psychiatric disorder, had been tased until he was unconscious, knew he never responded to the DIC 23-25 warnings, and knew he was non-responsive when she failed release him into the custody of emergency medical personnel. Amended Complaint Dkt. No. 30 ¶¶31-35. The actions and inactions of Defendant were objectively unreasonable. If Defendant had acted objectively reasonably and followed the legal rules of the HCSO, Mr. Anderson could very well be alive today. It is clear that Defendant is not entitled to the defense of qualified immunity because her actions were not objectively reasonable.

In the alternative, this Court could issue a narrowly tailored discovery order, similar to that discussed in the *Khansari v. City of Houston* case. In that case, Houston Police Department officers also egregiously tasered the plaintiff, Corey Khansari ("Corey"). *Khansari v. City of Hous.*, 14 F. Supp. 3d, *1-4 (S.D. Tex. 2014) (Lake, J.). However, Corey, thankfully, survived his tasing encounter. *Id.* at *4. Mr. Anderson was not so lucky. Judge Lake discusses the two-step inquiry into whether qualified immunity applies to a particular officer: "(1) whether the plaintiff has alleged a violation of a constitutional right; and (2) whether that right was clearly established at the time of the alleged misconduct." *Id.* at *6 (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct.

13

808, 815-816 172 L.Ed.2d 565 (2009)). Judge Lake ultimately found that the officers' actions, which are remarkably similar to the actions in the case before this Court, were objectively unreasonable and that the officers were not cloaked by qualified immunity. Judge Lake reasoned that the officers disregarded important information regarding circumstances and coordinating their encounters, should have realized that Corey was unarmed, restrained, and failed to present any real threat to anyone, the officers knew that Corey suffered from a mental illness and failed to gauge their conduct accordingly, the force did not relate to a proper assessment of danger including the manner in which the tasers were used, and finally, several officers failed to take reasonable efforts "to stop their fellow Officers from using excessive force and/or failed to take reasonable steps to intervene and protect Plaintiffs from such excessive force." *Id.* at *6-7.

Just as in *Khansari,* in this case, "[t]here is no dispute that the overarching right to be free from excessive force was clearly established when the defendants' interaction with" Mr. Anderson occurred. *Id.* at *10. Further, just as Judge Lake discussed when assessing the Graham factors, the victim, being Corey or Mr. Anderson, posed no immediate threat to anyone's safety, was not resisting arrest or attempting to flee. *Id.* at *11. Judge Lake further cites to *Anderson v. McCaleb*, also similar to the case before this Court. The Fifth Circuit decided that based on the Graham factors, the officer "should have known that he could not continue to shock the suspect with *860 the taser after he was no longer resisting arrest. *Anderson v. McCaleb*, 480 Fed.Appx. 768, 773 (5th Cir.2012) (per curiam).

Plaintiffs have alleged specific facts to satisfy the two-pronged qualified immunity assessment and the Graham factors, and have demonstrated that qualified immunity does not shield Defendant from liability in this case. Thus, Defendant's motion should be denied. In the

alternative, this Court should allow for limited discovery to resolve Defendant's entitlement for qualified immunity for claims arising from force used against Mr. Anderson.

## V. PLAINTIFFS' STATE LAW CLAIMS SHOULD SURVIVE

Plaintiffs have amended their state law claims to provide for further particularity with respect to the various claims they bring against Defendant. While Defendant correctly claims that intentional torts cannot be brought against a governmental unit or employee under the Texas Torts Claims Act, a non-intentional tort is another matter.

Defendant seems to conflate the two types of torts alleged by Plaintiffs and reduces all of Plaintiffs' tort actions to an intentional tort. *See* Defendant's Motion Dkt. No. 70 at ¶ 18-19. This is not a reduction to be taken lightly, nor accepted quickly.

The 5th Circuit Court of appeals has stated: "The gravamen of the claim was excessive force in the shooting, which sounds in intentional tort. …The determinative question is whether the negligence claim arises from the same facts that form the basis of the intentional-tort claim. If so, governmental immunity is not waived." *Quinn v. Guerrero*, 863 F.3d 353, 364 (5th Cir. 2017). In the *Quinn* case, the gravamen of the complaint was the brutal shooting of the plaintiff's son. *Id.* at 356. His negligence and gross negligence claims stem from the shooting. This is not the case in the suit at bar.

Plaintiffs in this matter bring negligence and gross negligence actions against Defendant as a result of Mr. Anderson's restraint in a vehicle he did not want to be in, and the Deputies' negligent or grossly negligent behavior that kept medical personnel from checking Mr. Anderson while he was essentially imprisoned in Defendant Cristal Estrada's vehicle and later Defendant 's vehicle. These actions are separate and apart from the claims brought by Plaintiffs that stem from the brutal tasing and physical violence suffered by Mr. Anderson.

