| | | |
|---|---|---|
| ESTATE OF KENNETH | § | |
| ANDERSON, JR., KENNETH DARIUS | § | |
| ANDERSON, KRISTEN SANDOVAL, | § | |
| INDIVIDUALLY, | § | |
| A/N/F OF N.B.A. AND N.K.A., AND | § | |
| ALL WRONGFUL DEATH | § | |
| BENEFICIARIES OF | § | |
| KENNETH ANDERSON JR. | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| | § | |
| VS. | § | **CIVIL ACTION NO. 4:21-cv-3730** |
| | § | |
| | § | |
| HARRIS COUNTY, TEXAS, HARRIS | § | |
| COUNTY SHERIFF'S OFFICE, | § | |
| | | |
| CRISTAL ESTRADA, VICTOR PAGE, | § | |
| MOHANAD ALOBAIDI, AND MERCY GARCIA | § | |
| | § | |
| | § | |
| *Defendants.* | § | **JURY TRIAL DEMANDED** |
| VS. | § | |
| *EVELYN FAY AYERS-WOODS, and KENNETH ANDERSON, SR.* | § | |
| *Intervenor Plaintiffs* | § | |

# EVELYN FAY AYERS-WOODS' AMENDED COMPLAINT AND KENNETH ANDERSON, SR.'S ORIGINAL COMPLAINT IN INTERVENTION

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, Intervenors Plaintiff Evelyn Fay Ayers-Woods and Kenneth Anderson, Sr., and files this Intervenor Complaint, complaining of Harris County, Texas, Harris County Sheriff's Office, Cristal Estrada, Victor Page, Mohanad Alobaidi, and Mercy Garcia, and would respectfully show the Court the following

## I.
## DISCOVERY

1. Intervenors intend for discovery to be conducted under the Court's scheduling order and pursuant to Rules 26 to 37 and Rule 45 of the Federal Rules of Civil Procedure. Due to the complex nature of this case, Intervenors requests that the Court enter a scheduling order considering the complex nature of this case. Further, due to the limited information available at this stage in the litigation, due to the ongoing investigation into Mr. Anderson's death, Intervenors re pleading with the best available information to provide adequate notice of her claims.

## II.
## PARTIES

2. Intervenor Evelyn Fay Ayers – Woods is a natural person who resides in Harris County, Texas. She is the mother of the decedent, Kenneth Anderson, Jr. Intervenor Kenneth Anderson, Sr., is the father of the decedent and a natural person who resides in Harris

County, Texas.

3. Defendant Harris County, Texas ("Harris County") is a Texas County, which may be served via service on its chief executive officer Lina Hidalgo at 1001 Preston, Suite 911, Houston, Texas 77002, or anywhere Defendant may be found. Such service is authorized pursuant to Federal Rule of Civil Procedure 4(j)(2). Harris County, acting through its employees, officer, agents, representatives, or contractors, all of which were operating and acting under color of State law at all relevant times, is liable for such actions and/or omissions and/or failures to act to the full extent of the law. This includes but is not limited to claims pursuant to 42 U.S.C. § 1938, the ADA, and the Rehabilitation Act. Harris County's policies and/or lack thereof, as well as its customs and practices were causes of the constitutional violations and damages alleged in this complaint. Additionally, the County has already appeared in this action and may be served via service upon its counsel of record via the electronic filing system.

4. Defendant Harris County Sheriff's Office ("HCSO") is a Texas law enforcement agency. It may be served via service on the Harris County Sheriff Edward Gonzalez at 1200 Baker Street, Houston, Texas 77002, or wherever it may be found. Such service is authorized pursuant to Federal Rule of Civil Procedure 4(f)(2), as well under applicable Texas state law. Additionally, the agency has already appeared in this action and may be served via service upon its counsel of record via the electronic filing system.

5. Defendant Deputy Cristal Estrada ("Estrada") is an individual who may be served at her residence located at 16106 Gavin Lane, Houston, Texas 77049. Additionally, she has already appeared in this action and may be served via service upon her counsel of record

via the electronic filing system.

6. Defendant Mohanad Aloabaidi is an individual who may be served at his residence located at 8450 Willow Place Drive, N., Apt 1808, Houston, Texas 77070, or wherever he may be found.

7. Defendant Victor Page is an individual who may be served at his residence located at 2730 Fox Pitt Road, Spring, Texas 77386, or wherever he may be found.

8. Defendant Mercy Garcia-Fernandez may be served at her place of work located at 6831 Cypresswood Drive, Spring, Texas 77379 or wherever she may be found.

