UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ESTATE OF KENNETH ANDERSON, JR., KENNETH DARIUS ANDERSON, KRISTEN SANDOVAL, A/N/F OF N.B.A. AND N.K.A., AND ALL WRONGFUL DEATH BENEFICIARIES OF KENNETH ANDERSON JR. | § § § § § § § § | |
| *Plaintiffs,* | § § | |
| VS. | § § | CIVIL ACTION NO. 4:21-cv-3730 |
| HARRIS COUNTY, TEXAS, DEPUTY MOHANAD ALOBAIDI, DEPUTY CRYSTAL ESTRADA, DEPUTY VICTOR PAGE, AND DEPUTY MERCY GARCIA-FERNANDEZ *Defendants.* | § § § § § § § § | |
| | § | JURY TRIAL DEMANDED |

## PLAINTIFFS' RESPONSE TO DEFENDANT HARRIS COUNTY'S POST-COURT ORDERED DISCOVERY RULE 12(b)(6) MOTION TO DISMISS

# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ....................................... 2

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 570 (2007) ................................................................................................ 2

*Bolden v. Se. Pa. Transp. Auth.*,
  953 F.2d 807, 813 (3rd Cir. 1991) ................................................................................... 9

*Brazier v. Cherry*,
  293 F.2d 401 (5th Cir. 1961) ....................................................................................... 5, 6

*City of Fort Worth v. Chattha*,
  No. 02-11-00342-CV (Tex. App. Fort Worth February 16, 2012) ................................ 7, 8

*Clatterbuck v. City of Charlottesville*,
  708 F.3d 549, 557 (4th Cir. 2013) .................................................................................. 3

*Deshaney v. Winnebago Cty. Soc. Servs. Dept*,
  489 U.S. 189, 200 (1989) .............................................................................................. 10

*Finlet Lines Joint Prot. Bd. V. Norfolk S. Corp.*,
  109 F.3d 993, 996-7 (4th Cir. 1997) ................................................................................ 2

*Fitchik v. N.J. Transit Rail Operations*,
  873 F.3d 655, 659 (3rd Cir. 1989) ................................................................................... 9

*Funk v. Stryker Corp.*,
  673 F. Supp. 2d 522, 525 (S.D. Tex. 2009) ..................................................................... 2

*Gordon v. City of Watauga* ............................................................................................... 4
  434 S.W.3d at 589

*Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt*,
  721 F.3d 264, 281 (4th Cir. 2013) .................................................................................. 3

*Halebian v. Berv*,
  644 F.3d 122, 130 n.7 (2d Cir. 2011) .............................................................................. 3

*Howard v. City of Houston* ............................................................................................... 5
  2022 WL 479940, at *11 (S.D. Tex. Feb. 16, 2022)

*Miller v. Redwood Toxicology Lab.*,
  688 F.3d 928, 931 & n.3 (8th Cir. 2012) ......................................................................... 3

*PHI, Inc. v. Tex. Juv. Just. Dep't*,
  593 S.W.3d 296, 303 (Tex. 2019) ................................................................................... 9

*Quinn v. Guerrero*,
    863 F.3d 353, 364 (5th Cir. 2017) .................................................................................. 11

*Ryder Integrated Logistics, Inc v. Fayette Cnty.*,
    453 S.W.3d 922, 929 (Tex. 2015) (per curiam) ............................................................. 10, 11

*Tex. Natural Res.Conservation Comm'n v. White,*
    46 S.W.3d 864, 869 (Tex. 2001) ...................................................................................... 8

**CONSTITUTIONAL PROVISIONS & STATUTES**

42 U.S.C. § 1981a............................................................................................................. 13

42 U.S.C. § 1983 ............................................................................................................... 1

42 U.S.C. § 1988 ............................................................................................................... 6

42 U.S.C. § 2000e-16 ........................................................................................................ 13

