| | | |
|---|---|---|
| ESTATE OF KENNETH ANDERSON, JR., <br> KENNETH DARIUS ANDERSON, <br> KRISTEN SANDOVAL, A/N/F OF <br> N.B.A. AND N.K.A., AND ALL <br> WRONGFUL DEATH BENEFICIARIES <br> OF KENNETH ANDERSON JR. <br><br> *Plaintiffs,* <br><br> VS. <br><br> HARRIS COUNTY, TEXAS, <br> DEPUTY MOHANAD ALOBAIDI, <br> DEPUTY CRYSTAL ESTRADA, <br> DEPUTY VICTOR PAGE, AND <br> DEPUTY MERCY GARCIA-FERNANDEZ <br><br> *Defendants.* | § § § § § § § § § § § § § § § § § § § § | <br><br><br><br><br><br><br><br><br> CIVIL ACTION NO. 4:21-cv-3730 <br><br><br><br><br><br><br><br> JURY TRIAL DEMANDED |

**PLAINTIFFS' RESPONSE TO DEFENDANT MOHANAD ALOBAIDI'S RENEWED MOTION TO DISMISS ALL CLAIMS IN PLAINTIFFS' FIRST AMENDED COMPLAINT AND MOTION TO STAY DISCOVERY**

Plaintiffs file this Response to Defendant Mohanad Alobaidi's ("Defendant") Renewed Motion to Dismiss Plaintiffs' First Amended Complaint [Doc. 175] (the "Motion"), and for such would respectfully show the Court as follows:

## I. BRIEF STATEMENT OF POSITION AND NATURE AND STAGE OF PROCEEDINGS

This is a case of a tragic denial of medical and mental health care desperately needed by Kenneth Anderson, Jr. Harris County deputies intentionally drive-stunned Anderson immediately after he had been in a single vehicle accident, resulting in his atrocious death. Anderson did not receive the required and necessary medical and mental care after he was drive-stunned far beyond the recommended maximum of 15 seconds. In fact, he was drive-stunned 12 times. He never should have been drive-stunned in the first place.

This case was filed on November 22, 2021, and is set for trial on February 20, 2024. Plaintiffs have pleaded violations of 42 U.S.C. § 1983, 4th, 8th, and 14th Amendment claims, negligence, gross negligence, assault and battery, violations of the Americans with Disabilities Act, and violations of the Rehabilitation Act of 1973. Defendant seeks

1

to dismiss all of Plaintiffs' claims. Taking all material facts as true and resolving all inferences in Plaintiffs' favor, the Court should deny Defendant's Motion.

## II. DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS SHOULD BE DENIED

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED R. CIV. P. 8(a)(2). A party against whom claims are asserted may move to dismiss those claims when the non-movant has failed "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact). *Twombly*, 550 U.S. at 555. "The pleading must contain something more…than...a statement of facts that merely creates suspicion[.]" *Twombly*, 550 U.S. at 555, 556. The court must assume that all material facts contained in the complaint are true and resolve all inferences in the plaintiff's favor.

Under most circumstances, if the court decides to consider extrinsic materials, the motion must be converted into a motion for summary judgment. *See* FED. R. CIV. P. 12(d). Conversion to a summary judgment motion takes place at the court's discretion when the court affirmatively decides to consider extrinsic materials. *Finlet Lines Joint Prot. Bd. V. Norfolk S. Corp.*, 109 F.3d 993, 996-7 (4th Cir. 1997). If the court converts the motion, the parties must be given notice to prevent unfair surprise and allowed an opportunity to take reasonable discovery. *See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). Under limited circumstances, the court can consider extrinsic materials without converting the motion. *See Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013).

Motions to dismiss for failure to state a claim are viewed with disfavor and rarely granted. *Calhoun v. Villa*, 761 Fed. Appx. 297, 299 (5th Cir. 2019). Defendant heavily relies on the footage of the Body Worn Camera ("BWC") footage, stating that it "shows that Alobaidi did not use excessive force…did not fail to intervene… and did not deprive him of medical care". Defendant's Motion at ¶ 14. However, when reviewing a motion to dismiss, courts are required to accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Lindquist v. City of Pasadena*, 525 F.3d 383, 386 (5th Cir. 2008) (internal citations omitted). As such, Defendant's attempts to re-frame

2

the case (such as by falsely stating that Plaintiff has no claim under the Texas Tort Claims Act ("TTCA")) for negligence and gross negligence must be disregarded.

"In ruling on an FRCP 12(b)(6) motion, the court must (1) identify allegations that, because they are merely conclusions, are not entitled to an assumption of truth and (2) consider the factual allegations to determine if they plausibly suggest a claim for relief." *See* "O'Connor's Federal Rules * Civil Trials (2018)," §5.1, p. 232 citing *Iqbal*, 556 U.S. at 679. "[T]he pleading standard Rule 8 announces does not require detailed factual allegations," it only "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "This standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *Morgan v. Hubert*, 335 Fed. Appx. 466, 470 (5th Cir. 2009). "All questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor." *Covington v. City of Madisonville, Tex.*, 812 Fed. Appx. 219, 224 (5th Cir. 2020) (reversing grant of motion to dismiss).