Section 101.02 of the Texas Practices and Remedies Code states:

> Sec. 101.021. GOVERNMENTAL LIABILITY. A governmental unit in the state is liable for:
> (1) property damage, **personal injury, and death** proximately caused by the wrongful act or omission or the negligence of an **employee acting within his scope of employment** if:
> (A) the property damage, personal injury, or death arises from the operation or **use of a motor-driven vehicle** or motor-driven equipment; and
> (B) the employee would be personally liable to the claimant according to Texas law; and
> (2) **personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law**.

TEX. CIV. PRAC. & REM. CODE § 101.02.

Were it not for the Deputies' negligent and grossly negligent actions of keeping Mr. Anderson in Defendant's and Defendant Estrada's vehicle and preventing the EMS crew from fully checking him following the heinous taser and choke hold incidents, Mr. Anderson may be alive today.

Defendant has no immunity. Plaintiffs have in fact, articulated a valid claim for relief against Defendant under the theories of negligence and gross negligence.

Taking all material facts contained in Plaintiffs' Amended Complaint are true and all inferences are resolved in Plaintiffs' favor, Plaintiffs have met their burden and Defendant's Motion should be denied.

Finally, Defendant relies on Section 101.106(f) of the Texas Torts Claims Act ("TTCA"), but this reliance is misplaced. TEX. CIV. PRAC. & REM. CODE § 101.106(f). Defendant should in fact be relying on Section 101.106(e) of the TTCA which states, "[i]f a suit is files under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. &

REM. CODE § 101.106(e) (emphasis added). Subsection (f) describes the situation wherein, "a suit is filed [only] against an employee of a governmental unit…" TEX. CIV. PRAC. & REM. CODE § 101.106(f). Thus, all of Defendant's analysis regarding subsection (f) on at paragraphs 7-11 of her Motion is completely inapplicable to the case before this Court because Plaintiffs have sued both Harris County (a governmental unit) and the deputies (the governmental unit's employees). Defendant Harris County has not filed an affirmative motion as required by Section 101.106(e). Thus, none of the tort claims brought by Plaintiffs against Defendant should be dismissed. Therefore Defendant's motion should be denied.

### VI. <u>PLAINTIFFS SHOULD HAVE LEAVE TO AMEND IF NECESSARY</u>

Plaintiffs have amended their complaint only once. Should the Court be inclined to grant Defendant's motion, Plaintiffs respectfully request leave to amend their Complaint. Federal Rule of Civil Procedure 15 (a)(2) states that the "court should freely give leave [to amend] when justice so requires."

Plaintiffs have not been given full access to review the BWC footage of the deputies nor the footage from the La Ruta food truck that was nearby. Harris County has this footage, and there are relevant facts within the unseen footage that likely need to be incorporated into a second amended complaint.

Facts discovered from watching the footage may confirm that Defendant did or did not hold Anderson down, slam the door on his legs, or it may confirm that she not only failed to intervene but helped hold Mr. Anderson down while he was tased or in a choke hold. These additional facts could be the key to achieving justice for Mr. Anderson's children. Since Plaintiffs' counsel have not had the opportunity to watch the entire footage, counsel requests the ability to

replead, if necessary, after watching the footage. It is also of note that any video footage is by definition public information under Texas law. *See* TEX. GOV'T. CODE §552.002.

Further, Plaintiffs have not been given access to a medical report, an autopsy report, or even a medical finding of cause of death. This Court has rightfully demanded an explanation as to this almost five-month delay in producing these legally required reports, and Defendant Harris County's attorney has represented that she will have an explanation on March 17, 2022.

At this time, without having the ability to watch all footage, read an autopsy report, and amend the Complaint as necessary while discovery is conducted, no one can fully assess all of the events involving Mr. Anderson and his death.

## VII. CONCLUSION

For the above-stated reasons, Plaintiffs respectfully request that this Court deny Defendant's Motion filed under Federal Rules of Civil Procedure 12(b)(6). Plaintiffs further request any other relief to which they may be entitled.

    Respectfully submitted,

**EDWARDS LAW FIRM PLLC**

By: _/s/ George Edwards III_

    George Edwards III
    State Bar No. 24055438
    Fed. Id. No. 1031248
    Eman Patricia Arabi Katbi
    State Bar No. 24092045
    Fed. Id. No. 3355458
    Christine D. Herron
    State Bar No. 24076435
    Fed. Id. No. 3654794
    602 Sawyer Street
    Suite 490
    Houston, Texas 77007
    Phone: (713) 565-1353

Fax: (713) 583-8715  
Email: george@eslawpartners.com  
Email: eman@eslawpartners.com  
Email: christine@eslawpartners.com  
**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

      I certify that all counsel of record who are Filing Users of the Electronic Case Files System of the Southern District of Texas have been served a true and correct copy of the foregoing by electronic submission for filing on March 7, 2022.

George Edwards III