### III.

### JURISDICTION AND VENUE

9. This Court has original jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 and § 1343(4), because this case involves federal questions and seeks relief pursuant to federal civil rights statues, including 42 U.S.C. § 1983. Venue is proper in the Houston Division of the United States District Court because a substantial part of the events giving rise to this complain occurred in Harris County, Texas, which is in this district and division.

### IV.

### FACTUAL ALLEGATIONS

10. Kenneth Anderson, Jr., was born on December 19, 1978. Tragically, his life was ended on October 10, 2021, a little shy of two months before his 43rd birthday. Mr. Anderson left behind a grieving family, including his parents Evelyn Fay Ayers-Woods and Kenneth Anderson, Sr. Mr. Anderson suffered from mental illness prior to his death, including bi-polar disorder and major depression, along with suicidal ideations. He was also the victim

of two separate shooting instances. Despite these hurdles, he was doing quite well at the time of his death.



11. Prior to his death, Mr. Anderson was involved in a single car accident near 15413 Kuykendahl Road, Houston, Texas 77014. Harris County Sheriff's Deputies were called to the scene to assess the accident.

12. Upon information and belief, Deputies Cristal Estrada, Mohanad Alobaidi, Victor Page, and Mercy Garcia (the "Deputies"), with the Harris County Sheriff's Office, responded to the accident call. After discovering that he had an open Justice of the Peace warrant, for a $297.00 fine for non-appearance related to the offense of not having a valid driver's

license, the Deputies placed Mr. Anderson under arrest. When the Deputies ran his information, they should have noted or been informed that Mr. Anderson was a prior Mental Health Court Defendant. This should have informed the Deputies that Mr. Anderson should have been handled with his mental health disability in mind. Mr. Anderson suffered from numerous mental health issues including major depressive disorder and bipolar disorder.

13. These same mental health records, of which the Deputies were or should have been aware of at the time of the arrest, reflected that Mr. Anderson had previously had a mental health crisis involving self-harm using a vehicle. During that event on March 10, 2017, Mr. Anderson in his crisis state had injured an Officer Rodriguez. That incident was resolved in Felony Mental Health Court. Upon information and belief, the prior record for having injured a peace officer likely influenced Mr. Anderson's treatment at the hands of Defendants. Specifically, his prior injury to a peace officer caused the Defendants to treat him aggressively beyond the normal and acceptable standards for the use of force.

14. Upon information and belief, at 4:35 AM, on the date of his death, Mr. Anderson, was handcuffed, unarmed, and inside the back seat of a patrol vehicle. Because the Deputy or Deputies could not get the door shut, they repeatedly drive stunned Mr. Anderson with a taser. Drive stunning involves making contact with the subject's body with the taser, and then driving the taser into the subject's body. This differs from a normal usage of the taser where a cartridge is fired which then sends two electrode probes attached with wires over a distance. The propelled probes discharge an electrical current when they contact a subject. The drive stun involves both a significant electrical shock being applied but also

significant blunt force trauma. The drive stun is reflected in the Custodial Death Report.[1] The excessive force and unreasonable and unconstitutional use of a drive stun on the unarmed and restrained Mr. Anderson was not only unconscionable but ultimately caused or contributed to his death.

15. Prior to the repeated tasing, Mr. Anderson was placed into the back of Deputy Estrada's car without incident. Deputy Alobaidi ran a JIMS report which showed that Mr. Anderson was a mental health Defendant.

16. Approximately ten to fifteen minutes after later, Mr. Anderson, who is still handcuffed in the back of a patrol car, begins begging for water from the Deputies. In response, Defendant Alobaidi gave Mr. Anderson his personal Chi-Fil-A cup to drink, containing an unknown liquid. This occurred during the middle of a global pandemic. At this point, Mr. Anderson informed Deputy Alobaidi that he had taken a controlled substance earlier in the night. For unknown reasons, the Deputies then decided they would place Mr. Anderson in the back of Alobaidi's patrol vehicle.

17. While placing Mr. Anderson into his patrol vehicle, Deputy Alobaidi told Mr. Anderson "I'll fucking tase you, I don't care." Mr. Anderson was subsequently tased at least 12 times. The first was a drive stun into his upper torso. Mr. Anderson was then drive stunned again for at least 15 seconds over a 19 second period. At approximately 4:51, Alobaidi drive stunned Mr. Anderson for an unreasonable period, to which Mr. Anderson responded with "I can't breathe" and "Help me". In response, Deputy Page called Mr. Anderson a "bitch ass N*****".