TEX. CIV. PRAC. & REM. CODE § 101.02 ......................................................................... 7

TEX. CIV. PRAC. & REM. CODE § 101.02(1)(A) ............................................................... 7

TEX. CIV. PRAC. & REM. CODE § 101.06(e) ..................................................................... 4

TEX. CIV. PRAC. & REM. CODE § 102.002(a)-(b) ............................................................ 12

TEX. PENAL CODE ANN. § 22.01(a) ............................................................................... 4, 5

**RULES & REGULATIONS**

FED. R. CIV. P. 12(d) ........................................................................................................ 2

FED. R. CIV. P. 5(b)(2) ...................................................................................................... 14

FED. R. CIV. P. 8(a)(2) ...................................................................................................... 2

FED. R. CIV. P. 12(b)(1) & 12(b)(6) .................................................................................. 1

FED. R. CIV. P. 12(b)(6) ............................................................................................ 2, 3, 12, 13

FED. R. EVID. 201 ............................................................................................................. 3

FED. R. EVID. 201(b)(1)-(2) ............................................................................................. 3

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiffs, Estate of Kenneth Anderson, Jr., Kenneth Darius Anderson, and Kristen Sandoval a/n/f of N.B.A. and N.K.A. (the "Plaintiffs") file this Response to Defendant Harris County's Post-Court Ordered Discovery Rule 12(b)(6) Motion to Dismiss (the "Motion" or the "Renewed Motion") pursuant to 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 167). In support of said opposition, Plaintiffs would respectfully show the Court as follows:

Defendant Harris County ("Defendant") has moved under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss seven of Plaintiffs' claims: loss of consortium; wrongful death; survival; negligence; gross negligence; assault and battery; vicarious liability under 42 U.S.C. § 1983, and 8th Amendment *Monell* claims under 42 U.S.C. § 1983 ("Section 1983"). Defendant has also asserted that exemplary and punitive damages against Defendant cannot be recovered for Section 1983 and for claims covered by the Texas Torts Claims Act ("TTCA").

**Defendant Does Not Challenge Various Claims Made by Plaintiff in its Renewed Motion.** Significantly, Defendant has not moved to dismiss Plaintiffs' claims for: (1) 4th and 14th Amendment Excessive Force/Unreasonable Seizure Claims under 42 U.S.C. § 1983; (2) 4th and 14th Amendment Monell claims under 42 U.S.C. § 1983; (3) 4th and 14th Amendment violations under 42 U.S.C. § 1983: Failure to Train; (4) 4th and 14th Amendment violations under 42 U.S.C. § 1983: Failure to Supervise; (5) 4th and 14th Amendment violations under 42 U.S.C. § 1983 Pursuant to Kingsley v. Hendrickson; (6) 14th Amendment violations under 42 U.S.C. § 1983: Failure to Provide Reasonable Medical and/or Mental Health Care; and (7) violations of the Americans with Disabilities Act and Rehabilitation Act of 1973. Therefore, these claims are not discussed in this Response and remain pending.

Defendant's arguments as to loss of consortium, wrongful death, survival, negligence, gross negligence, assault and battery (the "state law claims") are baseless. Defendant can be liable for the aforementioned claims because the TTCA provides that if a motor vehicle or personal property is used in the commission of the tort,

Defendant waives its governmental immunity. Plaintiffs properly plead the state law claims against Defendant. Taking all material facts as true and resolving all inferences in Plaintiffs' favor, the Court should deny Defendant's Renewed Motion as to Plaintiffs' state law claims.

## I. RULE 12(B)(6) STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED R. CIV. P. 8(a)(2). A party against whom claims are asserted may move to dismiss those claims when the non-movant has failed "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Funk v. Stryker Corp.*, 673 F. Supp. 2d 522, 525 (S.D. Tex. 2009). Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact). *Twombly*, 550 U.S. at 555. "The pleading must contain something more… than… a statement of facts that merely creates suspicion[.]" *Twombly*, 550 U.S. at 555, 556. The court must assume that all material facts contained in the complaint are true and resolve all inferences in the plaintiff's favor. Further, Rule 12(b)(6) motions are disfavored in light of liberal pleading policies of the FRCPs. *See* "O'Connor's Federal Rules * Civil Trials (2018)," §5.1, p. 232. "Where a complaint pleads facts that are <u>merely consistent with a defendant's liability</u>, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (internal quotations omitted) (emphasis added).