**Moreover, when the government or its agents are the defendants, as is the case here, plaintiffs will often not have access to critical information before discovery.** Thus, "only minimal factual allegations should be required at the motion to dismiss stage." *Thomas v. City of Galveston*, 800 F.Supp.2d 826, 842-43 (S.D. Tex. 2011); *Sanchez v. Gomez*, 283 F.Supp.3d 524, 532 (W.D. Tex. 2017); *King v. City of Austin, Tex.*, No. A-16-CA-1020-SS, 2017 WL 1097110, *6 (W.D. Tex. Mar. 21, 2017) (Sparks, J.); *Schaeffer v. Whitted*, 121 F.Supp.3d 701, 718 (W.D. Tex. 2015) (Sparks, J.); *Crisp v. Dutton*, No. A-15-CV-0431-LY-ML, 2015 WL 7076483, *8 (W.D. Tex. Nov. 12, 2015) (Lane, Mag. J.); *Callaway v. City of Austin, Tex.*, No. A-15-CV-00103-SS, 2015 WL 4323174, *9 (W.D. Tex. July 14, 2015) (Sparks, J.). Sufficient allegations can include "misconduct that occurred in the open, multiple officials involved in the misconduct, or the specific topic of the challenged policy of training inadequacy." *Sanchez*, 283 F.Supp.3d at 532 (citing *Thomas*, 800 F.Supp.2d at 843-44).

III. **EVIDENCE OF EXCESSIVE FORCE, FAILURE TO INTERVENE, AND DENIAL OF MEDICAL CARE**

Defendant's motion boils down to identifying several factual issues that are material to the case, and which should be resolved by a jury. Defendant appears to argue that decedent Anderson was a threat who was "combative." *See* Motion at ¶ 16. Defendant also claims that "when Deputies finally get him in [the patrol car] and the door shut,

Anderson comes out the other side of the patrol car." *Id.* Defendant's implication that Anderson was actively resisting the Defendant Deputies or "getting combative" is entirely false. *Id.* In Exhibit 6 to Plaintiffs' Response to Deputy Estrada's Motion on the Pleadings, Plaintiffs included Defendant's bodyworn camera footage ("BWC") and dashcam footage, Bates Stamped Anderson v. HC 000093 – 000096. Below is a summary of what can be viewed on Defendant's BWC:

| Alobaidi Video BMC | |
|---|---|
| Time | Note |
| 4:18:32 | Alobaidi arrives at the scene of Faddy's parking lot (Scene 2). |
| 4:19:22 | Turns sound off. Footage: He high fives two male officers |
| 4:19:57 | Turns sound on. Asks Anderson: "What's your name brutha? Say it with your chest. Man-boy" |
| 4:22:19 | He asks Anderson to sit down. Anderson doesn't respond. Alobaidi asks Anderson: What's wrong? You don't want to look at me? I wouldn't want to look at him either." Then turns sound off. |
| 4:31:19 | Turns sound on. |
| 4:33:38 | He approaches a male officer and says: "damn bro!" Then turns sound off. |
| 4:40:26 | Turns sound on. |
| 4:40 | Anderson's shoe falls off as removed from Estrada's vehicle |
| 4:42:00 | Alobaidi hands Anderson a Chick fila cup to drink from his car. Anderson says it's not water. Alobaidi says it is and opens the cup to show him. |
| 4:42:17 | He asks Anderson what type of drugs he is on. Anderson says Sherm. |
| 4:43 | Anderson is walked to Alobaidi's vehicle. Alobaidi tells Anderson to get in vehicle & given water |
| 4:44:47 | Anderson asks for more water. |
| 4:45 | Anderson is given "water", is in the vehicle but feet are not in vehicle. |
| 4:46:20 | Alobaidi gets in his vehicle while the other officers try to get Anderson in the car. |
| 4:47 | Mercy Garcia states will pull Anderson in from other side if he does not get in the vehicle; Anderson is still asking for more "water please" |
| 4:48 | Anderson's feet are being slammed in the vehicle door to try to close it. |

4

| Time | Event |
|---|---|
| 4:49 | Alobaidi asks Anderson if he wants to be tased, told to "sit & fucking chill." |
| 4:49:21 | Alobaidi helps push Anderson into the car and threatens to tase him. |
| 4:50:56 | Deputies pull Anderson out of the car and Alobaidi touches Anderson with taser |
| 4:50 | Alobaidi pulls Anderson from the vehicle and holds him on the ground, taser is put up to his arm. Anderson says he will comply. |
| 4:50/4:51 | Alobaidi repeatedly tases Anderson. |
| 4:51:20 | Alobaidi tases Anderson and tells him that he will break his legs if he doesn't get inside the car. |
| 4:52:50 | Alobaidi says Anderson is going to choke if they don't adjust him. |
| 4:53:30 | Alobaidi uses his cellphone and calls someone and says he had to tase Anderson 4 or 12 times, and that Anderson is on strong drugs. |
| 4:54:20 | Anderson says he can't breathe. |
| 4:54 | Anderson says, "I can't breathe" Officer Page and Garcia make him sit up in the vehicle |
|  | Alobaidi also heard saying "twelve times tased" |
| 4:55 | Again, Alobaidi says he tased Anderson twelve times |
| 4:55:16 | Alobaidi tells the other officers that Anderson is strong, and doesn't feel the tasing, but he's coming down from the drugs. |
| 4:56:09 | Estrada says she is not supposed to be out there. |
| 4:56:54 | Alobaidi turns sound off. |
| 5:03:58 | Turns sound on. |
| 5:04:30 | Turns sound off, and walks to the other male officer's car (Page) and talks to him. |
| 5:08 | Ambulance arrives. |
| 5:08 | Sergeant Douglass arrives to complete Blue Team review. |
| 5:09 | Turns sound on Alobaidi tells EMS that Anderson was "extremely combative." |
| 5:09 | Alobaidi refuses EMS personnel's request to put Anderson in EMS vehicle to run a full set of vitals, denying Anderson medical care. EMS asks are there any medical concerns and Alobaidi says no, Anderson is high on drugs, and he drive stunned him. |
| 5:10/11 | EMS opens vehicle door to look at Anderson. |