---

[1] Exhibit: Custodial Death Report filed with he Texas Office of the Attorney General, at 6-7.

18. At 4:52 Am, while Anderson was slouched over in the back of Alobaidi's car, Deputy Page used a choke hold in violation of his training to get Mr. Anderson to sit up in the vehicle. Mr. Anderson was already slumped over, incapacitated, and in need of medical attention at the time the choke hold was applied.

19. At approximately 4:54 AM, Mr. Anderson is then heard crying "help me" and "I can't breathe" several times. At approximately 4:55 AM Alobaidi brags that he tased Mr. Anderson 12 times.

20. At 5:04 Am, Deputy Garcia reads Mr. Anderson statutory DIC 23-25 warnings and asks if he would like to give blood. Mr. Anderson is non-responsive and unconscious at this point.

21. Upon information and belief, EMS paramedics responded to the scene at approximately 5:08 AM and did a cursory check of Mr. Anderson. EMS asked to do a more thorough vital sign check and to move Mr. Anderson to an ambulance. Deputy Alobaidi refused the request. Mr. Anderson's pulse was not checked and there was no medical evaluation despite that being a requirement after being tasered, and despite him being slumped over, nonresponsive, and demonstrating labored breathing.

22. Around the same time EMS came, Sergeant Joseph Douglas arrived and admonished the Deputies about drive stunning and the recent department memo instructing them not to drive stun.

23. Upon information and belief, Mr. Anderson arrived at the Harris County Jail Joint Processing Center at around 5:47 AM and was found to be unresponsive. Deputy Garcia questions whether Anderson is still alive, and Deputies Garcia and Alobaidi pull his

unresponsive body out of their car.

24. Upon information belief, around 6:09 AM on the date of death, the Houston Fire Department came to attend to Mr. Anderson. Mr. Anderson had been unresponsive for at least twenty (20) minutes by the time they responded. It is unclear at what point they actually began treatment. Mr. Anderson was subsequently transported to St. Joseph Medical Center. Upon information and belief, no aid was rendered to Mr. Anderson during the period between when he was first found non-responsive and when the Houston Fire Department arrived.

25. Upon information and belief, Mr. Anderson was pronounced dead at approximately 7:28 AM at St. Joseph's Medical Center. He never left the custody of Harris County Employees from the time he was first contacted by Harris County Deputies until he died. Unfortunately, and tragically, Mr. Anderson is not the first person to die in Harris County custody. Since 2005 there have been at least 233 deaths in Harris County custody.

26. Currently, Intervenors are awaiting the results of the autopsy as well as the results of the HCSO investigation.

27. Mr. Anderson was unfortunately not the first person to be improperly tased by Harris County Deputies. In a review of Sheriff's Office reports of Taser usage, deputies appear to be not following national guidelines or product warnings in three key areas: stunning suspects in the chest, using Tasers against people who aren't physically resisting and stunning subjects multiple times.[2] In just a two year period, Harris County deputies tased 621 suspects including 30 in the upper torso area. Since 2009, the Taser manufacturer has warned law enforcement agencies to

---

[2] https://www.chron.com/news/houston-texas/article/Taser-warnings-go-unheeded-among-Harris-County-2081970.php

avoid stunning suspects in the upper chest, to alleviate the dangers of causing a cardiac arrest. Tasers should only be deployed "against persons who are actively resisting ... or exhibiting active aggression" according to guidelines developed by the Police Executive Research Forum and the Justice Department.[3] Deputies stunned at least 43 suspects three or more times, including 10 incidents in which two or more deputies used their Taser on a suspect at the same time, the reports show. In July of 2010, a deputy stunned one DWI suspect — later found to be high on PCP - 24 times, and other suspects have been stunned 12, 8 or six times, county records show. One 17-year-old auto theft suspect was shocked at least six times, including a final jolt in the groin.[4] Few deputies, if any, are penalized for violating the department taser guidelines or those of the taser manufacturer. Aside from Mr. Anderson, Herman Rochan Barnes, 31, an African-American man with a history of mental problems who died after he was stunned 32 times by three Harris County deputies who entered his home in October 2006.