Under most circumstances, if the court decides to consider extrinsic materials, the motion must be converted into a motion for summary judgment. *See* FED. R. CIV. P. 12(d). Conversion to a summary judgment motion takes place at the court's discretion, when the court affirmatively decides to consider extrinsic materials. *Finlet Lines Joint Prot. Bd. V. Norfolk S. Corp.*, 109 F.3d 993, 996-7 (4th Cir. 1997). If the court converts the

motion, the parties must be given notice to prevent unfair surprise and allowed an opportunity to take reasonable discovery. *See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt*, 721 F.3d 264, 281 (4th Cir. 2013). Under limited circumstances, the court can consider extrinsic materials without converting the motion. *See Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013). The court may be able to consider extrinsic materials such as exhibits, affidavits, matters of public record, or matters taken by judicial notice. *See Miller v. Redwood Toxicology Lab.*, 688 F.3d 928, 931 & n.3 (8th Cir. 2012); *see also Halebian v. Berv*, 644 F.3d 122, 130 n.7 (2d Cir. 2011) (court can consider documents that either are in Plaintiff's possession or Plaintiff had knowledge of and that Plaintiff relied on in bringing suit). At this time, the Court is requested to take judicial notice pursuant to Rule 201 of the Federal Rules of Evidence of Plaintiffs' Exhibits 1 and 2. Specifically, Exhibit 1 is a public document from the United States Department of Justice regarding an investigation into the Harris County Jail, and Exhibit 2 is likewise a public document from the Texas Office of Inspector General Monthly Comparison and Performance Report related to the use of force in Harris County, Texas. *See Ex. 1 and Ex. 2 respectively.* These documents are entitled to judicial notice because they contain information that is generally known within the trial court's territorial jurisdiction and the information shown on the documents can be accurately and readily determined from public sources. *See* FED. R. EVID. 201(b)(1)-(2).

## II. PROCEDURAL DEFECTS

Defendant's Motion is not timely and should therefore be denied in its entirety. While Defendant is correct in stating that in this Court's August 29, 2022 Order, the Court stated, "Defendants may refile their Motions to Dismiss upon the completion of said discovery[,]" there still are reasonable time limitations on Rule 12(b)(6) motions. Order Denying Defendants' Motions to Dismiss (Dkt. No. 120). <u>Rule 12 requires said motions to dismiss to be filed within twenty-one days of the service of the complaint upon a defendant.</u> FED. R. CIV. PROC. R. 12. A reasonable interpretation of the Court's August 29, 2022 order is that Defendant could refile its Motion to Dismiss within twenty-one days of the completion of the referenced discovery. This twenty-one-day period began to run on March 17, 2023, when this Court issued its Scheduling Order, thus initiating general

discovery. Scheduling Order (Dkt. No. 158). Thus, Defendant's twenty-one-day period lapsed on April 7, 2023. Defendant filed its Motion on April 20, 2023, over a month after the Scheduling Order was entered. Defendant was dilatory in filing its Motion and should have done so within twenty-one days of the Scheduling Order. Therefore, Plaintiffs respectfully request that this Court deny Defendant's Motion in its entirety.

### III. STATE LAW CLAIMS SHOULD SURVIVE

#### A. CERTAIN TORT LAW CLAIMS AGAINST THE DEPUTIES SHOULD BE PRESERVED

While Defendant moved under the TEX. CIV. PRAC. & REM. CODE § 101.06(e) as to all of Plaintiffs' tort claims, Plaintiffs' intentional tort claims should be preserved as against Defendants Mohanad Alobaidi, Victor Page, Cristal Estrada, and Mercy Garcia-Fernandez (the "Deputy Defendants"). Plaintiffs have adequately plead the intentional torts with the requisite specificity as to Defendant and Deputy Defendants. Should this Court dismiss the intentional torts as to the Deputy Defendants, Plaintiff would have no recourse to recover for the assault and battery claims. This would be a grave miscarriage of justice and would allow law enforcement officers to escape unscathed after using excessive force upon the citizens of Texas.