| | | |
|---|---|---|
| | Alobaidi says he won't put Anderson in an ambulance. | |
| | Vitals of Anderson were not checked. | |
| 5:11 | EMS personnel gets ready to leave scene. | |
| 5:11:24 | Alobaidi refuses to move Anderson from the patrol vehicle. | |
| 5:11:53 | Alobaidi opens the patrol vehicle door and throws Anderson's shoe inside. Anderson is breathing, but little to no movement. | |
| 5:15:50 | Male starts speaking, asking if it's the guy from….Alobaidi turns sound off. | |
| 5:24:15 | Alobaidi starts car and drives to headquarters. | |
| 5:26:10 | footage in black and white. | |
| 5:43:40 | Turns sound on. Alobaidi says the Sergeant didn't ask if the officers are ok. And that the Sergeant is more concerned about the amount of work he has to do. | |
| 5:47:36 | Alobaidi turns audio sound off. | |
| 6:04:59 | Sound turns on. Alobaidi switches with other officer to do CPR on Anderson. | |
| 6:09:50 | Female officer asks him a question and he turns sound off. | |
| 6:14:09 | Alobaidi turns audio sound on. | |

It is apparent from the footage that Defendant tased Anderson 12 times, which was excessive and in violation of the 4th and 14th Amendments. Amended Complaint ¶104. Defendant admits that he tased Anderson, albeit four times and not twelve. *See* Motion at ¶ 16. However, Defendant admits at 4:55 am to have tased Anderson twelve times. Even in Defendant's own Motion, he admits to tasing Anderson "approximately 1 minute on and off – from 4:50:35 to 4:51:35." *Id.* This is far greater than the fifteen (15) second maximum tasing time allowed for under the Harris County Sheriff's Office's policies. Regardless of how many times Defendant tased Anderson, the Fifth Circuit has repeatedly emphasized that "an exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased." *Timpa v. Dillard*, 20 F.4th 1020, 1030 (5th Cir. 2021) (quoting *Lytle v. Bexar County*, 560 F.3d 404, 413 (5th Cir. 2009). Even if an individual actively resists arrest at certain points through the encounter "that resistance did not justify force indefinitely." *Joseph ex rel. Est. of Joseph v. Bartlett,* 981 F.3d 319, 335 (5th Cir. 2020). An officer must assess to determine if the justification for the use of force has ceased. *Timpa*, 20

F.4th at 1030. Defendant did not do this. He repeatedly tased Anderson without allowing Anderson the opportunity to comply or allowing himself the time to assess whether continued use of force is necessary. Even after Anderson no longer appears to move, Defendant tased him. Defendant clearly used excessive force on Anderson.

To the extent that Defendant disagrees, these are material factual issues that cannot be resolved at this stage. Plaintiff has pleaded the facts for their excessive force claim with the requisite particularity and this Court should construe the facts in favor of the nonmovant. Thus, Defendant's Motion should be denied.

The 5th Circuit Court of Appeals also decided another excessive force case where the pre-trial detainee was killed despite being previously restrained by law enforcement, which rings similar to the facts of this case. In remanding the claims against the County and the jailers, and reversing the grant of summary judgment by the district court, the Court of Appeals also stated as follows:

> The jailers, however, can assert qualified immunity. They are liable for unlawful conduct only if their actions violated "clearly established" constitutional rights. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). **As the Supreme Court recently reminded us, we cannot "define clearly established law at too high a level of generality." *City of Tahlequah v. Bond*, 142 S.Ct. 9, 11 (2021).**
> 
> **************************
> 
> But a jury's finding that the jailers continued to apply pressure to Page's neck, back, and legs for more than two minutes after she was subdued… with her hands handcuffed behind her back-would establish a violation of clearly established law. *Timpa,* 20 F.4th at 1028-29 (explaining that qualified immunity may provide a defense at the early stages of an encounter but not later stages when the continued use of force violates clearly established law);
> 
> **************************
> 
> **"Within the Fifth Circuit, the law has long been clearly established that an officer's continued use of force on a restrained and subdued subject is objectively unreasonable."** *Timpa*, 20 F.4th at 1034. In cataloguing our jurisprudence on this point last year, *Timpa* identified features of the cases that had "reaffirmed" this principle "again and again." *Id*. at 1035-36. Most will sound familiar: the seized individual was suspected of only a minor offense, initially resisted, was obese and forced to lie prone on the stomach with hands restrained and bodyweight force applied to the back, and most importantly . . . was subdued, unable to flee, and nonthreatening during the continued use of force. By the time of this October 2017 encounter, the law had thus clearly established the unreasonableness of [Pelfrey's and Lovelady's] continued use of bodyweight force to hold [Page] in the prone restraint position after [she] was subdued and restrained.

*Fairchild v. Coryell Cnty.*, No. 20-50237, at *10-11 (5th Cir. July 14, 2022) (internal quotations and citations omitted) (emphasis added). Plaintiffs have pleaded their claim of excessive force with the requisite particularity and thus, Defendant's motion should be denied.

Defendant also failed to intervene when Defendant Page was choking Anderson. Defendant was present when Anderson stated that he "could not breath" to Defendant Page and he did not intervene in the chokehold that Defendant Page was placing on Anderson, which was excessive force in violation of the 4th and 14th Amendments. Amended Complaint Dkt. No. 30 at ¶33. Upon information and belief, at all times Defendant was within 25 feet of Anderson and the other Defendants. Defendant knew that Anderson's constitutional rights were being violated by the other Defendants, he had a reasonable opportunity to prevent the violation, and he chose to do nothing. Amended Complaint Dkt. No. 30 at ¶104.

Defendant also failed to provide Anderson with required medical care in violation of Anderson's 4th and 14th Amendment rights. Defendant was present when the EMS arrived on site, and was requested by the EMS personnel to move Anderson to the ambulance, Defendant <u>flat out refused to comply with this request</u>, in violation of Sherriff's Office policy. *See* Exhibit 3 to Amended Complaint, HCSO Department Policy #501 Bates HC_ANDERSON_000027. Defendant's refusal to provide Anderson with basic medical care clearly violated Anderson's 4th and 14th Amendment Rights.