28. Taser's own guidelines state the following:

> "If person is NOT immediate threat or flight risk, Avoid CEW Use:
> • Without first attempting verbal de-escalation, commands, or physical skills
> • On person known or perceived to be emotionally disturbed or mentally ill
> • On elevated risk populations
> • For pain compliance if pain foreseeably ineffective due to ↑ tolerance from drugs, alcohol, or psychosis
> Monitor subject post-CEW; if unresponsive, initiate EMS/CPR protocols
> • Avoid repeated, extended, or continuous exposures beyond 15 seconds absent reasonably perceived immediate threat and ↑ justification
> Avoid using CEW drive (touch/contact)-stun except:
> - "break-contact" or distraction tactic when assaulted or tied up with subject
> - brief application to attempt pain-compliance; must give reasonable time and opportunity to comply
> If no exigency or immediate safety risk exists, slow down and consider alternative force options/solutions including negotiation, commands, or physical skills.
> • Physical resistance alone does not equal an immediate safety risk.
> • Emotionally disturbed person (EDP) or mentally ill, by itself, does not indicate an immediate threat.
> • Choose a force option reasonably likely to cure the immediate safety risk.

---

[3] Id.
[4] Id.

• Avoid repeated drive-stuns if compliance is not achieved, particularly with EDPs"[5]

29. Deputy Alobaidi clearly disregarded the instructions and warnings provided by Taser, and the other Deputies did nothing to stop him and instead taunted Mr. Anderson. Further, Harris County has repeatedly used Tasers improperly, disproportionately on minorities and against people with known mental health conditions. Given the fact that there are numerous reported incidents where Harris County Deputies disregarded the Taser guidelines and warnings, the Justice Department guidelines, and Harris County's own guidelines, and there have been almost no punishment or consequences, it is clear that Harris County and the Harris County Sheriff's Office condone and endorse the behavior of the Deputies.

## V.

## CAUSES OF ACTION AGAINST ALL DEFENDANTS

### A. LOSS OF CONSORTIUM

29. Intervenors incorporate the previous paragraphs by reference. Texas Court's allow for recovery for loss of consortium for parents of children who are killed by the actions of others. Specifically, the Texas Supreme Court has ruled that it is permissible for a "plaintiff to recover damages for loss of companionship and society and damages for mental anguish for the death of his or her child" *Sanchez v. Schindler*, 651 S.W.2d 249, 251 (Tex. 1983)

30. The loss of consortium claims include all violations of Mr. Anderson's rights that resulted in his death, including the constitutional, statutory, and common-law violations discussed throughout this complaint. Accordingly, Intervenors seek all loss of consortium damages permitted by law

---

[5] Exhibit: Taser Guidelines

## B. WRONGFUL DEATH

31. Intervenors incorporates the previous paragraphs by reference. The Texas Wrongful Death Act provides as follows:

> "Sec. 71.002. CAUSE OF ACTION. (a) An action for actual damages arising from an injury that causes an individual's death may be brought if liability exists under this section.
>
> (b) A person is liable for damages arising from an injury that causes an individual's death if the injury was caused by the person's or his agent's or servant's wrongful act, neglect, carelessness, unskillfulness, or default."

Tex. Civ. Prac. & Rem. Code §71.002. Defendants are jointly liable through agency and vicarious liability pursuant to the Wrongful Death Act. Tex. Civ. Prac. & Rem. Code §§71.001-71.004. Intervenors, as the parents of Mr. Anderson, is entitled to bring the wrongful death claim. *Id*. Intervenors seek all permitted damages under her claim, including loss of companionship, mental anguish, and pecuniary losses.

## C. NEGLIGENCE

32. Intervenors incorporate the previous paragraphs by reference. The officers and employees of the governmental defendants acted within the course and scope of their employment and accordingly all defendants are jointly and severally liable under the Texas Torts Claims Act. The Defendants owed Mr. Anderson a legal duty of care while he was in their custody. They breached that duty by assaulting him, using excessive force, failing to timely and properly render aid, and by failing to follow the applicable Harris County Sheriff's

Office policies on the reasonable use of force.[6] Further the force used against Mr. Anderson was in violation of the Texas Penal Code.[7] The failure to abide by the Texas Penal Code and the HCSO's policies related to the use of force against Mr. Anderson eliminates the defense of qualified immunity for the defendants. Further, the shocking failure to render aid to a restrained, battered, and electrocuted citizen in state custody is further justification to remove the qualified immunity defense for the defendants. These actions and/or omissions constitute negligence for which Intervenors are entitled to recover all damages allowed by law.