Texas courts have long recognized private causes of action for both assault and battery. "An assault occurs when a person is in apprehension of imminent bodily contact, whereas a battery is committed when an individual actually sustains a harmful or offensive contact to his or her person." *City of Watauga*, 434 S.W.3d at 589 *City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (Tex. 2014) ("Thus, to sue a governmental unit under the Act's limited waiver, a plaintiff may allege an injury caused by negligently using tangible personal property, *York,* 871 S.W.2d at 178 n. 5, but to be viable, the claim cannot arise out of an intentional tort, *Tex. Dep't of Pub. Safety v. Petta,* 44 S.W.3d 575, 580 (Tex.2001)."). The Texas Penal Code combines common-law concepts of assault and battery under its definition of "assault." TEX. PENAL CODE ANN. § 22.01(a) (West 2021). An individual commits assault if he: "(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse; (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or (3) intentionally or knowingly causes physical contact with another

when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." Id. Thus, as for a claim of excessive force, the elements of assault and battery under Texas law require that that a defendant is personally involved in the underlying action. *See Howard v. City of Houston, Texas*, No. CV H-21-1179, 2022 WL 479940, at *11 (S.D. Tex. Feb. 16, 2022) (stating that elements of assault and battery "require the plaintiff to allege that the defendant was present at the time of the incident").

Consequently, Plaintiffs respectfully request that this Court preserve Plaintiffs' claims of assault and battery against the Deputy Defendants since all were present at the time of the incident. Plaintiffs also respectfully request that should this Court preserve Plaintiffs' intentional torts against the Deputy Defendants, the Court also preserve Plaintiffs' claims of loss of consortium, survival, and wrongful death as they relate to the intentional torts.

Plaintiffs note that loss of consortium, survival, and wrongful death claims can also be triggered through death caused by Plaintiffs' remaining constitutional and federal law claims. Thus, Plaintiffs' claims against the Deputy Defendants as to loss of consortium, survival, and wrongful death which are predicated on any other claims (except, potentially, for negligence and gross negligence) should be preserved. The Fifth Circuit has provided that wrongful death claims can arise from Section 1983 claims. *Brazier v. Cherry*, 293 F.2d 401 (5th Cir. 1961). In this case, the Estate of James Brazier, represented in part by former Supreme Court Justice Thurgood Marshall, brought claims for damages resulting from the violation of various civil rights statutes, which were "sustained by the victim during his lifetime, by his survivors, or both." *Id.* at 402. In fact, the *Brazier* Court stated:

> [I]t defies history to conclude that Congress purposely meant to assure to the living freedom from such unconstitutional deprivations, but that, with like precision, it meant to withdraw the protection of civil rights statutes against the peril of death. The policy of the law and the legislative aim was certainly to protect the security of life and limb as well as property against these actions. Violent injury that would kill was not less prohibited than violence which would cripple. *Id.* at 404.

*See Brazier v. Cherry*, 293 F.2d 401, 402 (5th Cir. 1961).

Thus, Plaintiffs' wrongful death claim as to Section 1983 should be preserved.

While the *Brazier* Court did not address state law survival claims, this is only because, at the time of the case, the Court was "of the clear view that Congress adopted as federal law the currently effective state law on the general right of survival. This was done by § 1988." *Id.* at 405-6. Thus, using either the same reasoning that the Fifth Circuit used regarding Congressional purpose, or the language in 42 U.S.C. § 1988, Plaintiffs' survival claim and loss of consortium claims as to the Section 1983 claims, should survive.

In the same vein, Plaintiffs' wrongful death, survival, and loss of consortium claims as to the Americans with Disabilities Act ("ADA" and the Rehabilitation Act ("RA") should survive as well. Failure to preserve these claims would also defy history and withdraw protection of these broad statutes from those who die as opposed to those who are crippled.

Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss the following claims against the Deputy Defendants: (1) assault and battery; (2) survival based on assault and battery, Section 1983 claims of violations of the 4th and 14th Amendments, violations of the ADA, and violations of the RA; (3) wrongful death based on assault and battery, Section 1983 claims of violations of the 4th and 14th Amendments, violations of the ADA, and violations of the RA; (4) and loss of consortium based on assault and battery, Section 1983 claims of violations of the 4th and 14th Amendments, violations of the ADA, and violations of the RA.

**B.  PLAINTIFFS' TORT LAW CLAIMS AGAINST HARRIS COUNTY SHOULD BE PRESERVED**

Plaintiffs have amended their state law claims to provide for further particularity with respect to the various claims they bring against Defendant Harris County. While Defendant Harris County correctly claims that intentional torts cannot be brought against a government until under the Texas Torts Claims Act, a non-intentional tort is another matter.

Plaintiffs in this matter bring negligence and gross negligence actions against Harris County as a result of Mr. Anderson's restraint in a vehicle he did not want to be in, and the Deputies' negligent or grossly negligent behavior that kept medical personnel from checking Mr. Anderson while he was essentially imprisoned in Defendant Alobaidi's vehicle.

Section 101.02 of the Texas Practices and Remedies Code states:

> Sec. 101.021. GOVERNMENTAL LIABILITY. A governmental unit in the state is liable for:
> (1)  property damage, **personal injury, and death** proximately caused by the wrongful act or omission or the negligence of an **employee acting within his scope of employment** if:
> (A)  the property damage, personal injury, or death arises from the operation or **use of a motor-driven vehicle** or motor-driven equipment;  and
> (B)  the employee would be personally liable to the claimant according to Texas law;  and
> (2)  **personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law**.

TEX. CIV. PRAC. & REM. CODE § 101.02.

Were it not for the Deputies' negligent and grossly negligent actions of keeping Mr. Anderson in Defendant Alobaidi's vehicle, and preventing the EMS crew from fully checking him following the heinous taser incident, Mr. Anderson may be alive today. Defendant argues that the patrol vehicle was not used by a governmental unit in such a way as to trigger the waiver in TEX. CIV. PRAC. & REM. CODE § 101.02(1)(A) (referred to as the "motor-driven vehicle waiver"). Motion at ¶ 24.

This argument fails because using the vehicle was the proximate cause of the injury to Mr. Anderson. Had Mr. Anderson not been imprisoned in the patrol vehicle, the EMS crew likely would have been able to administer much-needed medical care to Mr. Anderson. Defendant's reliance on *Pizana v. City of Brownsville*, is misplaced. While at first blush, the *Pizana* case seems similar to the instant case, careful reading reveals that the medics who arrived, cleaned Pizana's wounds, then left him in the police officers' custody. *Pizana v. City of Brownsville, Texas*, CIVIL ACTION No. B-08-97, at *2 (S.D. Tex. June 10, 2008). In the Pizana case, the only injury that Pizana sustained was the tackling and repeated punching he sustained from the arresting officers. *Id.* "[T]he vehicle at issue in the instant was merely used for transportation and did not cause the injuries." *Id.* at *4.  The case at bar could not be more different.

Moreover, in *City of Fort Worth v. Chattha*, No. 02-11-00342-CV (Tex. App. Fort Worth  February 16, 2012), the defendant officer arrested the plaintiff for public intoxication, and when plaintiff resisted, the officer

took him to the ground. Under state law, a person committed assault if he intentionally or recklessly caused injury to another. There was a factual dispute about whether the officer acted recklessly. Under Texas law, battery does not require an intent to injure; only that the officer intended to touch the plaintiff and that as person would consider the touching offensive. The officer contended that the use of force was reasonable, saying "I believe the force used on [the plaintiff] was necessary and reasonable because he was actively resisting my attempt to arrest him, he was resisting near traffic, he was close enough to a running vehicle to take control of the vehicle in an intoxicated state, and I was outnumbered by his friends on the scene." This was insufficient to establish that the officer acted in good faith, which was a requirement for his official immunity defense. As the Court aptly stated:

> The City argues that "the officer actually used no tools, implements, or other personal property" and that "the facts of the case, as provided in the record, demonstrate that tangible personal property was not used in the incident . . . ." Chatta responds that he was injured by the officer's negligent use of the handcuffs in that the "take down" maneuver used to throw him to the ground was executed while the officer held on to the handcuffs, rendering Chattha unable to use his hands to break the fall.
>
> **Under the TTCA, to "use" something is "to put or bring into action or service; to employ for or apply to a given purpose."** *Tex. Natural Res.Conservation Comm'n v. White,* 46 S.W.3d 864, 869 (Tex. 2001). The evidence presented does not clearly support either position: Morfin's affidavit indicated that the officer "swung [Chattha] around like a rag doll" while holding the cuff as he threw him to the ground, while the officer's affidavit indicated that he "was still holding onto the handcuff on Mr. Chattha's left arm" when he "took him to the ground." This raises a fact question regarding the use of tangible personal property sufficient to defeat this aspect of the City's plea.
>
> The City also asserts that "the positioning of Officer Byrd's hands, if anything, only furnished the condition that made the injury possible," which does not constitute negligent use of property, citing *Dallas County Mental Health & Mental Retardation v. Bossley,* 968 S.W.2d 339, 343 (Tex.), *cert. denied,* 525 U.S. 1017 (1998). However, this contention is without merit, because it is the handcuffs, not the officer's hands, which are the personal property at issue. Further, unlike the unlocked door, which allowed a patient to escape and commit suicide in *Bossley, see id.* at 341-43, the handcuffs were an integral part of the injury-producing take-down in that either the officer used the handcuffs to throw Chattha to the ground or held the handcuffs while he threw Chattha's body to the ground. We hold that the officer's hands are not personal property and that the handcuffs furnished more than a condition that made the injury possible.

*City of Fort Worth v. Chattha*, No. 02-11-00342-CV, at *6-7 (Tex. App. Feb. 16, 2012) (emphasis added).

In the instant case, Deputy Alobaidi's vehicle was used to actually cause Mr. Anderson's injuries. The vehicle was used to separate and imprison Mr. Anderson from the EMS crew who arrived on the scene to provide him with medical care. The Defendant Deputies used the vehicle to withhold the medical care the EMS crew would have provided, from Mr. Anderson. Defendant's attempts to contort the word "use" runs afoul of the Texas Supreme Court's analysis of this very statute:

> While the multiplicity of possible fact-patterns and the vagaries of litigation can create complexity, in general courts should strive to give simple words like "operation" and "use" a simple construction, rather than converting them into terms of art intelligible only to experts in the case law applying the Tort Claims Act."

*See PHI, Inc. v. Tex. Juv. Just. Dep't*, 593 S.W.3d 296, 303 (Tex. 2019) (finding that the State of Texas had waived its immunity when a car that was not being operated rolled into and damaged PHI's property).

Moreover, Defendant Harris County is not the State of Texas, but merely a political subdivision of same, and is not considered a state under the Eleventh Amendment. Sovereign immunity extends to state agencies and state officers as long as the state is the real party in interest. *See Fitchik v. N.J. Transit Rail Operations*, 873 F.3d 655, 659 (3rd Cir. 1989). It does not extend to counties and municipalities. *See Bolden v. Se. Pa. Transp. Auth.*, 953 F.2d 807, 813 (3rd Cir. 1991) ("[A]lthough political subdivisions of a state, such as counties and municipalities, fall within the term 'State' as used in the Fourteenth Amendment, political subdivisions are not 'State[s]' under the Eleventh Amendment."). As a political subdivision, sovereign immunity would not extend to Harris County.