While it is true that EMS did show up to the scene to assess Anderson, Defendant's Motion conveniently leaves one instance out of his timeline in paragraph 26 of his motion: EMS was called to the scene before Sergeant Douglas calls them back. At 5:10 am, when EMS requests that Defendant unlock the vehicle and allow the EMS crew the opportunity to check him, Defendant refuses to do so.

Anderson was arrested at or about 3:30 a.m. Upon information and belief, Defendant was not present at the scene of the arrest until well after EMS had left after evaluating Anderson after the single-vehicle accident. Defendant admits he tased Anderson 12 times at or about 4:50 am, nearly an hour and a half after Anderson was arrested and put in custody. Defendant did not ask for medical attention for Anderson at the scene of arrest as he was not there to ask for it. However, Defendant was present when Anderson was tased at Faddy's and in fact, refused to allow the EMS personnel to even check Anderson's vital signs (let alone evaluate Anderson's medical condition), or after he was

8

placed in a chokehold. Defendant failed to act when he saw Anderson's 4th and 14th Amendment constitutional rights were being violated and his failure to obtain medical care was in violation of not only Sherriff's Office Policy but also a violation of Anderson's 14th Amendment constitutional rights.

A complete refusal to allow the EMS personnel to check Anderson, a man who had been tased far greater than the maximum amount of time he should be tased, is a deliberate indifference to Anderson's serious medical needs. Defendant also applies a subjective intent requirement upon Plaintiffs to plead a denial of reasonable medical care claim. As the Fifth Circuit Court of Appeals has aptly stated:

> The Fourteenth Amendment "right of a pretrial detainee to medical care . . . . is violated if an officer acts with deliberate indifference to a substantial risk of serious medical harm and resulting injuries. **[S]ubsequent Fifth Circuit decisions have refined Mace based on earlier cases and have rejected the subjective-intent requirement, generally requiring plaintiff to show only that defendants were [1] aware of facts from which an inference of a substantial risk of serious harm to an individual could be drawn" and "[2] that they actually drew the inference.**

*Allen v. Hays*, No. 21-20337, at *12 (5th Cir. Apr. 14, 2023) (internal quotations omitted) (emphasis added).

Plaintiffs specifically plead that Defendant's actions were deliberately indifferent. Amended Complaint Dkt. No. 30, page 1. Plaintiffs also plead that Defendant was objectively and subjectively aware that failing to render timely medical care and necessary treatment or the failure to call for an ambulance to transport Anderson to a hospital posed an extreme risk of harm to Anderson. Amended Complaint Dkt. No. 30 at ¶83. Defendant misreads the Amended Complaint, and to the extent that he disagrees with facts as recited by Plaintiffs, these are genuine issues of material fact to be resolved by the jury at trial.

Taking all material facts contained in Plaintiffs' Amended Complaint as true and all inferences resolved in Plaintiffs' favor, Defendant's Motion to Dismiss for Failure to State a Claim should be denied.

Additionally, Defendant cites to *Brown v. Coulston* at ¶12 of the Motion, but that case had facts that could not be more different than the factual situation in this case because T.B. vigorously resisted as Officer Coulston carried him down the hallway, and continued to resist, requiring Officer Coulston to restrain him. *Brown v. Coulston*, 463 F. Supp. 3d 762, 776 (E.D. Tex. 2020).

Anderson was arrested at or about 3:30 am and was tased 12 times at or about 4:50 am, nearly an hour and a half after being arrested and put in custody. Defendant did not ask for medical attention for Anderson after Anderson was tased, in violation of Sherriff's Office policy, after he was placed in a choke hold, or after his unresponsiveness to Defendant Garcia reading Anderson his DIC-23-25. Defendant, in fact, refused to allow EMS personnel access to Anderson, who was trapped inside Defendant's own patrol vehicle. Defendant violated Anderson's 4th and 14th Amendment constitutional rights when he failed to obtain medical care for Anderson.

Further, Plaintiffs disagree that *Kingsley* does not apply to Defendant. The Fourth and Fourteenth Amendment claims do apply to Defendant. There are disputed facts over whether Anderson was a pre-trial detainee or an arrestee or both that prevent Defendant's Motion from being granted.

Additionally, Plaintiffs disagree with Defendant's characterization of the *Valencia* case it cites to try to preclude Anderson as being treated as a pre-trial detainee. Defendant states that:

> The Fifth Circuit has provided three conditions to be considered when drawing the line between arrestee and pretrial detainee; specifically, that an arrestee has become a pretrial detainee "*after* the incidents of arrest are completed, *after* the plaintiff has been released from the arresting officer's custody, and *after* the plaintiff has been in detention awaiting trial for a significant period of time." *Valencia,* 981 F.2d at 1444 (5th Cir. 1993) (emphasis in original).

Defendant's Motion Dkt. No. 28 at ¶12.

This is not a correct characterization of *Valencia*. The *Valencia* court actually states, "*Graham* itself offers no explicit suggestion as to when a Fourth Amendment seizure comes to an end, although its facts indicate that a seizure under the Fourth Amendment does not end the moment the police gain custody and control over a suspect." *Valencia v. Wiggins,* 981 F.2d 1440, 1449 (5th Cir. 1993).

*Valencia* goes further on to state:

> <u>Precisely when the arrest mode ceases and the pretrial detainment mode begins remains an unanswered question, albeit one of increasingly diminishing importance in excessive force cases</u> given the continued convergence of the various tests under the Fourth, Eighth and Fourteenth Amendments for maltreatment of arrestees, detainees or convicted prisoners, respectively…We therefore leave to a future panel the task of addressing that issue when the appropriate factual setting presents itself.