## V.

## CAUSES OF ACTION AGAINST HARRIS COUNTY AND THE HARRIS COUNTY SHERIFF'S OFFICE

### A. VIOLATIONS OF THE 4th, 8th, and 14th AMENDMENT AND 42 U.S.C. § 1983

33. Intervenors incorporates the previous paragraphs by reference. The officers, deputies, and employees of Harris County and the HCSO, at all pertinent times were acting in the course and scope of their duties for Harris County and the HCSO. Accordingly, Harris County and the HCSO are vicariously liable for their actions.

34. The actions by the individual defendants violated the Fourth, Eight and Fourteenth Amendments of the United States Constitution through unreasonable force and unreasonable seizure.

35. Mr. Anderson while restrained in handcuffs and placed in the back of a patrol vehicle, was not a threat, nor could he have easily been mistaken or interpreted as a threat to the officers and/or deputies that responded. Whether or not Mr. Anderson was cooperative in closing the door is

---

[6] HCSO Policies 501 and 503.
[7] Tex. Pen. Code § 9.31(b) and 9.34(a)

irrelevant. The offices do not have lawful authority to use potentially deadly force, such as a contact drive stun, just because a restrained citizen is not complying fast enough for their liking. The very fact that he was drive stunned rather than being tased from a distance illustrates that the officers were not afraid of him and did not consider him a real threat. A basic failure to appear warrant for a justice court traffic ticket is not a sufficient justification to use potentially deadly force on a citizen, particularly one who is already restrained. This case appears to be a situation where the officers were just unhappy with Mr. Anderson's timeliness in responding to their demands to shut the patrol car door. The officer should have talked to Mr. Anderson and de-escalate the situation, but instead because they weren't getting immediately compliance to an order that was not intended to mitigate a threat, they decided to show Mr. Anderson who was the boss and use excessive force. The officers and deputies purported to be operating under color of law, and accordingly the governmental entity defendants are liable.[8]

36. Harris County and the Harris County Sheriff's Department either condoned or ratified the following unlawful behavior on the part of their deputies and employees:

   a. Using and/or deploying excessive force
   b. Inadequate training or supervision of their deputies and employees on the reasonable use of force;
   c. Inadequate training or supervision of their deputies and employees on de-escalation of force;
   d. Inadequate training or supervision of their deputies and employees on basic use of force;
   e. Inadequate training or supervision of their deputies and employees on taser deployment
   f. Inadequate training or supervision of their deputies and employees on identifying and addressing citizens with mental health or behavioral issues;

---

[8] *Monell v. New York City Dept. of Social Services*, 463 U.S. 658, 694 (1978).

g. Inadequate training or supervision of their deputies and employees on identifying violent or threatening subjects

h. Inadequate training or supervision of their deputies and employees on properly rendering aid to subjects in custody

i. Failing to properly screen officers before hiring them;

j. Failing to terminate officers who violated policies, procedures, laws, or the United State Constitution; and

k. Encouraging the use of force to gain compliance from non-violent and restrained subjects

37. The failures of Harris County and the Harris County Sheriff's Office to address the issues outlined above through training, policies, procedures, personnel actions, or in any other manner resulted in a condition where Harris County and the HCSO knew that they could not and would not protect the constitutional rights of the citizens of Harris County, including Mr. Anderson. The Defendants knew that the unreasonable use of force and failure to render aid would result in injury and potentially death to Mr. Anderson. The actions by the Defendants show a continuing and deliberate lack of care for Mr. Anderson's well-being and life.

38. There is no justification or excuse for using the level of force that was used on Mr. Anderson, nor any justification or excuse for leaving him unresponsive, restrained, and without basic first aid for over a half an hour.

39. Unfortunately, Mr. Anderson is not the first person of color to be seriously injured or killed by the governmental defendants and their officers, so Harris County and the HCSO understood their policies and procedures, and lack of proper training and supervision could result in Mr. Anderson's death.

40. The failure to properly train and supervise the individual deputies, officers, and employees likewise violated Mr. Anderson's rights under the 4th and 14th Amendment and 42 U.S.C. § 1983.