The Harris County Sheriff's Office ("HCSO") issued Defendant Alobaidi a patrol vehicle to carry out his duties, **including detaining individuals and transporting said detainees to their destination**. *See* HCSO Policy 509 – Transporting Detainees, *available at* https://hcsopolicy.com/policy/509-transporting-detainees and HCSO Policy 801 – Operation of County Vehicles, *available at* https://hcsopolicy.com/policy/801-operation-of-county-vehicles. HCSO Policy 801 requires deputies to ensure that the rear door locks and windows are

deactivated and that the prisoner partition is in working order and closed. *See* HCSO Policy 801 – Operation of County Vehicles. This is to ensure that when detaining an individual, that person stays safely inside the deputy's vehicle until the deputy lets the detainee out of the vehicle. Further, Policy 509 defines the restraining devices at section IV that are permitted for use against subdued detainee. None of these devices were used for Mr. Anderson, instead he was tased to death.

The Deputy Defendants should have opened Deputy Alobaidi's patrol vehicle and allowed the EMS crew access to Mr. Anderson. The Deputy Defendants had a duty to provide him with reasonable medical care. "Employees must ensure that any detainees being transported arrive safely at their destination." HCSO Policy 509. Mr. Anderson could not have accessed the medical care himself because he was handcuffed and imprisoned inside the vehicle with doors that would not unlock from the inside. "[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs — e.g., food, clothing, shelter, medical care, and reasonable safety — it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." *Deshaney v. Winnebago Cty. Soc. Servs. Dept*, 489 U.S. 189, 200 (1989). The Deputy Defendants breached their duties under the Due Process Clause to provide for Mr. Anderson's basic human needs when they refused to open the patrol vehicle and allow an EMS crew to treat him. These facts as plead by Plaintiffs are separate and apart from the excessive force facts plead in this case. The denial of reasonable medical care facts do not amount to an intentional tort, as claimed by Defendant at paragraph 16 of its amended Motion. Defendant's arguments add paragraph seventeen of its Renewed Motion only focus on the tasing and chokehold applied by Deputy Page, and completely ignore the denial of reasonable medical care facts. This is fatal to Defendant's argument.

Moreover, the imprisonment in Alobaidi's vehicle caused Anderson's injury. The threshold for causation in the TTCA's motor-driven vehicle waiver is "something more than actual cause but less than proximate cause." *Ryder Integrated Logistics, Inc v. Fayette Cnty.*, 453 S.W.3d 922, 929 (Tex. 2015) (per curiam). Plaintiffs have

alleged that the Deputy Defendants proximately caused Mr. Anderson's injuries when they refused to allow him access to timely medical care with enough specificity to survive Defendant's Motion. *See* Plaintiffs' First Amended Complaint ¶¶77 & 84 (Dkt. No. 30). The Deputy Defendants also breached their duties with reckless disregard to the extreme risk such denial of medical care posed to Mr. Anderson. *Id.* at ¶ 84. The Deputy Defendants' breach of their duties caused Mr. Anderson's damages.

It is clear that Deputy Defendants used Deputy Alobaidi's vehicle, a vehicle owned by Defendant, in their negligent and grossly negligent actions to deny Mr. Anderson his much-needed medical care. Therefore, Plaintiffs respectfully request that this Court deny Defendant's Motion and preserve Plaintiffs' negligence and gross negligence claims against Defendant Harris County. Plaintiffs further request that this Court also preserve the associated loss of consortium, survival, and wrongful death claims against Defendant Harris County.

Plaintiffs have amended their state law claims to provide for further particularity with respect to the various claims they bring against Defendant Harris County. While Defendant Harris County correctly claims that intentional torts cannot be brought against a governmental until under the Texas Torts Claims Act, a non-intentional tort is another matter.

Defendant Harris County seems to conflate the two types of torts alleged by Plaintiffs and reduces all of Plaintiffs' tort actions to an intentional tort. *See* Renewed Motion at ¶¶ 16-17. This is not a reduction to be taken lightly, nor accepted quickly.

The 5th Circuit Court of appeals has stated: "The gravamen of the claim was excessive force in the shooting, which sounds in intentional tort. …The determinative question is whether the negligence claim arises from the same facts that form the basis of the intentional-tort claim. If so, governmental immunity is not waived." *Quinn v. Guerrero*, 863 F.3d 353, 364 (5th Cir. 2017). In the *Quinn* case, the gravamen of the complaint was the brutal shooting of the plaintiff's son. *Id.* at 356. His negligence and gross negligence claims stem from the shooting. This is not the case in the suit at bar.

Plaintiffs do not seek relief on their assault and battery claim against Defendant Harris County only.

Finally, Defendant Harris County invoked Section 101.106(e) of the TTCA in its Renewed 12(b)(6) Motion on April 20, 2023 for the first time. In its initial Motion, filed on December 15, 2021 (Dkt. No. 27), Defendant failed to invoke this election of remedies provision. See Dkt. No. 27. Section 102 further provides that:

> **(a)** A local government may pay actual damages awarded against an employee of the local government if the damages: **(1)** result from an act or omission of the employee in the course and scope of his employment for the local government; and **(2)** <u>**arise from a cause of action for negligence**</u>. **(b)** The local government may also pay the court costs and attorney's fees awarded against an employee for whom the local government may pay damages under this section.

Tex. Civ. Prac. & Rem. Code § 102.002(a)-(b) (emphasis added). Due to the fact that Defendant delayed 500 days from the date of filing of their initial Rule 12(b)(6) Motion, and the fact that Rule 12 requires these Motions to be filed within 21 days of a triggering event, this request is not timely in 12(b)(6) motion and should be denied. Therefore, Plaintiffs' negligence claims against Harris County should survive.

### C. <u>Vicarious Liability Under § 1983</u>

Plaintiffs do not seek relief on their claim for vicarious liability under Section 1983 against Defendant Harris County only. Thus, this portion of Defendant's Motion is rendered moot. Plaintiffs still seek this relief if available under any other applicable statute or common law cause of action brought by Plaintiffs in this case.

### D. <u>Eighth Amendment Claim</u>

Plaintiffs do not seek relief under their 8th Amendment claim against Defendant under the current status of the law. Thus, this portion of Defendant's Motion is rendered moot.

### E. <u>Exemplary and Punitive Damages As to § 1983 and TTCA</u>

Plaintiffs do not seek relief to recover exemplary and punitive damages from Defendant Harris County, **but only** on their Section 1983 claims and their claims covered under the TTCA, if any. Thus, this portion of Defendant's Motion is rendered moot. Plaintiffs still seek this relief if available under any other applicable statute or common law cause of action as brought by Plaintiffs. Potential remedies in ADA cases, for instance,

include compensatory damages, punitive damages, and attorney's fees. *See* 42 U.S.C. § 1981a. Further, Section 505 of the Rehabilitation Act provides that all of the remedies, procedures, and rights set forth in Title VII—42 U.S.C. §2000e-16 including the application of §2000e-5(f) through (k)—are also available with respect to any complaint under Section 501. This means that a prevailing plaintiff may recover: (1) injunctive and equitable relief; (2) compensatory damages for unlawful intentional discrimination or violations of the reasonable accommodation provisions; (3) punitive damages; and (4) attorney fees and costs (including expert fees). Plaintiffs seek these forms of relief.

### IV.  CONCLUSION

For the above-stated reasons, Plaintiffs respectfully request that this Court deny Defendant Harris County's Post-Court Ordered Discovery Rule 12(b)(6) Motion to Dismiss. Plaintiffs further request any other relief to which they may be entitled.

Respectfully submitted,

**EDWARDS SUTARWALLA PLLC**

By: */s/ George Edwards III*
George Edwards III
State Bar No. 24055438
Fed. Id No. 1031248
Eman Patricia Arabi Katbi
State Bar No. 24092045
Fed. Id No. 3355458
Stephany M. Simien
State Bar No. 24117297
Fed. Id No. 3698005
602 Sawyer Street, Suite 490
Houston, Texas 77007
Phone: (713) 565-1353
Fax: (713) 583-8715
Email: george@eslawpartners.com
Email: eman@eslawpartners.com
Email: stephany@eslawpartners.com
**ATTORNEYS FOR PLAINTIFFS**

# CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing instrument has been served in compliance with Federal Rules of Civil Procedure Rule 5(b)(2) on April 28, 2023.

_George Edwards III, Managing Partner_
George Edwards III