*Id.* at n.44 (emphasis added).

Defendant has on several occurrences joined on filings with Defendant Harris County, another Defendant in this case, including: certificates and motions. Defendant states that Anderson is not a pre-trial detainee. However, Defendant Harris County admits on **multiple occasions that Anderson was in fact a pre-trial detainee**. *See* Dkt. No. 41 at ¶7 & ¶8; *see also* Dkt. No. 47 at ¶18. While Defendants attempt to portray a unified front, it is clear that there is a substantive deviation in arguments. This shows that there are fact issues that only a jury could properly decide, or at the very least, require further review and investigation.

Taking all material facts contained in Plaintiffs' Amended Complaint as true and all inferences resolved in Plaintiffs' favor, Defendant's motion should be denied.

Plaintiffs have pleaded all required elements of the Fourth and the Fourteenth Amendment Claims for excessive force. Anderson sustained multiple injuries, which were a direct result and only from the use of force that was clearly excessive to the need, which was objectively unreasonable.

Significantly, Defendant admits to tasing Anderson in paragraph 16 of his Motion. However, in Footnote 3, Defendant claims that he "never injured" Anderson. Motion at n. 3. He seems to imply that even though he repeatedly tased Anderson, he did not injure Anderson, nor did he use force that was excessive. This is nonsensical. According to the *Graham* factors, this force was excessive. In *Graham,* 109 S.Ct. at 1865, the Supreme Court articulated three guideposts for courts to use when determining if a particular use of force was reasonable under the circumstances or excessive to the need. These guideposts—often referred to as the *Graham* factors—are: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to police officers or civilians; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by fleeing the scene. *Id.* at 1872. The *Graham* factors provide the framework for judging whether an officer's use of force was excessive. *Newman,* 703 F.3d at 761. *Khansari v. City of Hous.*, 14 F. Supp. 3d 842, 853 (S.D. Tex. 2014). Here, Anderson was the victim of a single vehicle accident and was detained due to a warrant stemming from an unpaid fine. Amended Complaint at Dkt. 30 at ¶26. He posed no threat to any Defendant. Amended Complaint at Dkt. 30 at ¶38. He was not fleeing the scene nor actively resisting arrest. *Id.* No reasonable officer would have applied this kind of force to try to control a detainee's legs. Deputies have access to leg irons and hobbles that accomplish leg control.

Defendant's reliance on *Bogie v. Rosenberg* at paragraph 13 is misplaced. *Bogie v. Rosenberg*, 705 F.3d 603, 607 (7th Cir. 2013). Plaintiff Ann Bogie appealed the district court's dismissal of her claims under Wisconsin law for invasion of privacy and misappropriation of her image. *Id.* The claims are based on Bogie's attendance at a comedy performance by defendant Joan Rivers, and the video recording itself, belied Bogie's claim that she was entitled to a reasonable expectation of privacy. *Id.* at 608. The body worn camera footage in this case does not contradict Plaintiff's allegations at all. Nor does Defendant argue that. Rather he argues that, "Therefore, this Court should consider *whether* the allegations in Plaintiff's Amended Complaint are contradicted by the very body-cam videos Plaintiff relies upon." *See* Motion ¶*15*. Defendant invites this Court to make factual determinations by way of the body worn camera. To the extent that reasonable minds could disagree about what is shown (and not shown) on the camera footage, these are issues to be resolved by the jury at trial.

Anderson died as a result of his injuries. Amended Complaint at Dkt. No. 30 ¶ 40. Anderson was tased 12 times, this is objectively unreasonable. Anderson was also drive-stunned in violation of HCSO policy, which was also objectively unreasonable. Anderson was placed in a choke hold this is objectively unreasonable. Although Defendant was present for the entire ordeal, he took no action to intervene and actively applied this excessive force, killing Anderson. Likewise, Defendant never called for any medical assistance in spite of this objectively unreasonable force being applied and the distress it had caused Anderson. In fact, Defendant never requested Anderson receive medical attention despite his knowledge that Anderson was unresponsive. To the extent that Defendant disagrees, these are factual issues for the jury. Plaintiffs respectfully request that this Court deny Defendant's Motion in its entirety and preserve its Section 1983 claims.

## IV.     QUALIFIED IMMUNITY DOES NOT SHIELD DEFENDANT

Qualified immunity shields a government official from civil liability for damages based on the performance of discretionary functions if the official's acts were objectively reasonable in light of clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The facts established in Plaintiffs' First Amended Complaint show actions on behalf of Defendant that are not objectively reasonable in light of clearly established law. Defendant cannot argue that he did not knowingly violate the law because adequate detail and

particularity were pleaded, as established in *Anderson v. Pasadena Independent School District*. 184 F.3d 439, 443 (5th Cir. 1999).

Courts have stated that identifying that an officer was the one to commit an action like Defendant did, is more than sufficient at the pleading stage, even under the heightened standard applied to public officials sued in their individual capacity. *Huff v. Refugio Cnty. Sheriff's Dep't*, Civil Action No. 6:13-CV-00032, at *6 (S.D. Tex. Oct. 9, 2013) *See, e.g., Shaw v. Hardberger,* 2007 WL 1174202, at *4-5 (W.D. Tex . Apr. 19, 2007) (denying two of the six defendant officers' qualified immunity claims where the two officers were alleged to be present at the altercation); *see also Bias v. Lundy,* 188 F. App'x. 248, 249-50 (5th Cir. 2006) (vacating the grant of qualified immunity as to two officers who were alleged to have attacked the plaintiff but affirming as to four officers where the plaintiff presented no evidence of their involvement in the use of excessive force). Discovery can be used to flesh out further details but at this time Defendant should not be shielded by the doctrine of qualified immunity. Defendant appears to conflate the standards for a Rule 56 motion and a Rule 12(b)(6) motion when he states that the "unlawfulness of [Defendant's] actions [are] not clearly established." Motion ¶ 17. This is clearly not the standard for a Rule 12(b)(6) motion, which tests whether the allegations as pleaded by the Plaintiff fail to state a claim upon which relief can be granted. Plaintiffs have alleged facts that state a claim upon which relief can be granted and qualified immunity can be denied at this stage.

It is clearly established that a pretrial detainee is entitled to reasonable medical care as part of his Fourteenth Amendment due process rights. *Burton v. Cameron Cty, Tex*. 884 F. Supp 234, 238 (S.D. Tex. 1995) (citing *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2D 447, 1979)); *Grabowski v. Jackson Cty*, 47 F.3d 1386, 1396 (5th Cir. 1995). Federal law allows an individual who believes that his or her constitutional rights have been violated to bring civil action against the government to recover the damages sustained as result of the violation. Specifically, 42 U.S.C. §1983 provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws by any person acting under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory. *Gomez v. Toledo*, 446 U.S. 635, 638 (1980) (internal quotations omitted).

In *Gomez*, the Supreme Court determined that only two elements need to be pleaded in order to properly assert a cause of action under §1983. First, the Plaintiff must specifically identify the constitutional right of which he or she

was deprived and second, that the person who deprived him of that right acted under color of state or territorial law. *Id.* at 638. Defendant knew that Anderson suffered from a debilitating psychiatric disease. The Rehabilitation Act of 1973 was the first disability civil rights law enacted in the United States. Anderson was a protected person under the Rehabilitation Act ("RA") and the Americans with Disabilities Act ("ADA"), and the deliberate denial of medical treatment for his mental health conditions is a violation of these statutes. Defendant knew of Anderson's protected status and intentionally discriminated against him because of his disability. <u>It is worth noting that Defendant makes no attempt to argue dismissal of Plaintiffs' claims arising from the ADA or RA, and thus, these claims should in all respects, be preserved.</u>

The denial of reasonable medical and mental health care, and other actions and/or inaction, such as failing to provide Anderson with even a basic check on his vital signs as required by the HCSO policy, actually caused, proximately caused, and/or were producing causes of Anderson's suffering, injury, and other damages.

This action and inaction on the part of Defendant is objectively unreasonable. An officer is "entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). Additionally, a defendant's actions must be egregious and "cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm. *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001). Defendant knew that Anderson suffered from a debilitating psychiatric disorder, had been tased until he was unconscious, knew he never responded to the DIC 23-25 warnings, and knew he was non-responsive when he failed release him into the custody of emergency medical personnel. Amended Complaint Dkt. No. 30 ¶¶31-35. The actions and inactions of Defendant were objectively unreasonable. If Defendant had acted objectively reasonably and followed the legal rules of the HCSO, Anderson could very well be alive today. It is clear that Defendant is not entitled to the defense of qualified immunity because his actions were not objectively reasonable.

In *Khansari v. City of Houston* case. Houston Police Department officers also egregiously tasered the plaintiff, Corey Khansari ("Corey"). *Khansari v. City of Hous.*, 14 F. Supp. 3d, *1-4 (S.D. Tex. 2014) (Lake, J.). However, Corey, thankfully, survived his tasing encounter. *Id.* at *4. Anderson was not so lucky. Judge Lake discusses the two-step inquiry into whether qualified immunity applies to a particular officer: "(1) whether the plaintiff has alleged a

14

violation of a constitutional right; and (2) whether that right was clearly established at the time of the alleged misconduct." *Id.* at *6 (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815-816 172 L.Ed.2d 565 (2009)). Judge Lake ultimately found that the officers' actions, which are remarkably similar to the actions in the case before this Court, were objectively unreasonable and that the officers were not cloaked by qualified immunity. Judge Lake reasoned that the officers disregarded important information regarding circumstances and coordinating their encounters, should have realized that Corey was unarmed, restrained, and failed to present any real threat to anyone, the officers knew that Corey suffered from a mental illness and failed to gauge their conduct accordingly, the force did not relate to a proper assessment of danger including the manner in which the tasers were used, and finally, several officers failed to take reasonable efforts "to stop their fellow Officers from using excessive force and/or failed to take reasonable steps to intervene and protect Plaintiffs from such excessive force." *Id.* at *6-7.

Just as in *Khansari,* in this case, "[t]here is no dispute that the overarching right to be free from excessive force was clearly established when the defendants' interaction with" Anderson occurred. *Id.* at *10. Further, just as Judge Lake discussed when assessing the Graham factors, the victim, being Corey or Anderson, posed no immediate threat to anyone's safety, was not resisting arrest or attempting to flee. *Id.* at *11. Judge Lake further cites to *Anderson v. McCaleb*, also similar to the case before this Court. <u>The Fifth Circuit decided that based on the Graham factors, the officer "should have known that he could not continue to shock the suspect with *860 the taser after he was no longer resisting arrest.</u> *Anderson v. McCaleb*, 480 Fed.Appx. 768, 773 (5th Cir.2012) (per curiam). Similarly, Anderson was handcuffed, was not actively resisting arrest, and was not a threat to the Deputy Defendants. Thus, Defendant should have known that he could not tase Anderson without violating Anderson's constitutional rights.

In *Poole v. City of Shreveport*, which is cited by Defendant in paragraph 21 of his Motion, plaintiff raised his hands at the peace officer and invited said peace officer to hit him, and then actively resisted arrest. His arm was dislocated during the fight, but as soon as the officers saw the injured arm, medical assistance was called. *Poole v. City of Shreveport*, 691 F.3d 624, 626 (5th Cir. 2012) ("It is undisputed that this was the first time that the officers understood that Poole's elbow had been dislocated. They immediately called for medical assistance."). This case could not be more different than the case at bar where medical assistance was not rendered following the tasing and in fact,

15

Defendant refused the EMS crew access to Anderson. Defendant violated Anderson's clearly established constitutional rights by denying him medical care.

Defendant also cites to *Ayala v. Aransas County*, but this case is also inapposite to the case at bar. In *Ayala*, the plaintiff got into a fight with a flashlight with police and kicked police when they tried to place him in a police vehicle. *See Ayala v. Aransas Cnty.,* CIVIL ACTION No. 2:15-CV-335 (S.D. Tex. Nov. 9, 2016). *Ayala* could not be more different from the facts presented here. *Ayala v. Aransas Cnty.*, CIVIL ACTION No. 2:15-CV-335, at *4 (S.D. Tex. Nov. 9, 2016) ("Ciarletta denies striking Ayala with his flashlight. D.E. 24-4, p. 2. Ciarletta claims that, just before the scuffle, Ayala "forcibly placed his hand" on him and pushed him so Ciarletta shoved him back. *Id*. It then appeared as if Ayala was about to "come at" Ciarletta forcefully so Ciarletta went "hands on," resulting in a short scuffle in which both Ayala and Ciarletta fell to the ground. *Id*."). These cases are anything but "identical." *See* Motion at ¶25. Defendant violated Anderson's clearly established constitutional rights by engaging in objectively unreasonable behavior when he repeatedly tased Anderson and failed to intervene when Defendant Page choked Anderson, and deprived Anderson of medical care. Plaintiffs have alleged specific facts to satisfy the two-pronged qualified immunity assessment and the Graham factors, and have demonstrated that qualified immunity does not shield Defendant from liability in this case. Thus, Defendant's motion should be denied.

Defendant's qualified immunity argument has already failed and continues to fail. Thus, he is not entitled to a stay of discovery. Defendant's reliance on *Carswell v. Camp* is misplaced. In that case, the Fifth Circuit reversed the district court's scheduling order because the district court refused to rule on qualified immunity at the earliest possible stage of the litigation. *Carswell v. Camp*, 37 F.4th 1062, 1065 (5th Cir. 2022) (internal quotations omitted).

Importantly, this Court has already ruled on the issue of qualified immunity at the earliest possible stage of litigation. On August 29, 2022, this Court denied all of the Defendants' Motions to Dismiss Plaintiffs' Complaint and Plaintiffs' First Amended Complaint. Dkt. No. 120. At this point, this Court, having already decided the qualified immunity question, may permit discovery. While the Court's Order Denying Defendants' Motions to Dismiss stated that Defendants may file their motions after the qualified immunity discovery had been completed, this is not an open-ended timeline. Dkt. No. 120. The Federal Rules of Civil Procedure limit Rule 12(b)(6) motions to twenty-one days after a defendant is served. FED. R. CIV. PROC. 12(b)(6). In this case, it is reasonable that once general discovery

began, on March 17, 2023 when this Court issued the Scheduling Order, the clock began to tick once more. Dkt. No. 158. Twenty-one days after March 17, 2023 is April 7, 2023. Defendant's Rule 12(b)(6) motion is thus, not timely and should be denied.

The fact that Defendant now asserts qualified immunity, in a motion that is not timely, and without providing any additional evidence or new arguments to support his Motion to Dismiss for Failure to State a Claim on the issue of qualified immunity, does not immediately halt all discovery—discovery which was permitted as soon as the Court denied the Defendants' qualified immunity defenses. Defendant could have appealed the order denying his qualified immunity claim but chose not to. Instead, he chose to file an Answer to Plaintiffs' First Amended Complaint. Defendant was dilatory when he filed this Motion on April 21, over a month after the Court's Scheduling Order. Defendant filed his Motion specifically in a misguided attempt to halt discovery responses which were due to Plaintiff on April 24, 2023. This gamesmanship should not be rewarded, and Defendant's Motion should be in all respects, denied.

### V. PLAINTIFFS' TORT CLAIMS SURVIVE UNDER THE TTCA

Under the TTCA, "[a] governmental unit in the state is liable for: personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *Goodman v. Harris Cty.*, 571 F.3d 388, 394 (5th Cir. 2009) (internal quotations omitted).

Anderson was tased by Defendant using a taser belonging to Defendant Harris County. Anderson was held in a car and was handcuffed by Deputy Defendants without access to water and they failed to render necessary medical attention while he was in their care. The Deputy Defendants used the tangible personal property of Defendant Harris County, the car and the handcuffs, to prevent Anderson from accessing necessary medical care.

Plaintiffs in this matter bring negligence and gross negligence actions against Harris County as a result of Anderson's restraint in a vehicle he did not want to be in, and the Deputies' negligent or grossly negligent behavior that kept medical personnel from checking Anderson while he was essentially imprisoned in Defendant's vehicle. These actions are separate and apart from the claims brought by Plaintiffs that stem from the brutal tasing and manhandling suffered by Anderson.

Section 101.021 of the Texas Practices and Remedies Code states:

> Sec. 101.021. GOVERNMENTAL LIABILITY. A governmental unit in the state is liable for:
> (1) property damage, **personal injury, and death** proximately caused by the wrongful act or omission or the negligence of an **employee acting within his scope of employment** if:
> (A) the property damage, personal injury, or death arises from the operation or **use of a motor-driven vehicle** or motor-driven equipment; and
> (B) the employee would be personally liable to the claimant according to Texas law; and
> (2) **personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law**.

TEX. CIV. PRAC. & REM. CODE § 101.021.

Were it not for the Deputies' negligent and grossly negligent actions of keeping Anderson in Defendant's vehicle and preventing the EMS crew from fully checking him following the heinous taser incident, Anderson may be alive today. Clearly, the patrol car and taser is property—personal property and not real property. Further, only agents (the Deputies in this instance) of a governmental unit, that being Defendant Harris County, is entitled to use these two pieces of personal property. Clearly, agents of a governmental unit, Deputies of Harris County, were the users of the personal property and the patrol car. The facts alleged by Plaintiffs satisfy the requirements of a clear and unambiguous legislative waiver of immunity for their negligence and gross negligence claims against Defendant.

Defendants continued to use the taser, handcuffs and car, all personal property of Defendant Harris County, to injure Plaintiff by tasing him and restraining him, thus preventing him from accessing needed medical care. Because it was within the scope of employment for Defendants to handcuff Anderson, to tase him, and to place him in a Harris County Sheriff's Office vehicle, these actions are within those required to waive immunity under the TTCA. As a result, TTCA immunity is waived, and Defendant's Motion should be denied.

Finally, Defendant relies on Section 101.106(f) of the Texas Torts Claims Act ("TTCA"), but this reliance is misplaced. TEX. CIV. PRAC. & REM. CODE § 101.106(f). Defendant should in fact be relying on Section 101.106(e) of the TTCA which states, "[i]f a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE § 101.106(e) (emphasis added). Subsection (f) describes the situation wherein, "a suit is filed [only] against an employee of a governmental unit…" TEX. CIV. PRAC. & REM. CODE § 101.106(f). Thus, all of Defendant's analysis regarding subsection (f) from paragraphs 30 through 36 of his Motion is completely inapplicable to the case before this Court because Plaintiffs have sued both Harris County (a governmental unit) and the deputies (the governmental unit's

employees). Defendant Harris County has only recently filed an (untimely) affirmative motion as required by Section 101.106(e). Only the Defendant County can move for such relief, not a county employee. TEX. CIV. PRAC. & REM. CODE § 101.106(e). Thus, none of the tort claims brought by Plaintiffs against Defendant should be dismissed. Therefore, Defendant's motion should be denied.

Furthermore, in a similar case, this Court found that the plaintiffs' state law wrongful death and survivor claims survived a motion to dismiss. *Tuttle v. City of Houston*, 2022 WL 18354110 (S. D. Tex. 2022). As in the *Tuttle* case, Plaintiffs here have established all the elements of their survival and wrongful death claims. Defendant's reliance of *Carr v. City of Spring Valley* is misplaced, because in that case, the Court ultimately dismissed all the claims against the officers because of a lack of service or lack of allegation that certain officers were present at the site of the violent acts against the plaintiff Carr. *See Carr v. City of Spring Valley, et al*.; 4:18-cv-2585, Memorandum Opinion and Order, March 20, 2019. Additionally, the *Carr* opinion is not controlling on this Court.

Plaintiffs have proven that the actions of the Deputy Defendants, including Defendant Alobaidi, caused Anderson's death. Defendant in particular tased Anderson repeatedly, did not intervene in the choking of Anderson, and did not provide him with medical care. These actions caused Anderson's death. For the survival claim, Plaintiffs pleaded that: (1) the Estate of Kenneth Anderson, Jr. was then represented by Kenneth Darius Anderson[1]; (2) Anderson had a cause of action for personal injury to his health before he died; (3) Anderson would have been entitled to bring an action for the tasing injury and denial of medical care if he had lived; and (4) Defendant's wrongful action of failing to intervene in the repeated tasing and failure to provide medical care caused Anderson's injury, ultimately resulting in his death.

As for the wrongful death claim, Plaintiffs have already pleaded that (1) each of the Plaintiffs is a statutory beneficiary of Anderson, in that each of the Plaintiffs is either Anderson's child or his estate; (2) the defendant is a person—Defendant Deputy Page; (3) Defendant's wrongful act of failing to intervene in the continued unlawful tasing and failing to provide him with medical care caused the death of Anderson; (4) Anderson would have been entitled to bring an action for his injuries if he had lived; and (5) each of the Plaintiffs suffered actual injury in that Anderson's children can no longer spend time with him, and suffer from a loss of consortium. Furthermore, Plaintiffs' claims for violations of the ADA and

---

[1] There was a hearing in Probate Court Number 4, cause number 501,254 to have the Estate's affidavit of heirship signed and the order appointing administrator of the Estate of Kenneth Anderson Jr. signed on April 26, 2023. That Court approved the affidavit of heirship and will sign the proposed order.

the RA can produce the underlying injury for wrongful death, survival, and loss of consortium claims. As such, Plaintiffs respectfully request that this Court deny Defendant's Motion in its entirety.

## VI. DEFENDANT IS NOT ENTITLED TO A STAY OF DISCOVERY

Defendant's qualified immunity argument has already failed and continues to fail. Thus, he is not entitled to a stay of discovery. Plaintiffs incorporate the contents of their Response to Defendants' Motions for Protection and Motions to Stay All Discovery, as if fully set forth herein verbatim. Dkt. No. 178, filed April 25, 2023.

## VII. CONCLUSION

For the above-stated reasons, Plaintiffs respectfully request that this Court deny Defendant's Renewed Motion to Dismiss Plaintiffs' First Amended Complaint and Motion to Stay. Plaintiffs further request any other relief to which they may be justly entitled.

Respectfully submitted,

**EDWARDS SUTARWALLA PLLC**

By: _/s/ George Edwards III_
George Edwards III
Fed. Id. No. 1031248
Eman Patricia Arabi Katbi
Fed. Id. No. 3355458
Stephany M. Simien
Fed. Id. No. 3698005
602 Sawyer Street, Suite 490
Houston, Texas 77007
Phone: (713) 565-1353
Fax: (713) 583-8715
Email: george@eslawpartners.com
Email: eman@eslawpartners.com
Email: stephany@eslawpartners.com
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing instrument has been served in compliance with Federal Rules of Civil Procedure Rule 5(b)(2) on May 8, 2023.

_/s/ George Edwards III_
George Edwards III