41. The objectively unreasonable use of force against Mr. Anderson, and the failure to protect, and failure to render medical care and aid constituted a violation of his 14th Amendment right to due process under 42 U.S.C. § 1983.[9] Harris County and the HCSO are not first-time offenders when it comes ot the use of excessive force. Using a taser by striking Mr. Anderson repeatedly against the manufacturer's guidelines, while he was already restrained and in a patrol car, was and objectively unreasonable use of force

42. The failure to provide proper aid and medical care to Mr. Anderson violated his rights to due process under the 14th Amendment and 42 U.S.C. § 1983. Mr. Anderson should have been provided adequate aid and medical care while he was detained. Instead, he was punished by being left unresponsive and restrained for an extended period of time, while in the custody of Harris County and the HCSO. Mr. Anderson was not a convict, and was merely a detainee at all pertinent times, and was owed protection, medical care, and aid, all of which he was denied under color of law. Both Harris County and the HCSO were deliberately indifferent and objectively unreasonable in their policies, procedures, and actions with regards to provided aid, protection and care to Mr. Anderson.

### B. VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT AND REHABILITATION ACT OF 1973

43. Both Harris County and the HCSO are the recipients of federal funds, in a myriad of ways.

---

[9] *Kinglsey v. Henderson*, 135 S. Ct. 2466 (2015); *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415 (5th Cir. 2017)

Accordingly, they are both subject to the Americas with Disabilities Act, including Title II of the act, and the Rehabilitation Act. Accordingly, both Harris County and the HCSO are required to reasonably accommodate individuals with disabilities, including mental disabilities. These reasonable accommodations must include modifying facilities, services, and programs to achieve the goals of the acts. Harris County's Central Processing Center is a governmental facility, and its operation constitutes services for the purpose of both acts.

44. Mr. Anderson, who had documented mental health disabilities, of which Harris County and the HCSO were both aware, is a qualified person under both acts, and is therefore legally considered disabled.

45. Intentional discrimination can be shown by deliberate indifference on the part of the defendants, based on the law of several circuits, and intent can also be shown in this case.

46. The ADA and Rehabilitation Act violations occurred, when the defendants, failed to provide reasonable medical care to Mr. Anderson, and failed to make reasonable accommodations to address his mental health, as well as the acute health incident directly caused by the "services" provided to Mr. Anderson by defendants. Immediate care and aid were available, and the defendants chose not to accommodate Mr. Anderson and provide such care and aid. The defendants deliberately chose to ignore Mr. Anderson's mental disability and rather than de-escalate the situation, used deadly force on him, and then deliberately failed to provide aid and medical care. Such actions violated both the ADA and Rehabilitation Act. Further the defendants deployed a taser against the guidelines from the manufacturer against a person with mental illness.

# VI. CAUSES OF ACTION AGAINST THE INDIVIDUAL DEFENDANTS

## A.

## 4th AMENDMENT VIOLATIONS, ASSAULT AND BATTERY, AND FAILURE TO INTERVENE, AND CLAIMS UNDER 42 U.S.C. § 1983.

47. Intervenors incorporates the prior factual allegations. The deputies, violated Mr. Anderson's 4th Amendment rights by using excessive force, as outline above, and failed to render proper medical treatment. These actions and/or omissions are also actionable under 42 U.S.C. § 1983.

48. The individual defendants also committed the state common law torts of assault and battery on Mr. Anderson, and also aided and abetted each other in committing these torts.

49. The individual defendants, as bystanders, also failed to intervene to stop the use of excessive force against Mr. Anderson in violation of 42 U.S.C. § 1983 and the associated case law.

# VII.

# JURY DEMAND

50. Intervenors demand a jury trial on all issues which may decided by a jury as trier of fact.

# VIII.

# PRAYER

Intervenors intend to and will use all documents produced or provided in pretrial discovery, pleadings, public information, Intervenors request that Defendants be cited to appear, and that Intervenors be awarded all allowable damages within the jurisdictional limits of this court and

as allowed by law, statutory attorney's fees as provided by 42 U.S.C. § 1983 and 1988, the ADA, and Rehabilitation Act, all costs of court, reasonable and necessary attorney's fees, expert witness fees and expenses, pre-judgment and post judgment interest at the highest allowable rate, and for all other relief to which Intervenors may be justly entitled.

Respectfully submitted,

By: /s/ *Jason Scofield*
JASON P. SCOFIELD
BAR#24060578
4900 Fournace, Suite 618
Bellaire, Texas 77401
(713) 224-6508
(713) 225-1560 Facsimile
(512) 626-5810 Cell
Jasonpscofield@gmail.com
**ATTORNEY FOR INTERVENORS**

## CERTIFICATE OF SERVICE

       This is to certify that a true and correct copy of the above pleading was served by United States Certified Mail, return receipt requested, postage prepaid, and/or by fax and/or by hand delivery and/or electronically through the electronic filing manager (ECF) and/or by email by upon all counsel of record on January 12, 2022: