**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ESTATE OF KENNETH ANDERSON, JR.,** | § | |
| **KENNETH DARIUS ANDERSON,** | § | |
| **KRISTEN SANDOVAL, A/N/F OF** | § | |
| **N.B.A. AND N.K.A., AND ALL** | § | |
| **WRONGFUL DEATH BENEFICIARIES** | § | |
| **OF KENNETH ANDERSON JR.** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:21-CV-03730** |
| | § | |
| | § | |
| **HARRIS COUNTY, TEXAS,** | § | |
| **DEPUTY MOHANAD ALOBAIDI,** | § | |
| **DEPUTY CRISTAL ESTRADA,** | § | |
| **DEPUTY VICTOR PAGE, AND** | § | |
| **DEPUTY MERCY GARCIA-FERNANDEZ** | § | |
| | § | |
| *Defendants* | § | |

---

**EVELYN AYERS-WOODS' THIRD AMENDED COMPLAINT AND KENNETH
ANDERSON, SR.'S SECOND AMENDED COMPLAINT IN INTERVENTION**

---

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW **Intervenor-Plaintiff Evelyn Fay Ayers-Woods** and **Kenneth
Anderson, Sr.**, complaining of **Defendants Harris County, Texas**, **Mohanad Alobaidi,
Cristal Estrada, Mercy Garcia-Fernandez, and Victor Page (collectively "Defendants")**
and for cause of action would respectfully show unto this Honorable Court the following:

**I.**
**NATURE OF ACTION, JURISDICTION AND VENUE**

1.      This cause of action arises out of the October 10, 2021 in-custody death from use of excessive force against Kenneth Anderson, Jr. which took place in Houston, Harris County, Texas.

2.      This cause of action is for money damages brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of United States citizen Kenneth Anderson, Jr.'s clearly established rights under the Fourth and Fourteenth Amendments to the United States Constitution against Defendant Mohanad Alobaidi, Cristal Estrada, Victor Page, and Mercy Garcia-Fernandez ("Deputy Defendants"), in their respective capacities as duly-certified law enforcement officers employed by the Harris County Sheriff's Office, for their respective violations of Mr. Anderson's clearly established rights to be free from unlawful detention, the use of excessive force, and against Harris County, Texas for its unconstitutional policies, customs, culture or practices under *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) and its progeny.

3.      This case arises under the United State Constitution, including the Bill of Rights, and 42 U.S.C. §§ 1983, 1988.  This Court has jurisdiction over federal questions in this matter pursuant to 28 U.S.C. §§ 1331, 1343.

4.      This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) (West 2023).

5.      The actions complained of and all of the facts surrounding such incident and its aftermath took place in this judicial district and division, the Intervenor-Plaintiff Evelyn Ayers-Wood is a United States Citizen and resident of Houston, Harris County, Texas and Kenneth Anderson, Sr. is a United States citizen and resident of another state, Mohanad Alobadi, Cristal Estrada, Mercy Garcia-Fernandez, and Victor Page were acting under the color of state law as deputies of the

Harris County Sheriff's Office, a sub-division or part of Harris County, Texas, which is located entirely within this district and division, and all witnesses, documents, records and evidence, or the overwhelming majority thereof are located within this district and division.

## II.
## PARTIES

6.      Intervenor-Plaintiff Evelyn Fay Ayers-Woods is a natural person and United States citizen and who is the mother of Kenneth Anderson, Jr. a man who was born on December 19, 1978 and who is the detainee, decedent, and subject of the civil rights violations in this lawsuit.

7.      Intervenor-Plaintiff Kenneth Anderson, Sr. is a natural person and United States citizen who is the father of Kenneth Anderson, Jr. who is the detainee, decedent, and subject of the civil rights violations in this lawsuit.

8.      Defendant Harris County, Texas is the governmental entity and/or political subdivision of the State of Texas also sometimes known as a municipal entity of which the Harris County Sheriff's Office is a subdivision or part thereof where it has answered and made an appearance herein.

9.      Defendant Mohanad Alobaidi is a natural person and upon information and belief, at the time of this incident was a Naturalized United States Citizen and former citizen of the Country of Iraq and was a duly appointed and sworn Deputy of the Harris County Sheriff's Office of Harris County, Texas who has appeared and answered herein.

10.     At all times material to this cause Mohanad Alobaidi was acting in his individual capacity and/or under the color of state law and within the scope of his employment with the Harris County Sheriff's Office of Harris County, Texas.

11.     Defendant Cristal Estrada is a natural person and upon information and belief, at the time of this incident was a United States citizen and was a duly appointed and sworn Harris County Sheriff's Office Deputy of Harris County, Texas who has appeared and answered herein.

12.     At all times material to this cause Cristal Estrada was acting in her individual capacity and/or under the color of state law and within the scope of her employment with the Harris County Sheriff's Office of Harris County, Texas.

13.     Defendant Victor Page is a natural person and upon information and belief, at the time of the incident was a United States citizen and was a Harris County Sheriff's Office Deputy of Harris County, Texas who has appeared and answered herein.

14.     At all times material to this cause Victor Page was acting in his individual capacity and/or under the color of state law and within the scope of his employment with the Harris County Sheriff's Office of Harris County, Texas.

15.     Defendant Mercy Garcia-Fernandez is a natural person and upon information and belief, at the time of the incident was a United States citizen and was a Harris County Sheriff's Office Deputy of Harris County, Texas who has appeared and answered herein.

16.     At all times material to this cause Mercy Garcia-Fernandez was acting in her individual capacity and/or under the color of state law and within the scope of her employment with the Harris County Sheriff's Office of Harris County, Texas.

### III.
### STATEMENT OF UNDERLYING FACTS

17.     Summary: Middle-aged Black man Kenneth Anderson was clearly suffering from a mental disability and/or impairment, and who just survived a single-car crash, was generally kind and cooperative, was bleeding and in need of medical care, where the Harris County Sheriff's Officers who arrived on the scene oddly but immediately secured him with handcuffs, delayed significantly

4

with no clear command of the scene, did not facilitate his transport to a care facility upon arrival of emergency medical technicians even though an officer stated that they would not take him at the jail in his condition, but rather placed him in the back of a law enforcement cruiser, then in further delay transported him to a nearby gas station, temporarily misidentified him as a possible "murder suspect" only to declassify him at the scene as such, then a Harris County Sheriff's Deputy removed him for no clear reason from that cruiser, delayed further, became aggressive unnecessarily without provocation against Mr. Anderson, deployed a taser not to incapacitate Mr. Anderson but to only to inflict pain known as drive-stunning, tased Mr. Anderson in the torso and neck and hip, choked and abused him physically while he asked for help while having an issue loading him in the back of the second law enforcement vehicle and again refused to facilitate proper medical care or his transport to a care facility upon arrival of second emergency medical technicians who found him unconscious and/or utterly lethargic where Mr. Anderson then died in the back of the second law enforcement vehicle where the law enforcement officers didn't bother to notice until they arrived at the Harris County Jail about a half-hour later.

18.    In the early hours of October 10, 2021, Defendant Harris County Deputy Cristal Estrada arrived on the scene of a what appeared to be a single-vehicle motor vehicle collision located at or near the 15400 block of Kuykendahl Road near the 2400 block of Bammelwood Drive in Harris County, Texas a little after 3:24 a.m.

19.    Defendant Estrada activated her body worn camera that was capturing sound and video at that time and appears to have had a brief discussion with a tow truck driver who was already there.

20.    The crashed vehicle, a white Mercedes sedan, was angled in the direction opposite of the normal flow of traffic where the wheel was making contact with the curb and music could be heard coming from its sound system.

5

21.     The vehicle was visibly damaged.

22.     Mr. Kenneth Anderson, Jr. was in the driver's seat of the crashed vehicle, bleeding.

23.     Defendant Estrada approached and tapped with purpose on the driver's side window.

24.     Mr. Anderson did not or could not respond.

25.      Defendant Estrada tapped on the glass again and then shown her light in the vehicle.

26.     Mr. Anderson still did not respond.

27.     Defendant Estrada then tried the door of the crashed vehicle, but it was locked, so she tapped on the glass again, and then walked to her cruiser.

28.     Defendant Estrada remarked after she investigated Mr. Anderson and his vehicle that she had seen blood and that she was going to block the road and did so.

29.     Defendant Estrada then commanded Mr. Anderson turn off the vehicle.

30.     Mr. Anderson then appears to have responded verbally.

31.     Defendant Estrada told Mr. Anderson that they had an ambulance coming to him.

32.     Defendant Estrada then told Mr. Anderson to turn down the radio and told him to take off his seatbelt.

33.     Mr. Anderson said he could not, then Defendant Estrada then asked why and then Mr. Anderson asks her to take it off please.

34.     At this point, other Harris County Sheriff's Office Deputies begin to appear on the scene.

35.     Mr. Anderson exits his crashed vehicle.

36.     Mr. Anderson was unarmed.

37.     Mr. Anderson did not physically threaten anyone including the officers.

38.     Mr. Anderson did not verbally threaten anyone including the officers.

39.     Mr. Anderson did not attempt to flee.

40.    Mr. Anderson was not violent.

41.    Mr. Anderson posed no danger to anyone including the officers.

42.    Just then, a male Harris County Sheriff's Office Deputy, believed to be Juan Flores without any apparent provocation used profanity, telling Mr. Anderson to "turn the f*** around".

43.    The male law enforcement officer then uses force, grabs Mr. Anderson and shoves Mr. Anderson against the crashed vehicle.

44.    Mr. Anderson said nothing, and placed his right arm on the roof of the crashed vehicle.

45.    Mr. Anderson appeared vacant.

46.    Mr. Anderson was gentle and calm as a lamb.

47.    Mr. Anderson was visibly injured.

48.    At this point, no treatment was offered to Mr. Anderson for a traumatic brain injury and/or his bleeding injury and/or any bodily injury.

49.    No officer that night bothered to ask Mr. Anderson if he had a mental disability and/or traumatic brain injury and/or intellectual disability.

50.    Mr. Anderson did not struggle or resist.

51.    The male law enforcement officer then handcuffed Mr. Anderson.

52.    Mr. Anderson was not read his rights.

53.    No law enforcement officer verbalized any charges or suspected charges against Mr. Anderson to Mr. Anderson.

54.    At this point, no law enforcement officer asked Mr. Anderson about his injuries.

55.    At this point, no law enforcement officer asked Mr. Anderson what happened.

56.    At this point, no law enforcement officer asked Mr. Anderson about the crash.

57.     Mr. Anderson then was led in the street in handcuffs between a fire truck and at least one cruiser.

58.     Mr. Anderson then left to stand around in handcuffs for an extended period of time.

59.     Mr. Anderson's wallet was retrieved from his right rear pocket and the whole time Mr. Anderson just stared absently, yet peaceably.

60.      Defendant Estrada searched the wallet, found nothing, and then tossed it into the driver's seat of the crashed vehicle.

61.     Defendant Estrada asked Mr. Anderson his name and Mr. Anderson said in a stilted manner, "Kenny."

62.     Defendant Estrada then proceeds to assist a male law enforcement officer conduct a search of the crashed vehicle where nothing of any consequence was found or collected.

63.     Who appears to be a female emergency medical technician then asks Defendant Estrada what is going on.

64.     Defendant Estrada says that Mr. Anderson is in cuffs and that she was passing by and saw Mr. Anderson slumped over in the car and had noticed blood coming from his arms or hands.

65.     The technician then asked why Mr. Anderson was in custody.

66.     Defendant Estrada replied saying that was in custody was because Mr. Anderson would not get up.

67.     Motor vehicle crash victims oftentimes are unable to respond as may be expected.

68.     Traumatic brain injury victims and/or those suffer from impairment and/or a mental disability oftentimes are unable to respond to verbal cues or commands as may be expected.

69.     Defendant Estrada then expressed uncertainty to the emergency medical technician as to whether or not law enforcement was going to take Mr. Anderson.

70.    Defendant Estrada then expressed that the emergency medical technician needed to check out Mr. Anderson real quick and that law enforcement would go from there.

71.    At that point, a male law enforcement officer then expressed that he thought maybe Mr. Anderson was a 10-32 (gun) murder suspect.

72.    A male law enforcement officer then appears to make a downward motion with his left hand in front of Defendant Estrada where immediately, Defendant Estrada then mutes her body worn camera, which then stays muted for approximately forty minutes or so.

73.    During the time of the muted microphone from Defendant Estrada's body worn camera, Defendant Estrada talks to other male law enforcement officers at the scene for some time.

74.    Harris County Sheriff's Deputy DeLeon then said to Mr. Anderson something to the effect that they were going to check Mr. Anderson out and make sure he was not about to die.

75.    Sadly, he was wrong.

76.    Who appears to be Deputy DeLeon then says to Mr. Anderson that his vitals and blood pressure was going to be checked.

77.    Mr. Anderson then said something to the effect of 'hey look' and moved his head in an abnormal manner.

78.    Another Deputy verbalizes at the scene in the presence of other officers that Mr. Anderson was bleeding.

79.    Mr. Anderson was then asked by that Deputy when was his birthday and Mr. Anderson did not respond with a date but rather repeated the word "birthday".

80.    A reasonable officer would have recognized at this point that Mr. Anderson was suffering from a mental disability and/or impairment and/or a traumatic brain injury and/or an intellectual disability.

81.     A reasonable officer would have recognized at this point that Mr. Anderson required some degree of medical care and/or should have at that point facilitated that care.

82.     Mr. Anderson then appears to stand in front of a fire truck and breathing or grunting in a loud and audibly abnormal manner for some time.

83.     What appears to be a female emergency medical technician then asks Deputy DeLeon who is sitting in a cruiser something to the effect of what is Mr. Anderson a suspect.

84.     Officer DeLeon then replies something to the effect that he had 'no idea', that he was just back up but that they think he was connected to a 'possible' murder.

85.     Who appears to be a female emergency technician then asks of whom and who appears to be Deputy DeLeon then says something to the effect of 'I have no idea'.

86.     Officer DeLeon then offers to run his information for her and remarks something to the effect that Mr. Anderson was growling although he was some distance from the cruiser.

87.     Who appears to be Defendant Mercy Fernandez-Garcia then appears to have remarked that they were not going to take Mr. Anderson to the jailhouse in his present condition.

88.     At this point, there a reasonable officer would have facilitated the transport of Mr. Anderson to a care facility rather than jail.

89.     A reasonable officer would have observed the requirements of the Texas Health and Safety Code that require transport to the nearest appropriate care facility.

90.     It was objectively unreasonable for the Deputy Defendants to ignore TEXAS HEALTH AND SAFETY CODE ANN. §573.001 (West 2023) requiring transport Mr. Anderson to a care facility and/or release Mr. Anderson to emergency medical technicians given his condition.

91.     At this point, a reasonable officer would have challenged any decision to transport of Mr. Anderson to jail rather than a care facility like a hospital or clinic.

92.     Who appears to be the female emergency technician then said something to the effect that you want us (meaning the medical team) to take him now and who appears to be Defendant Garcia Fernandez replied yes.

93.     The female emergency medical technician then asked if he was going to be in custody still and the other female replied no, no.

94.     A reasonable officer would have followed through on that directive, but that did not happen.

95.     who appears to be Defendant Garcia Fernandez said something to the effect that it was a negative for that info which could reasonably be inferred to be negative for Mr. Anderson being suspected of murder.

96.     The female medical technician appears to have requested confirmation that Mr. Anderson was not in custody at all anymore and asked if they were going to take the handcuffs off.

97.     Who appears to be Deputy DeLeon appears to have said back-up out and laughed but then said they expected to do a blood draw.

98.     Who appears to be Deputy DeLeon then explains that the reason why is only because if Mr. Anderson goes to jail and something happens to him, it's an in-custody death and its going to be 'on us'.

99.     Mr. Anderson can still be heard breathing or grunting in a loud and audibly abnormal manner.

100.    Who appears to be Deputy DeLeon then stated something to the effect that he had checked a scar and matched it with Mr. Anderson and stated something to the effect that's him.

101.    Officer DeLeon then appears to say speak of the devil at the time Deputy Alobaidi appears on the scene, then mutes his microphone on his body worn camera and then holds a discussion with Deputy Page and Deputy Mercy Garcia-Fernandez.

102.    Officer DeLeon then appears to hold a discussion with Deputy Alobaidi with his microphone muted.

103.    Mr. Anderson is then led to sit on a law enforcement cruiser.

104.    The handcuffed Mr. Anderson then appears to collapse face-down on the hood of the cruiser.

105.    One female then remarks that Mr. Anderson was hyperventilating and who appears to be another female said yeah.

106.    A female then remarked about his heart rate.

107.    A reasonable officer would have acted with greater concern and/or urgency to attend to the growing medical needs of Mr. Anderson, but that did not happen.

108.    It was objectively unreasonable for the officers on the scene to proceed with deliberate indifference, as they appeared to do.

109.    Mr. Anderson then stands again.

110.    Mr. Anderson's condition was clearly deteriorating, yet the officers appeared indifferent and/or callously disregarded this fact.

111.    Deputy DeLeon then appears to have asked Mr. Anderson what happened to your hands, how come they're bleeding?

112.    Mr. Anderson was unresponsive to the question and faced and appears to have stared off into the flashing police lights of the cruiser in front of which he was standing.

113.    Deputy DeLeon then appears to have muted his microphone once again, then unmuted it a while later.

114.    Deputy DeLeon then asks Mr. Anderson to sit on the car and Mr. Anderson complies as he had done during this encounter.

115.    Deputy DeLeon then appears to state that you're bleeding and asks Mr. Anderson what happened to your hands?

116.    Mr. Anderson appears to be unresponsive to the question and stands with his head hanging down.

117.    Mr. Anderson then turns around and appears to stare blankly at the ground.

118.    At this time, Defendant Estrada appears to have unmuted her microphone which, again, had been muted for about forty minutes.

119.    The handcuffed Mr. Anderson then appears to sit on the cruiser in what appears to be a vacant but peaceful manner while attempting to continually orient himself.

120.    He is then led to the back of a law enforcement cruiser where his entry appears to have been assisted by Deputy DeLeon.

121.    Defendant Alobaidi then approaches the handcuffed Mr. Anderson, who appears vacant.

122.    Upon Defendant Alobaidi's arrival, everything at the scene changed and things took a turn for the worse.

123.    Defendant Alobaidi then aggressively confronts Mr. Anderson for no apparent reason by saying something to the effect of what's up, you out of it?

124.    Defendant Alobaidi appears to remark that Mr. Anderson was bleeding.

125.    Defendant Alobaidi did not attempt to attend to Mr. Anderson's injuries.

126.    Defendant Alobaidi did not insist that someone attend to Mr. Anderson's injuries.

127.   Mr. Anderson appears to remain standing without incident with five or six law enforcement officers surrounding him, still vacant and apparently deteriorating.

128.   Defendant Estrada remarked that Mr. Anderson had a lot of blood on him.

129.   Defendant Alobaidi then asked Mr. Anderson to sit down, but Mr. Anderson did not properly process the communication.

130.   Although about an hour had passed after then Defendant Estrada arriving on the scene, 5he Defendant Deputies at this point appeared unable to confirm that a Mr. Anderson had an open warrant for murder.

131.   Defendant Alobaidi then suggested that they take Mr. Anderson in for driving while intoxicated but appeared to remark that he could not take him.

132.   The Defendant Deputies did not appear to have a well-established custody plan due to the mismatch between their inability to find an open warrant and their desire to hold Mr. Anderson.

133.   Mr. Anderson was then placed without incident into the back of the Defendant Estrada's cruiser.

134.   A reasonable officer would not have removed the handcuffed Mr. Anderson from the back of the cruiser.

135.   The cruiser appeared to be in good working condition and able to successfully transport Mr. Anderson.

136.   Defendant Estrada then instructed the emergency medical technicians to leave and they did.

137.   A reasonable officer would have either transported Mr. Anderson to a care facility or facilitate the transport of Mr. Anderson to a care facility by emergency medical technicians.

138.    By dismissing the emergency medical technicians at this time, Defndant Estrada exposed Mr. Anderson to a risk of bodily harm and/or substantial risk of harm.

139.    At this point in the timeline, it cannot be reasonably be denied Defendants knew Mr. Anderson was either impaired and/or suffered a mental disability and/or suffered a traumatic brain injury and/or an intellectual disability and/or under the influence of a controlled substance.

140.    At this point in the evening and cannot be reasonably denied that Defendants knew Mr. Anderson was not processing simple communications.

141.    At this point in the evening, it cannot be denied that Defendants subjected Mr. Anderson to elevated external and internal temperatures.

142.    At this point in the evening, it cannot be denied that the Harris County deputies chose to lack knowledge of Mr. Anderson's vital signs.

143.    The Harris County deputies could have allowed Mr. Anderson to be taken by the emergency medical technicians to a care facility but made a choice to not allow him access to proper medical care.

144.    Defendant Mohanad Alobaidi and/or Defendant Estrada and/or Defendant Mercy Garcia-Fernandez and/or Defendant Victor Page increased the risk of serious bodily harm to Mr. Anderson by dismissing the emergency medical technicians and/or delaying and/or providing Mr. Anderson access to proper medical care.

145.    Defendant Estrada then transported Mr. Anderson to a nearby gas station.

146.    Mr. Anderson then attempted to gain the attention of Defendant Estrada.

147.    At this point, Defendants knew he was bleeding, impaired and/or suffering from some mental disability, had an elevated heart rate, appears to have been hyperventilating, moaning, and

was standing around in the late-night Houston heat for an extended period of time without any first aid.

148. Defendant Estrada then replies rudely that she did not have to look at him and told him to 'just talk'.

149. Defendant Alobaidi at the gas station remarked that he believed Mr. Anderson was a murder suspect, although that information was false and known to be false to at least one or more other deputy at the time.

150. The Deputy Defendants then have a discussion that was not recorded but then Defendant Alobaidi then approached Defendant Estrada's cruiser and responded to Mr. Anderson's request for water.

151. Mr. Anderson is then removed at the command of Defendant Alobaidi from the cruiser and states verbalizes his deteriorating condition by stating that he was tired.

152. Defendant Alobaidi then appears to verbally abuse Mr. Anderson without any provocation or good cause by stating aggressively something to the effect, 'wanna look mean? Is that what you're doing'?

153. Mr. Anderson takes the abuse and makes no response.

154. Mr. Anderson volunteered to Defendant Mohanad Alobaidi that he had taken a controlled substance, sherm, which is another name for phencyclidine (PCP).

155. Defendant Alobaidi refuses to ask Mr. Anderson about the dose, duration, or frequency of the allegedly ingested drug.

156. Mr. Anderson, in the sense of a most macabre premonition, asks Defendant Mohanad Alobaidi, 'you ain't gonna tase me?'

157. Defendant Alobaidi lies and says, 'I ain't gonna tase you.'

158.    As time passes, Mr. Anderson's condition deteriorates significantly and he now is having trouble being loaded into the Tahoe.

159.    Defendant Alobaidi threatened Mr. Anderson by yelling something to the effect, 'I'll f****** tase you, I don't care'.

160.    Mr. Anderson then appears to be very disoriented yet still the Deputy Defendants do nothing to address his medical condition.

161.    Mr. Anderson does not appear to be able to process a simple request to sit down.

162.    Defendant Alobaidi then remarks that we do not have to tase you, right?

163.    Clearly Mr. Anderson who is in handcuffs is posing no threat whatsoever and is visibly in need of medical attention.

164.    The Deputy Defendants completely ignore this fact.

165.    Defendant Alobaidi then becomes aggressive and asks Mr. Anderson if they have to fight him, although Mr. Anderson appears very weak and confused.

166.    Defendant Alobaidi had no reason to escalate, but chooses to do so regardless.

167.    Defendant Alobaidi apparently recognizes that Mr. Anderson is having a problem with his temperature because he asks another deputy to turn the AC on.

168.    Defendant Alobaidi proceeds to give Mr. Anderson some water from a cup.

169.    At this point, the deputies had an opportunity to recall the emergency medical technicians but chose not to.

170.    Mr. Anderson keeps repeating the word water, but the deputies were indifferent to this request as they were appeared to be more interested in loading them into the Tahoe.

171.    The deputies completely ignored Mr. Anderson's our display of his need for immediate medical attention.

172.   Mr. Anderson's head and torso are inside the Tahoe at this point but his legs are not, yet he keeps repeating the words water and please.

173.   Apparently the deputies have now decided to become unnecessarily aggressive and physically abusive, despite that Mr. Anderson's health is visibly failing and needs immediate medical attention.

174.   Mr. Anderson did not swear, he did not appear angry nor did he appear aggressive.

175.   It was the Harris County deputies who exploit a clear medical emergency for an opportunity to display power and exert excessive force unnecessarily.

176.   Mr. Anderson then appears to attempt to maintain an adequate supply of air by using his feet to prevent the door being closed, but apparently the deputies did not like that and began to use the door to smash his feet.

177.   It was apparent at this point that Mr. Anderson was simply trying to survive as even when they shut the door, he said no please.

178.   At this point the deputies begin to physically abuse and/or manhandle Mr. Anderson from the other side of the vehicle and exert a greater amount of force than necessary for the situation given that he was still in handcuffs and not giving any verbal clues as to anger or resistance.

179.   Defendant Alobaidi now appears to be very angry and threatens unnecessarily to tase Mr. Anderson.

180.   Mr. Anderson then says (as a child might repeat a word he heard) tase me, tase me.

181.   Defendant Alobaidi then pressed the taser against Mr. Anderson multiple times in anger.

182.   The taser in question is an Axon taser and delivers 50,000 volts and can either be used to inflict pain or incapacitate a person.

183.    The Axon taser manufacturer recommends a 12-inch spread of electrodes for neuro-muscular incapacitation.

184.    Pressing a taser very close to or against a person's skin is a known as a drive-stun.

185.    According to the manufacturer, Axon, drive stuns alone cause only localized pain not NMI (neuro-muscular incapacitation).

186.    It is widely known that drive stuns alone cause only localized pain not NMI (neuro-muscular incapacitation).

187.    It is commonly known by peace officers, particularly those in the Harris County Sheriff's Office, that drive stuns alone cause only localized pain not NMI (neuro-muscular incapacitation).

188.    A reasonable officer would not have drive-stunned Mr. Anderson under the circumstances, but rather would have used the taser in a manner that resulted in neuro-muscular incapacitation.

189.    Defendant Alobaidi's actions in this regard was particularly objectively unreasonable.

190.    Defendant Alobaidi wanted to injure rather than incapacitate Mr. Anderson and so chose to drive stun Mr. Anderson.

191.    Defendant Alobaidi drive-stunned Mr. Anderson in the upper torso.

192.    Following his first drive-stun into Mr. Anderson's upper torso, Alobaidi again drive-stunned Mr. Anderson, this time for an extended period of time.

193.    Defendant Alobaidi drive-stunned Mr. Anderson in the hip.

194.    Defendant Alobaidi drive-stunned Mr. Anderson in the neck.

195.    Mr. Anderson was in handcuffs the whole time.

196.    Defendant Alobaidi appears to have drive-stunned Mr. Anderson five (5) times for at least twenty-four (24) seconds in a span of just two minutes.

197.    A reasonable peace officer knows that a taser can certainly be lethal when used in such a manner.

198.    A reasonable peace officer knows that when a person presents with clear evidence of experiencing an adverse health condition such as Mr. Anderson, that the use of a taser particularly a drive stun can cause death.

199.    Defendants knew this, but were consciously indifferent.

200.    Such was objectively unreasonable.

201.    Given the circumstances these actions by Defendant Alobaidi were objectively unreasonable.

202.    After that Defendant Victor Page chokes Mr. Anderson in the other deputies join in manhandling and pulling on the head torso and legs and wrists in handcuffs of Mr. Anderson.

203.    None of the deputies stopped to think about or even question what they were doing, they joined in the path of anger and unnecessary use of force which was totally unreasonable for the circumstances.

204.    Mr. Alobaidi excitedly remarks that he tased him four times.

205.    After the drive-stunning, Mr. Anderson became extremely lethargic and lost consciousness.

206.    Emergency medical technicians were then called back and reported that Mr. Anderson was in distress.

207.    Despite having this information and despite the fact that Mr. Anderson was unresponsive, Defendant Mohanad Alobaidi, Defendant Cristal Estrada, Defendant Mercy Garcia-Fernandez, and Defendant Victor Page did not facilitate and/or promote and/or insist on the transport of Mr. Anderson to a care facility but rather the Harris County Jail.

208.    Mr. Anderson is then transported to the Joint Processing Center where neither Defendant Alobaidi or Defendant Garcia-Fernandez bother to observe or interact with Mr. Anderson, who died in their custody.

209.    Defendants Alobaidi and Garcia-Fernandez then arrive at the Joint Processing Center in downtown Houston, Texas.

210.    Defendant Mercy Garcia-Fernandez said I'm sure he's still alive.

211.    Defendant Alobaidi then asks, 'he was alive?'

212.    Upon arrival these Defendants Alobaidi and Garcia-Fernandez wait a long time before attempting to attend to Mr. Anderson.

213.    Finally realizing they had a problem, CPR was attempted, but to no avail.

214.    Mr. Anderson died in their custody and Defendants are responsible for causing his death.

215.    Further, it was Harris County's policy, custom, practice and/or culture regarding, excessive force and/or mental health assessments and/or care facility transport versus jail transport and/or taser policies, among others, that caused Mr. Anderson's death.

216.    The moving force behind Mr. Anderson's death was in fact the policies, customs, practices and culture of the Harris County Sheriff's Office, and this could have been avoided had Sheriff Ed Gonzalez not been deliberately indifferent.

## IV.
## CAUSES OF ACTION

### A. 42 U.S.C. § 1983 Claims against Mohanad Alobaidi, Cristal Estrada, Mercy Garcia-Fernandez, and Victor Page:

#### (a)    Excessive Force

217.    Intervenor-Plaintiffs incorporate paragraphs 1-216 fully herein as if set forth verbatim where Intervenor-Plaintiffs assert claims against Defendant Mohanad Alobaidi, Defendant Cristal

Estrada, Defendant Mercy Garcia-Fernandez, and Defendant Victor Page, pursuant to 42 U.S.C. § 1983, who under the color of state law and within the course and scope of their official duties and employment in their capacities as Harris County Sheriff's Office Deputies and based upon their deprivation of and violation of Mr. Kenneth Anderson's clearly established rights, under the Fourth and/or Fourteenth, and/or the Eighth Amendments to the United States Constitution, where Mr. Anderson was entitled to due process during his encounter and/or detention and/or arrest and/or pretrial detention protecting him from excessive force including deadly force.

218.    Intervenor-Plaintiffs complain that their son, Kenneth Anderson, Jr., sustained: (1) one or more injury including death; (2) that resulted directly from the use of force by Defendant Mohanad Alobaidi and/or Defendant Cristal Estrada and/or Defendant Mercy Garcia-Fernandez and/or Defendant Victor Page that was excessive to the need; and (3) the excessiveness of the force was objectively unreasonable.

219.    As described in the preceding paragraphs, Mohanad Alobaidi, Cristal Estrada, Mercy Garcia-Fernandez, and/or Victor Page violated Mr. Anderson's clearly established rights to be secure against unreasonable seizures through the use of excessive force.

220.    Any reasonable law enforcement officer would know or should have known of these clearly established rights at the time of Mr. Anderson's death.

221.    The misconduct described herein was unreasonable and undertaken with willfulness and reckless indifference to the rights of others.

222.    The misconduct and excessive force described herein shocks the conscious because Mr. Anderson was already subdued and handcuffed at the time of use of the excessive force and/or deadly force.

223.    As a direct and proximate result of the violation of Mr. Anderson's constitutional rights by Mohanad Alobaidi, Cristal Estrada, Mercy Garcia-Fernandez, and/or Victor Page, Intervenor-Plaintiffs suffered general and special damages as alleged in this Complaint and are entitled to relief under 42 U.S.C. § 1983, 1988.

224.    Intervenor-Plaintiffs are entitled to exemplary damages because the acts or omissions by Mohanad Alobaidi, Cristal Estrada, Mercy Garcia-Fernandez, and/or Victor Page were motivated by malice and/or involved reckless or callous indifference to Mr. Anderson's rights.

**(b)    Excessive Force: Bystander Liability**

225.    Intervenor-Plaintiffs incorporate paragraphs 1-224 fully herein as if set forth verbatim where each Deputy Defendant including Mohanad Alobaidi, Cristal Estrada, Mercy Garcia-Fernandez, and Victor Page, pursuant to 42 U.S.C. § 1983, who under the color of state law and based upon their deprivation of and violation of Mr. Kenneth Anderson's clearly established rights, under the Fourth, Fourteenth, and the Eighth Amendments to the United States Constitution, to be entitled to due process during Mr. Anderson's detention and/or arrest and/or pretrial detention protecting him from excessive force.

226.    Defendants Mohanad Alobaidi, Cristal Estrada, Mercy Garcia-Fernandez, and/or Victor Page are liable to Intervenor-Plaintiffs for excessive force bystander liability, whose elements are established where the law enforcement officer: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.

227.    At all times material to this cause, Mohanad Alobaidi, Cristal Estrada, Mercy Garcia-Fernandez, and Victor Page were physically present at the scene of one or more constitutional violation during the time of the incident made the basis of this lawsuit.

228.    As described in the preceding paragraphs, Defendant Mohanad Alobaidi is responsible for bystander liability during the episodes of excessive force used by Defendant Cristal Estrada on Mr. Anderson where Defendant Cristal Estrada directly and personally grabbed and/or choked and/or pulled and/or manhandled and/or twisted the arms and/or legs and/or wrists and/or head and/or neck and/or torso and/or feet and/or handcuffs of Mr. Anderson, among other things, herself directly and/or in concert with Defendant Mercy Garcia-Fernandez and/or Defendant Victor Page.

229.    As described in the preceding paragraphs, Defendant Mohanad Alobaidi is responsible for bystander liability during the episodes of excessive force used by Defendant Mercy Garcia-Fernandez on Mr. Anderson where Defendant Mercy Garcia-Fernandez directly and personally grabbed and/or choked and/or pulled and/or manhandled and/or twisted the arms and/or legs and/or wrists and/or head and/or neck and/or torso and/or feet and/or handcuffs of Mr. Anderson, among other things, herself directly and/or in concert with Defendant Cristal Estrada and/or Defendant Victor Page.

230.    As described in the preceding paragraphs, Defendant Mohanad Alobaidi is responsible for bystander liability during the episodes of excessive force used by Defendant Victor Page on Mr. Anderson where Defendant Victor Page directly and personally grabbed and/or choked and/or pulled and/or manhandled and/or twisted the arms and/or legs and/or wrists and/or head and/or neck and/or torso and/or feet and/or handcuffs of Mr. Anderson, among other things, himself directly and/or in concert with Defendant Cristal Estrada and/or Defendant Mercy Garcia-Fernandez.

231.    As described in the preceding paragraphs, Defendant Cristal Estrada is responsible for bystander liability during the episodes of excessive force used by Defendant Mohanad Alobaidi on Mr. Anderson where Defendant Mohanad Alobaidi directly and personally grabbed and/or

choked and/or pulled and/or manhandled and/or twisted the arms and/or legs and/or wrists and/or head and/or neck and/or torso and/or feet and/or handcuffs of Mr. Anderson, among other things, herself directly and/or in concert with Defendant Mercy Garcia-Fernandez and/or Defendant Victor Page.

232.    As described in the preceding paragraphs, Defendant Cristal Estrada is responsible for bystander liability during the episodes of excessive force used by Defendant Mercy Garcia-Fernandez on Mr. Anderson where Defendant Mercy Garcia-Fernandez directly and personally grabbed and/or choked and/or pulled and/or manhandled and/or twisted the arms and/or legs and/or wrists and/or head and/or neck and/or torso and/or feet and/or handcuffs of Mr. Anderson, among other things, herself directly and/or in concert with Defendant Mohanad Alobaidi and/or Defendant Victor Page.

233.    As described in the preceding paragraphs, Defendant Cristal Estrada is responsible for bystander liability during the episodes of excessive force used by Defendant Victor Page on Mr. Anderson where Defendant Victor Page directly and personally grabbed and/or choked and/or pulled and/or manhandled and/or twisted the arms and/or legs and/or wrists and/or head and/or neck and/or torso and/or feet and/or handcuffs of Mr. Anderson, among other things, herself directly and/or in concert with Defendant Mohanad Alobaidi and/or Defendant Mercy Garcia-Fernandez.

234.    As described in the preceding paragraphs, Defendant Cristal Estrada is responsible for bystander liability during the episodes of use of force where Mohanad Alobaidi threatened to tase Mr. Anderson and/or did in fact tase Mr. Anderson and/or did in fact excessively tase Mr. Anderson.

235.    As described in the preceding paragraphs, Defendant Mercy Garcia-Fernandez is responsible for bystander liability during the episodes of excessive force used by Defendant Mohanad Alobaidi on Mr. Anderson where Defendant Mohanad Alobaidi directly and personally grabbed and/or choked and/or pulled and/or manhandled and/or twisted the arms and/or legs and/or wrists and/or head and/or neck and/or torso and/or feet and/or handcuffs of Mr. Anderson, among other things, himself directly and/or in concert with Defendant Cristal Estrada and/or Defendant Victor Page.

236.    As described in the preceding paragraphs, Defendant Mercy Garcia-Fernandez is responsible for bystander liability during the episodes of excessive force used by Defendant Cristal Estrada on Mr. Anderson where Defendant Cristal Estrada directly and personally grabbed and/or choked and/or pulled and/or manhandled and/or twisted the arms and/or legs and/or wrists and/or head and/or neck and/or torso and/or feet and/or handcuffs of Mr. Anderson, among other things, herself directly and/or in concert with Defendant Mohanad Alobaidi and/or Defendant Victor Page.

237.    As described in the preceding paragraphs, Defendant Mercy Garcia-Fernandez is responsible for bystander liability during the episodes of excessive force used by Defendant Victor Page on Mr. Anderson where Defendant Victor Page directly and personally grabbed and/or choked and/or pulled and/or manhandled and/or twisted the arms and/or legs and/or wrists and/or head and/or neck and/or torso and/or feet and/or handcuffs of Mr. Anderson, among other things, himself directly and/or in concert with Defendant Mohanad Alobaidi and/or Defendant Mercy Garcia-Fernandez.

238.    As described in the preceding paragraphs, Defendant Mercy Garcia-Fernandez is responsible for bystander liability during the episodes of use of force where Mohanad Alobaidi

threatened to tase Mr. Anderson and/or did in fact tase Mr. Anderson and/or did in fact excessively tase Mr. Anderson.

239.    As described in the preceding paragraphs, Defendant Victor Page is responsible for bystander liability during the episodes of excessive force used by Defendant Mohanad Alobaidi on Mr. Anderson where Defendant Mohanad Alobaidi directly and personally grabbed and/or choked and/or pulled and/or manhandled and/or twisted the arms and/or legs and/or wrists and/or head and/or neck and/or torso and/or feet and/or handcuffs of Mr. Anderson, among other things, himself directly and/or in concert with Defendant Cristal Estrada and/or Defendant Mercy Garcia-Fernandez.

240.    As described in the preceding paragraphs, Defendant Victor Page is responsible for bystander liability during the episodes of excessive force used by Defendant Cristal Estrada on Mr. Anderson where Defendant Cristal Estrada directly and personally grabbed and/or choked and/or pulled and/or manhandled and/or twisted the arms and/or legs and/or wrists and/or head and/or neck and/or torso and/or feet and/or handcuffs of Mr. Anderson, among other things, herself directly and/or in concert with Defendant Mohanad Alobaidi and/or Defendant Mercy Garcia-Fernandez.

241.    As described in the preceding paragraphs, Defendant Victor Page is responsible for bystander liability during the episodes of excessive force used by Defendant Mercy Garcia-Fernandez on Mr. Anderson where Defendant Victor Page directly and personally grabbed and/or choked and/or pulled and/or manhandled and/or twisted the arms and/or legs and/or wrists and/or head and/or neck and/or torso and/or feet and/or handcuffs of Mr. Anderson, among other things, herself directly and/or in concert with Defendant Mohanad Alobaidi and/or Defendant Mercy Garcia-Fernandez.

242.    As described in the preceding paragraphs, Defendant Victor Page is responsible for bystander liability during the episodes of use of force where Mohanad Alobaidi threatened to tase Mr. Anderson and/or did in fact tase Mr. Anderson and/or did in fact excessively tase Mr. Anderson.

243.    As described in the preceding paragraphs and for the same reasons stated above with respect to excessive force, Intervenor-Plaintiffs suffered general and special damages as alleged in this Complaint and are entitled to relief under 42 U.S.C. § 1983, 1988.

244.    Intervenor-Plaintiffs are entitled to exemplary damages because the acts or omissions by Defendant Mohanad Alobaidi, Defendant Cristal Estrada, Defendant Mercy Garcia-Fernandez, and/or Defendant Victor Page were motivated by malice and/or involved reckless or callous indifference to Mr. Anderson's rights.

### (c)    Failure to Provide Basic Human Needs Including Medical Care, Protection from Harm, and Un-Delayed Medical Care

245.    Intervenor-Plaintiffs incorporate paragraphs 1-244 fully herein as if set forth verbatim where Intervenor-Plaintiffs assert claims against Mohanad Alobaidi, Cristal Estrada, Mercy Garcia-Fernandez, and Victor Page, pursuant to 42 U.S.C. § 1983, who under the color of state law and based upon their deprivation of and violation of Mr. Kenneth Anderson's clearly established rights, under the Fourth, Fourteenth, and the Eighth Amendments to the United States Constitution, to be entitled to due process during his detention and/or arrest and/or pretrial detention protecting him from the failure to provide basic human needs including medical care, protection from harm and un-delayed medical care,  are liable to Intervenor-Plaintiffs for this, whose elements are established where: (1) the law enforcement officer(s) Mohanad Alobaidi and/or Cristal Estrada and/or Mercy Garcia-Fernandez and/or Victor Page  exposed Mr. Anderson to a substantial risk of serious bodily harm and (2) the law enforcement officers acted or failed to

act with deliberate indifference to that risk where deliberate indifference could be established by showing that (1) the law enforcement officers knew or had subjective knowledge of the risk such that Mr. Anderson faced a substantial risk of serious bodily harm and (2) disregarded that risk by failing to take reasonable measures to abate it.

246.    A violation occurs, as here, where an episodic act or omission by an individual defendant acted with subjective deliberate indifference where the defendant (employee): (a) was aware of facts from which an inference of a substantial risk of serious harm could be drawn; (b) actually drew the inference; and (3) disregarded the risk.

247.    Here, Mohanad Alobaidi and/or Cristal Estrada and/or Mercy Garcia-Fernandez and/or Victor Page engaged in one or more episodic act or omission as described herein in violation of existing law.

248.    Defendant Alobaidi and Defendant Cristal Estrada and Defendant Mercy Garcia-Fernandez and Defendant Victor Page all had some degree of training and/or experience in accident investigation.

249.    Defendant Alobaidi and Defendant Cristal Estrada and Defendant Mercy Garcia-Fernandez and Defendant Victor Page all had some degree of training and/or experience with car crash survivors with varying degrees of injury.

250.    Defendant Alobaidi and Defendant Cristal Estrada and Defendant Mercy Garcia-Fernandez and Defendant Victor Page all had some degree of training and/or experience with impaired individuals and/or individuals with a mental disability and/or individuals with intellectual disabilities and all had some degree of training and/or experience and/or knowledge of TEXAS HEALTH AND SAFETY CODE ANN. §573.001 (West 2023) which requires immediate transfer of an

apprehended person to the nearest care facility and/or appropriate mental health facility or a transfer to emergency services personnel.

251.    Defendant Alobaidi and Defendant Cristal Estrada and Defendant Mercy Garcia-Fernandez and Defendant Victor Page all had some degree of training and/or experience with drugs and/or drugs and the effects on the human body.

252.    Defendant Alobaidi and Defendant Cristal Estrada and Defendant Mercy Garcia-Fernandez and Defendant Victor Page all had some degree of training and/or experience with perceiving a citizen's use of drugs and/or the citizen's use drugs and the effects on their human body.

253.    Defendant Alobaidi and Defendant Cristal Estrada and Defendant Mercy Garcia-Fernandez and Defendant Victor Page all had some degree of training and/or experience with harm and risks of harm to the human body.

254.    Defendant Alobaidi and Defendant Cristal Estrada and Defendant Mercy Garcia-Fernandez and Defendant Victor Page all had some degree of training and/or experience with harm and risks of harm to the human body in connection with a motor vehicle collision.

255.    Defendant Alobaidi and Defendant Cristal Estrada and Defendant Mercy Garcia-Fernandez and Defendant Victor Page all had some degree of training and/or experience with harm and risks of harm to the human body in the absence of needed and/or required medical care.

256.    Defendant Alobaidi and Defendant Cristal Estrada and Defendant Mercy Garcia-Fernandez and Defendant Victor Page all had some degree of training and/or experience with harm and risks of harm to the human body in connection with a motor vehicle collision in the absence of medical care.

257.    Defendant Alobaidi and Defendant Cristal Estrada and Defendant Mercy Garcia-Fernandez and Defendant Victor Page all had some degree of training and/or experience with perceiving harm and risks of harm to the human body.

258.    Defendant Alobaidi and Defendant Cristal Estrada and Defendant Mercy Garcia-Fernandez and Defendant Victor Page all had some degree of training and/or experience with perceiving harm and risks of harm to the human body in the absence needed and/or required medical care.

259.    Defendant Alobaidi and Defendant Cristal Estrada and Defendant Mercy Garcia-Fernandez and Defendant Victor Page all had some degree of training and/or experience with car crash survivors who suffer from traumatic brain injury.

260.    Defendant Alobaidi and Defendant Cristal Estrada and Defendant Mercy Garcia-Fernandez and Defendant Victor Page all had training and/or experience with basic medical treatment such as first aid.

261.    Defendant Alobaidi knew or should have known that Mr. Anderson required some degree of medical care.

262.    Defendant Alobaidi knew or should have known that Mr. Anderson required some degree of medical care that was not able to be and/or properly provided by an emergency medical technician.

263.    Defendant Alobaidi knew or should have known that Mr. Anderson required some degree of medical care whose provision by only an emergency medical technician would not be reasonable and/or prudent and/or effective and/or would substantially increase the risk of harm to Mr. Anderson.

264.     Defendant Alobaidi knew or should have known that Mr. Anderson required some degree of medical care to be provided by a licensed medical doctor or nurse.

265.     Defendant Alobaidi disregarded that risk in failing to facilitate, promote, and/or insist that Mr. Anderson be provided care by a licensed medical doctor or nurse by failing to take reasonable measures to abate that risk.

266.     Defendant Alobaidi disregarded that risk in failing to facilitate, promote, and/or insist that Mr. Anderson be provided care by a licensed medical doctor or nurse by failing to take reasonable measures to abate that risk.

267.     Defendant Alobaidi knew or should have known that Mr. Anderson faced a substantial risk of serious harm in having Mr. Anderson stand for as long as he did after Mr. Anderson's crash.

268.     Defendant Alobaidi disregarded that risk in having Mr. Anderson stand for as long as he did after Mr. Anderson's crash.by failing to take reasonable measures to abate it.

269.     Defendant Alobaidi knew or should have known that Mr. Anderson faced a substantial risk of serious harm in failing to allow Mr. Anderson to promptly and adequately to hydrate for as long as he did after Mr. Anderson's crash.

270.     Defendant Alobaidi disregarded that risk in failing to allow Mr. Anderson to promptly and adequately to hydrate for as long as he did after Mr. Anderson's crash by failing to take reasonable measures to abate it.

271.     Defendant Alobaidi knew or should have known that Mr. Anderson faced a substantial risk of serious harm in having Mr. Anderson placed in the back of the Tahoe after Mr. Anderson's crash.

272.    Defendant Alobaidi disregarded that risk by insisting that and/or being complicit with Mr. Anderson be placed in the back of the Tahoe after Mr. Anderson's crash.by failing to take reasonable measures to abate it.

273.    Defendant Alobaidi knew or should have known that Mr. Anderson faced a substantial risk of serious harm in delaying the transport of Mr. Anderson to a care facility rather than a jail.

274.    Defendant Alobaidi disregarded that risk in delaying the transport of Mr. Anderson to a care facility rather than a jail by failing to take reasonable measures to abate it.

275.    Defendant Alobaidi knew or should have known that Mr. Anderson faced a substantial risk of serious harm in denying the transport of Mr. Anderson to a care facility rather than a jail.

276.    Defendant Alobaidi knew or should have known that Mr. Anderson faced a substantial risk of serious harm in failing to facilitate or insist on the transport of Mr. Anderson to a care facility rather than a jail.

277.    Defendant Alobaidi knew or had reason to believe that Mr. Anderson had was under the influence of one or more dangerous drugs at the time of the encounter.

278.    Defendant Alobaidi knew or should have known that Mr. Anderson faced a substantial risk of serious harm in failing to attempt to immediately determine the dose of any drug allegedly ingested by Mr. Anderson prior to the encounter.

279.    Defendant Alobaidi disregarded that risk in failing to attempt to immediately determine the dose of any drug allegedly ingested by Mr. Anderson prior to the encounter by failing to take reasonable measures to abate it.

280.    Defendant Alobaidi knew or should have known that using a taser on Mr. Anderson given the totality of the circumstances including the circumstances pertaining to Mr. Anderson's health or condition at the time, substantially increased the risk of harm to Mr. Anderson.

281.    Defendant Alobaidi disregarded that risk in using the taser and/or using the taser as many times and/or for as long as was used on Mr. Anderson by failing to take reasonable measures to abate it.

282.    Defendant Alobaidi knew or should have known that using a taser as many times and/or for as long as was used on Mr. Anderson, given the totality of the circumstances including the circumstances pertaining to Mr. Anderson's health or condition at the time, substantially increased the risk of harm to Mr. Anderson.

283.    Defendant Alobaidi knew or should have known that Mr. Anderson was injured and/or impaired.

284.    Defendant Alobaidi did not determine and/or conclusively determine the nature and/or extent of his Mr. Anderson's injuries and/or impairment prior to, during, or after his use of the taser on Mr. Anderson.

285.    Defendant Alobaidi knew or should have known that using a taser on Mr. Anderson given the totality of the circumstances including the circumstances pertaining to Mr. Anderson's health or condition at the time, was or could have been lethal to Mr. Anderson.

286.    Defendant Alobaidi knew or should have known that using a taser as many times as was used on Mr. Anderson, given the totality of the circumstances including the circumstances pertaining to Mr. Anderson's health or condition at the time, was or could have been lethal to Mr. Anderson.

287.    Given all of these facts, Defendant Alobaidi was deliberately indifferent to the medical needs and/or serious medical needs of Mr. Anderson.

288.    Given all of these facts and others, Defendant Alobaidi's conduct was objectively unreasonable given the totality of the circumstances including the circumstances pertaining to Mr. Anderson's health or condition at the time.

289.    Defendant Cristal Estrada knew or should have known that Mr. Anderson required some degree of medical care.

290.    Defendant Cristal Estrada knew or should have known that Mr. Anderson required some degree of medical care that was not able to be provided by an emergency medical technician.

291.    Defendant Cristal Estrada knew or should have known that Mr. Anderson required some degree of medical care whose provision by only an emergency medical technician would not be reasonable and/or prudent and/or effective and/or would substantially increase the risk of harm to Mr. Anderson.

292.    Defendant Cristal Estrada knew or should have known that Mr. Anderson required some degree of medical care to be provided by a licensed medical doctor or nurse.

293.    Defendant Cristal Estrada disregarded that risk in failing to facilitate, promote, and/or insist that Mr. Anderson be provided care by a licensed medical doctor or nurse by failing to take reasonable measures to abate that risk.

294.    Defendant Cristal Estrada disregarded that risk in failing to facilitate, promote, and/or insist that Mr. Anderson be provided care by a licensed medical doctor or nurse by failing to take reasonable measures to abate that risk.

295.    Defendant Cristal Estrada knew or should have known that Mr. Anderson faced a substantial risk of serious harm in having Mr. Anderson stand for as long as she did after Mr. Anderson's crash.

296.     Defendant Cristal Estrada disregarded that risk in having Mr. Anderson stand for as long as she did after Mr. Anderson's crash by failing to take reasonable measures to abate it.

297.     Defendant Cristal Estrada knew or should have known that Mr. Anderson faced a substantial risk of serious harm in failing to allow Mr. Anderson to promptly and adequately to hydrate for as long as he did after Mr. Anderson's crash.

298.     Defendant Cristal Estrada disregarded that risk in failing to allow Mr. Anderson to promptly and adequately to hydrate for as long as he did after Mr. Anderson's crash by failing to take reasonable measures to abate it.

299.     Defendant Cristal Estrada knew or should have known that Mr. Anderson faced a substantial risk of serious harm in having Mr. Anderson placed in the back of the Tahoe after Mr. Anderson's crash.

300.     Defendant Cristal Estrada disregarded that risk by insisting that and/or being complicit with Mr. Anderson be placed in the back of the Tahoe after Mr. Anderson's crash by failing to take reasonable measures to abate it.

301.     Defendant Cristal Estrada knew or should have known that Mr. Anderson faced a substantial risk of serious harm in delaying the transport of Mr. Anderson to a care facility rather than a jail.

302.     Defendant Cristal Estrada disregarded that risk in delaying the transport of Mr. Anderson to a care facility rather than a jail by failing to take reasonable measures to abate it.

303.     Defendant Cristal Estrada knew or should have known that Mr. Anderson faced a substantial risk of serious harm in denying the transport of Mr. Anderson to a care facility rather than a jail.

304.    Defendant Cristal Estrada knew or should have known that Mr. Anderson faced a substantial risk of serious harm in failing to facilitate or insist on the transport of Mr. Anderson to a care facility rather than a jail.

305.    Defendant Cristal Estrada knew or had reason to believe that Mr. Anderson had was under the influence of one or more dangerous drugs at the time of the encounter.

306.    Defendant Cristal Estrada knew or should have known that Mr. Anderson faced a substantial risk of serious harm in failing to attempt to immediately determine the dose of any drug allegedly ingested by Mr. Anderson prior to the encounter.

307.    Defendant Cristal Estrada disregarded that risk in failing to attempt to immediately determine the dose of any drug allegedly ingested by Mr. Anderson prior to the encounter by failing to take reasonable measures to abate it.

308.    Defendant Cristal Estrada knew or should have known that using a taser on Mr. Anderson given the totality of the circumstances including the circumstances pertaining to Mr. Anderson's health or condition at the time, substantially increased the risk of harm to Mr. Anderson.

309.    Defendant Cristal Estrada disregarded that risk in being complicit with the use of the taser and/or using the taser as many times and/or for as long as was used on Mr. Anderson by failing to take reasonable measures to abate it.

310.    Defendant Cristal Estrada knew or should have known that being complicit with using a taser as many times and/or for as long as was used on Mr. Anderson, given the totality of the circumstances including the circumstances pertaining to Mr. Anderson's health or condition at the time, substantially increased the risk of harm to Mr. Anderson.

311.    Defendant Cristal Estrada knew or should have known that Mr. Anderson was injured and/or impaired.

312.    Defendant Cristal Estrada did not determine and/or conclusively determine the nature and/or extent of his Mr. Anderson's injuries and/or impairment prior to, during, or after the use of the taser on Mr. Anderson.

313.    Defendant Cristal Estrada knew or should have known that being complicit with the use of a taser on Mr. Anderson given the totality of the circumstances including the circumstances pertaining to Mr. Anderson's health or condition at the time, was or could have been lethal to Mr. Anderson.

314.    Defendant Cristal Estrada knew or should have known that using a taser as many times as was used on Mr. Anderson, given the totality of the circumstances including the circumstances pertaining to Mr. Anderson's health or condition at the time, was or could have been lethal to Mr. Anderson.

315.    Given all of these facts, Defendant Cristal Estrada was deliberately indifferent to the medical needs and/or serious medical needs of Mr. Anderson.

316.    Given all of these facts and others, Defendant Cristal Estrada's conduct was objectively unreasonable given the totality of the circumstances including the circumstances pertaining to Mr. Anderson's health or condition at the time.

317.    Defendant Mercy Garcia-Fernandez knew or should have known that Mr. Anderson required some degree of medical care.

318.    Defendant Mercy Garcia Fernandez knew or should have known that Mr. Anderson required some degree of medical care that was not able to be provided by an emergency medical technician.

319.    Defendant Mercy Garcia Fernandez knew or should have known that Mr. Anderson required some degree of medical care whose provision by only an emergency medical technician

would not be reasonable and/or prudent and/or effective and/or would substantially increase the risk of harm to Mr. Anderson.

320.     Defendant Mercy Garcia Fernandez knew or should have known that Mr. Anderson required some degree of medical care to be provided by a licensed medical doctor or nurse.

321.     Defendant Mercy Garcia Fernandez disregarded that risk in failing to facilitate, promote, and/or insist that Mr. Anderson be provided care by a licensed medical doctor or nurse by failing to take reasonable measures to abate that risk.

322.     Defendant Mercy Garcia Fernandez disregarded that risk in failing to facilitate, promote, and/or insist that Mr. Anderson be provided care by a licensed medical doctor or nurse by failing to take reasonable measures to abate that risk.

323.     Defendant Mercy Garcia Fernandez knew or should have known that Mr. Anderson faced a substantial risk of serious harm in having Mr. Anderson stand for as long as she did after Mr. Anderson's crash.

324.     Defendant Mercy Garcia Fernandez disregarded that risk in having Mr. Anderson stand for as long as she did after Mr. Anderson's crash.by failing to take reasonable measures to abate it.

325.     Defendant Mercy Garcia Fernandez knew or should have known that Mr. Anderson faced a substantial risk of serious harm in failing to allow Mr. Anderson to promptly and adequately to hydrate for as long as he did after Mr. Anderson's crash.

326.     Defendant Mercy Garcia Fernandez disregarded that risk in failing to allow Mr. Anderson to promptly and adequately to hydrate for as long as he did after Mr. Anderson's crash by failing to take reasonable measures to abate it.

327.    Defendant Mercy Garcia Fernandez knew or should have known that Mr. Anderson faced a substantial risk of serious harm in having Mr. Anderson placed in the back of the Tahoe after Mr. Anderson's crash.

328.    Defendant Mercy Garcia Fernandez disregarded that risk by insisting that and/or being complicit with Mr. Anderson be placed in the back of the Tahoe after Mr. Anderson's crash.by failing to take reasonable measures to abate it.

329.    Defendant Mercy Garcia Fernandez knew or should have known that Mr. Anderson faced a substantial risk of serious harm in delaying the transport of Mr. Anderson to a care facility rather than a jail.

330.    Defendant Mercy Garcia Fernandez disregarded that risk in delaying the transport of Mr. Anderson to a care facility rather than a jail by failing to take reasonable measures to abate it.

331.    Defendant Mercy Garcia Fernandez knew or should have known that Mr. Anderson faced a substantial risk of serious harm in denying the transport of Mr. Anderson to a care facility rather than a jail.

332.    Defendant Mercy Garcia Fernandez knew or should have known that Mr. Anderson faced a substantial risk of serious harm in failing to facilitate or insist on the transport of Mr. Anderson to a care facility rather than a jail.

333.    Defendant Mercy Garcia Fernandez knew or had reason to believe that Mr. Anderson had was under the influence of one or more dangerous drugs at the time of the encounter.

334.    Defendant Mercy Garcia Fernandez knew or should have known that Mr. Anderson faced a substantial risk of serious harm in failing to attempt to immediately determine the dose of any drug allegedly ingested by Mr. Anderson prior to the encounter.

335.    Defendant Mercy Garcia Fernandez disregarded that risk in failing to attempt to immediately determine the dose of any drug allegedly ingested by Mr. Anderson prior to the encounter by failing to take reasonable measures to abate it.

336.    Defendant Mercy Garcia Fernandez knew or should have known that being complicit in the use of a taser on Mr. Anderson given the totality of the circumstances including the circumstances pertaining to Mr. Anderson's health or condition at the time, substantially increased the risk of harm to Mr. Anderson.

337.    Defendant Mercy Garcia Fernandez disregarded that risk in being complicit with using the taser and/or using the taser as many times and/or for as long as was used on Mr. Anderson by failing to take reasonable measures to abate it.

338.    Defendant Mercy Garcia Fernandez knew or should have known that using a taser as many times and/or for as long as was used on Mr. Anderson, given the totality of the circumstances including the circumstances pertaining to Mr. Anderson's health or condition at the time, substantially increased the risk of harm to Mr. Anderson.

339.    Defendant Mercy Garcia Fernandez knew or should have known that Mr. Anderson was injured and/or impaired.

340.    Defendant Mercy Garcia Fernandez did not determine and/or conclusively determine the nature and/or extent of his Mr. Anderson's injuries and/or impairment prior to, during, or after the use of the taser on Mr. Anderson.

341.    Defendant Mercy Garcia Fernandez knew or should have known that using a taser on Mr. Anderson given the totality of the circumstances including the circumstances pertaining to Mr. Anderson's health or condition at the time, was or could have been lethal to Mr. Anderson.

342.    Defendant Mercy Garcia Fernandez knew or should have known that using a taser as many times as was used on Mr. Anderson, given the totality of the circumstances including the circumstances pertaining to Mr. Anderson's health or condition at the time, was or could have been lethal to Mr. Anderson.

343.    Given all of these facts, Defendant Mercy Garcia Fernandez was deliberately indifferent to the medical needs and/or serious medical needs of Mr. Anderson.

344.    Given all of these facts and others, Defendant Mercy Garcia Fernandez's conduct was objectively unreasonable given the totality of the circumstances including the circumstances pertaining to Mr. Anderson's health or condition at the time.

345.    Defendant Victor Page knew or should have known that Mr. Anderson required some degree of medical care.

346.    Defendant Victor Page knew or should have known that Mr. Anderson required some degree of medical care that was not able to be provided by an emergency medical technician.

347.    Defendant Victor Page knew or should have known that Mr. Anderson required some degree of medical care whose provision by only an emergency medical technician would not be reasonable and/or prudent and/or effective and/or would substantially increase the risk of harm to Mr. Anderson.

348.    Defendant Victor Page knew or should have known that Mr. Anderson required some degree of medical care to be provided by a licensed medical doctor or nurse.

349.    Defendant Victor Page disregarded that risk in failing to facilitate, promote, and/or insist that Mr. Anderson be provided care by a licensed medical doctor or nurse by failing to take reasonable measures to abate that risk.

350.     Defendant Victor Page disregarded that risk in failing to facilitate, promote, and/or insist that Mr. Anderson be provided care by a licensed medical doctor or nurse by failing to take reasonable measures to abate that risk.

351.     Defendant Victor Page knew or should have known that Mr. Anderson faced a substantial risk of serious harm in having Mr. Anderson stand for as long as he did after Mr. Anderson's crash.

352.     Defendant Victor Page disregarded that risk in having Mr. Anderson stand for as long as he did after Mr. Anderson's crash.by failing to take reasonable measures to abate it.

353.     Defendant Victor Page knew or should have known that Mr. Anderson faced a substantial risk of serious harm in failing to allow Mr. Anderson to promptly and adequately to hydrate for as long as he did after Mr. Anderson's crash.

354.     Defendant Victor Page disregarded that risk in failing to allow Mr. Anderson to promptly and adequately to hydrate for as long as he did after Mr. Anderson's crash by failing to take reasonable measures to abate it.

355.     Defendant Victor Page knew or should have known that Mr. Anderson faced a substantial risk of serious harm in having Mr. Anderson placed in the back of the Tahoe after Mr. Anderson's crash.

356.     Defendant Victor Page disregarded that risk by insisting that and/or being complicit with Mr. Anderson be placed in the back of the Tahoe after Mr. Anderson's crash.by failing to take reasonable measures to abate it.

357.     Defendant Victor Page knew or should have known that Mr. Anderson faced a substantial risk of serious harm in delaying the transport of Mr. Anderson to a care facility rather than a jail.

358.     Defendant Victor Page disregarded that risk in delaying the transport of Mr. Anderson to a care facility rather than a jail by failing to take reasonable measures to abate it.

359.    Defendant Victor Page knew or should have known that Mr. Anderson faced a substantial risk of serious harm in denying the transport of Mr. Anderson to a care facility rather than a jail.

360.    Defendant Victor Page knew or should have known that Mr. Anderson faced a substantial risk of serious harm in failing to facilitate or insist on the transport of Mr. Anderson to a care facility rather than a jail.

361.    Defendant Victor Page knew or had reason to believe that Mr. Anderson had was under the influence of one or more dangerous drugs at the time of the encounter.

362.    Defendant Victor Page knew or should have known that Mr. Anderson faced a substantial risk of serious harm in failing to attempt to immediately determine the dose of any drug allegedly ingested by Mr. Anderson prior to the encounter.

363.    Defendant Victor Page disregarded that risk in failing to attempt to immediately determine the dose of any drug allegedly ingested by Mr. Anderson prior to the encounter by failing to take reasonable measures to abate it.

364.    Defendant Victor Page knew or should have known that being complicit in the use of a taser on Mr. Anderson given the totality of the circumstances including the circumstances pertaining to Mr. Anderson's health or condition at the time, substantially increased the risk of harm to Mr. Anderson.

365.    Defendant Victor Page disregarded that risk in being complicit in using the taser and/or using the taser as many times and/or for as long as was used on Mr. Anderson by failing to take reasonable measures to abate it.

366.    Defendant Victor Page knew or should have known that using a taser as many times and/or for as long as was used on Mr. Anderson, given the totality of the circumstances including the

circumstances pertaining to Mr. Anderson's health or condition at the time, substantially increased the risk of harm to Mr. Anderson.

367.    Defendant Victor Page knew or should have known that Mr. Anderson was injured and/or impaired.

368.    Defendant Victor Page did not determine and/or conclusively determine the nature and/or extent of his Mr. Anderson's injuries and/or impairment prior to, during, or after his use of the taser on Mr. Anderson.

369.    Defendant Victor Page knew or should have known that using a taser on Mr. Anderson given the totality of the circumstances including the circumstances pertaining to Mr. Anderson's health or condition at the time, was or could have been lethal to Mr. Anderson.

370.    Defendant Victor Page knew or should have known that being complicit in the use of a taser as many times as was used on Mr. Anderson, given the totality of the circumstances including the circumstances pertaining to Mr. Anderson's health or condition at the time, was or could have been lethal to Mr. Anderson.

371.    Given all of these facts, Defendant Victor Page was deliberately indifferent to the medical needs and/or serious medical needs of Mr. Anderson.

372.    Given all of these facts and others, Defendant Victor Page's conduct was objectively unreasonable given the totality of the circumstances including the circumstances pertaining to Mr. Anderson's health or condition at the time.

>    **(d)    Failure to Provide Basic Human Needs Including Medical Care, Protection from Harm, and Un-Delayed Medical Care: Bystander Liability**

373.    Intervenor-Plaintiffs incorporate paragraphs 1-372 fully herein as if set forth verbatim where Intervenor-Plaintiffs assert claims against Mohanad Alobaidi, Cristal Estrada, Mercy Garcia-Fernandez, and Victor Page, pursuant to 42 U.S.C. § 1983, who under the color of state

law and based upon their deprivation of and violation of Mr. Kenneth Anderson's clearly established rights, under the Fourth, Fourteenth, and possibly the Eighth Amendments to the United States Constitution, to be entitled to due process during his detention and/or arrest and/or pretrial detention protecting him from the failure to provide basic human needs including medical care, protection from harm and un-delayed medical care, are liable to Intervenor-Plaintiffs for this, whose elements are established where: (1) the law enforcement officer(s) exposed Mr. Anderson to a substantial risk of serious bodily harm and (2) the law enforcement officers acted or failed to act with deliberate indifference to that risk where deliberate indifference could be established by showing that (1) the law enforcement officers knew or had subjective knowledge of the risk such that Mr. Anderson faced a substantial risk of serious bodily harm and (2) disregarded that risk by failing to take reasonable measures to abate it.

374.    A violation could occur, as here, where an episodic act or omission by an individual defendant acted with subjective deliberate indifference where the defendant (employee): (a) was aware of facts from which an inference of a substantial risk of serious harm could be drawn; (b) actually drew the inference; and (3) disregarded the risk.

375.    Defendants are liable to Intervenor-Plaintiffs for bystander liability, whose elements are established where the law enforcement officer: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.

376.    A violation occurs, as here, where an episodic act or omission by an individual defendant acted with subjective deliberate indifference where the defendant (employee): (a) was aware of facts from which an inference of a substantial risk of serious harm could be drawn; (b) actually drew the inference; and (3) disregarded the risk.

377.    Here, Mohanad Alobaidi and/or Cristal Estrada and/or Mercy Garcia-Fernandez and/or Victor Page engaged in one or more episodic act or omission as described herein in violation of existing law as described fully in this Complaint.

378.    Intervenor-Plaintiffs incorporate paragraphs 1-377 fully herein as if set forth verbatim where each Deputy Defendant including Mohanad Alobaidi, Cristal Estrada, Mercy Garcia-Fernandez, and Victor Page, pursuant to 42 U.S.C. § 1983, who under the color of state law and based upon their deprivation of and violation of Mr. Kenneth Anderson's clearly established rights, under the Fourth, Fourteenth, and the Eighth Amendments to the United States Constitution, to be entitled to due process during Mr. Anderson's detention and/or arrest and/or pretrial detention protecting him from not being provided basic human needs including medical care, protection from harm, and un-delayed medical care.

379.    Defendants Mohanad Alobaidi, Cristal Estrada, Mercy Garcia-Fernandez, and/or Victor Page are liable to Intervenor-Plaintiffs for failure to provide basic human needs including medical care, protection from harm, and un-delayed medical care bystander liability, whose elements are established where the law enforcement officer: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.

380.    At all times material to this cause, Mohanad Alobaidi, Cristal Estrada, Mercy Garcia-Fernandez, and Victor Page were physically present at the scene of one or more constitutional violation involving one or more episodic act or omission for failure to provide basic human needs including medical care, protection from harm, and un-delayed medical care, during the time of the incident made the basis of this lawsuit.

381.    As described herein, Defendant Mohanad Alobaidi is responsible for bystander liability during the episodes of each episodic act or omission of failure of Defendant Cristal Estrada and/or Mercy Garcia-Fernandez and/or Victor Page to provide basic human needs including medical care, protection from harm, and un-delayed medical care to Mr. Anderson.

382.    As described herein, Defendant Mohanad Alobaidi had a reasonable opportunity to prevent the harm(s) during the episodes of each episodic act or omission of failure of Defendant Cristal Estrada and/or Mercy Garcia-Fernandez and/or Victor Page to provide basic human needs including medical care, protection from harm, and un-delayed medical care to Mr. Anderson.

383.    As described herein, Defendant Mohanad Alobaidi had a reasonable opportunity to prevent the harm(s) during the episodes of each episodic act or omission of failure of Defendant Cristal Estrada and/or Defendant Mercy Garcia-Fernandez and/or Defendant Victor Page to provide basic human needs including medical care, protection from harm, and un-delayed medical care to Mr. Anderson, but chose not to act.

384.    As described herein, Defendant Cristal Estrada is responsible for bystander liability during the episodes of each episodic act or omission of failure of Defendant Mohanad Alobaidi and/or Defendant Mercy Garcia-Fernandez and/or Defendant Victor Page to provide basic human needs including medical care, protection from harm, and un-delayed medical care to Mr. Anderson.

385.    As described herein, Defendant Cristal Estrada had a reasonable opportunity to prevent the harm(s) during each episodic act or omission of failure of Defendant Mohanad Alobaidi and/or Defendant Mercy Garcia-Fernandez and/or Defendant Victor Page to provide basic human needs including medical care, protection from harm, and un-delayed medical care to Mr. Anderson.

386.    As described herein, Defendant Cristal Estrada had a reasonable opportunity to prevent the harm(s) during each episodic act or omission of failure of Defendant Mohanad Alobaidi and/or

Defendant Mercy Garcia-Fernandez and/or Defendant Victor Page to provide basic human needs including medical care, protection from harm, and un-delayed medical care to Mr. Anderson, but chose not to act.

387.    As described herein, Defendant Mercy Garcia-Fernandez is responsible for bystander liability during the episodes of each episodic act or omission of failure of Defendant Mohanad Alobaidi and/or Defendant Cristal Estrada and/or Defendant Victor Page to provide basic human needs including medical care, protection from harm, and un-delayed medical care to Mr. Anderson.

388.    As described herein, Defendant Mercy Garcia-Fernandez had a reasonable opportunity to prevent the harm(s) during each episodic act or omission of failure of Defendant Mohanad Alobaidi and/or Defendant Cristal Estrada and/or Defendant Victor Page to provide basic human needs including medical care, protection from harm, and un-delayed medical care to Mr. Anderson.

389.    As described herein, Defendant Mercy Garcia-Fernandez had a reasonable opportunity to prevent the harm(s) during each episodic act or omission of failure of Defendant Mohanad Alobaidi and/or Defendant Cristal Estrada and/or Defendant Victor Page to provide basic human needs including medical care, protection from harm, and un-delayed medical care to Mr. Anderson but chose not to act.

390.    As described herein, Defendant Victor Page is responsible for bystander liability during the episodes of each episodic act or omission of failure of Defendant Mohanad Alobaidi, Defendant Cristal Estrada and/or Defendant Mercy Garcia-Fernandez to provide basic human needs including medical care, protection from harm, and un-delayed medical care to Mr. Anderson.

391.    As described herein, Defendant Victor Page had a reasonable opportunity to prevent the harm(s) during each episodic act or omission of failure of Defendant Mohanad Alobaidi and/or

Defendant Cristal Estrada and/or Defendant Mercy Garcia-Fernandez to provide basic human needs including medical care, protection from harm, and un-delayed medical care to Mr. Anderson.

392.    As described herein, Defendant Victor Page had a reasonable opportunity to prevent the harm(s) during each episodic act or omission of failure of Defendant Mohanad Alobaidi and/or Defendant Cristal Estrada and/or Defendant Mercy Garcia-Fernandez to provide basic human needs including medical care, protection from harm, and un-delayed medical care to Mr. Anderson but chose not to act.

393.    As described in the preceding paragraphs and for the same reasons stated above with respect to excessive force, Intervenor-Plaintiffs suffered general and special damages as alleged in this Complaint and are entitled to relief under 42 U.S.C. § 1983, 1988.

394.    Intervenor-Plaintiffs are entitled to exemplary damages because the acts or omissions by Defendant Mohanad Alobaidi, Defendant Cristal Estrada, Defendant Mercy Garcia-Fernandez, and/or Defendant Victor Page were motivated by malice and/or involved reckless or callous indifference to Mr. Anderson's rights.

**B.  42 U.S.C. § 1983 Claims against Harris County, Texas:**

**(a)     Excessive Force**

395.    Intervenor-Plaintiffs incorporate paragraphs 1-394 fully herein as if set forth verbatim where Intervenor-Plaintiffs assert claims against Harris County, Texas sues Harris County, Texas for municipal liability where: (1) one or more official policy or custom existed; (2) a policymaker for the county knew or should have known about the policy or custom; (3) the policymaker was deliberately indifferent; and (4) the policy or custom was the moving force leading to the constitutional violation.

396.     With regard to law enforcement in Harris County, Texas, particularly in the Harris County Sheriff's office, there exists one more official policy and/or custom and/or culture that is relevant, including without limitation: (a) to encourage, condone, acquiesce to the use of excessive force; (b) to encourage, condone, acquiesce to the actual use of excessive force while presenting as if there is an effective policy against the same; (c) to encourage, condone, acquiesce to the lack of adherence and/or refusal to enforce written policy on the use of force and/or by intentionally having and/or promoting a deliberately impotent and/or ineffective internal affairs division that rarely acts to remediate acts or omissions despite having the knowledge and means to do so; (d) to encourage, condone, acquiesce to the use of tasers with a design feature of drive stun and/or prolonged activation; (e) to encourage, condone, acquiesce to  the use of tasers while a person is subdued; (f) to encourage, condone, acquiesce to the refusal to enforce disciplinary measures for deputies with a history or reputation for use of excessive force; (g) to encourage, condone, acquiesce to the lack of knowledge, training, or skill as to the effective and ineffective use of a taser; (h) to encourage, condone, acquiesce to warn deputies as to lethality of use of tasers; (i) to encourage, condone, acquiesce to the lack of effective scene command and control; (j) to encourage, condone, acquiesce to ineffective detainee and/or arrestee and/or pretrial detainee management; (k) to encourage, condone, acquiesce to ineffective internal affairs management; (l) to encourage, condone, acquiesce to ineffective in-custody death investigation; (m) to encourage, condone, acquiesce to ineffective in-custody death avoidance; (n) to encourage, condone, acquiesce to the failure of deputies to inform on or report on fellow deputies believed to engage in the use of excessive force; (o) to encourage, condone, acquiesce to fail to provide its deputies with proper policy guidance and training on how to properly attend to the medical and/or psychological needs of detainees and/or arrestees and/or pretrial detainees; (p) to encourage, condone, acquiesce

51

to fail to provide its deputies with proper policy guidance and training on how to properly attend to the needs of detainees and/or arrestees and/or pretrial detainees who present as impaired and/or in distress and/or having suffered a traumatic brain injury and/or as a person with an intellectual disability; (q) to encourage, condone, acquiesce to ineffective de-escalation techniques, guidance or training; (r) to encourage, condone, acquiesce to the use of choke holds; (s) to encourage, condone, acquiesce to the improper or ineffective transition and/or transport of detainees and/or arrestees and/or pretrial detainees; (t) to encourage, condone, acquiesce to fail to provide its deputies with proper policy guidance and training on how to properly attend to the needs of detainees and/or arrestees and/or pretrial detainees who present with one or more physical or mental disabilities; (u) to encourage, condone, acquiesce to fail to treat detainees and/or arrestees and/or pretrial detainees as innocent until proven guilty; (v) to encourage, condone, acquiesce to a preference to transport an arrestee and/or pretrial detainee who is impaired and/or in distress and/or having suffered a traumatic brain injury and/or suffering from a mental disability and/or an intellectual disability to a jail facility rather than a care facility; (w) to encourage, condone, acquiesce to a preference to deny transport of an arrestee and/or pretrial detainee who is impaired and/or in distress and/or having suffered a traumatic brain injury and/or suffering from a mental disability and/or an intellectual disability to a care facility; (x) to encourage, condone, acquiesce to failing to ask a person encountered believed to be under the influence about the dose, duration, or frequency in an effort to assess the health of the person; (y) to encourage, condone, acquiesce to failing to adequately and/or reasonably assess the health and/or mental health of a person encountered; (z) to encourage, condone, acquiesce to the misuse of a taser particularly with respect to drive-stunning which is only to inflict pain rather than incapacitating a person.

397.    These and other practices are widespread and so common as to constitute a custom or practice that fairly represent municipal policy.

398.    One or more of the acts and omissions described herein throughout this Complaint of Defendant Mohanad Alobaidi and/or Defendant Cristal Estrada and/or Defendant Mercy Garcia-Fernandez and/or Defendant Victor Page are causally connected and/or are tied to one or more of the specific policies identified herein.

399.    One or more of the specific policies identified herein resulted in and/or are causally connected to the harms and/or losses and/or injury and/or death of Mr. Anderson.

400.    As described in the preceding paragraphs Harris County, Texas is a governmental unit or municipality whose law enforcement arm is largest sheriff's office in Texas and the third largest in the United States and it is known as the Harris County Sheriff's Office which is a part or subdivision of the governmental unit or municipality, Harris County, Texas.

401.    At the time of the incident in question, the final policymaker for the Harris County Sheriff's Office and thus for law enforcement matters in Harris County, Texas was Harris County Sheriff Ed Gonzalez.

402.    Sheriff Ed Gonzalez occupies a relationship to Harris County, Texas such that his edicts or acts may be fairly said to represent official county policy, especially as it relates to law enforcement matters.

403.    Sheriff Ed Gonzalez not only governs conduct, but also decides goals for that particular local government function and devises means of achieving those goals.

404.    At all times material to this cause, Ed Gonzalez was the head of the Harris County Sheriff's Office, the employer of Mohanad Alobaidi and Cristal Estrada and Mercy Garcia-Fernandez and Victor Page.

405.     As described in the preceding paragraphs, Ed Gonzalez knew or should have known of the policies or customs described herein, especially paragraph 396 but was deliberately indifferent.

406.     As described in the preceding paragraphs, Ed Gonzalez, as to one or more of the policy or custom described herein especially paragraph 396, said policy or custom, individually or collectively, was the moving force leading to the constitutional violation(s) of Mr. Kenneth Anderson, Jr.

407.     Harris County, Texas has a long history or custom of excessive force violations against unarmed civilians resulting in injury or death.

408.     In 2021 alone, 21 inmates at the Harris County Jail died while in custody where now the FBI has open investigations into one or more of those deaths. https://www.ualrpublicradio.org/npr-news/npr-news/2023-02-15/dozens-of-inmates-have-died-in-a-houston-jail-since-2021-now-the-fbi-is-investigating.

409.     Harris County, Texas had actual or constructive notice that they are informed of such things, specifically, Harris County, Texas, particularly the Harris County Sheriff's Office.

410.     Civilian Michael Alaniz was beaten severely by Harris County Sheriff's Office jail personnel resulting in significant bodily injury as result of his constitutional rights being violated.

411.     Civilian Danny Ray Thomas was unarmed and whose pants were around his ankles when he was fatally shot in the chest by a Harris County Office Deputy.

412.     Civilian Jaquaree Simmons, killed while in the Harris County Jail as a result of excessive force in violation of his constitutional rights.

413.     Civilian Herman Rochan Barnes was fatally tasered 32 times by three Harris County deputies who entered his home in October 2006.

414.    Civilian Wayne Pratt, who was fatally tased multiple times following a minor traffic accident by Harris County.

415.    Civilian Sheketha Holman, who was tased out of her wheelchair by a Harris County Sheriff's Deputy on November 16, 2016; *see Holman v. Fairchild*, 564 F. Supp. 3d 531, 535 (S.D. Tex. 2021).

416.    Civilian Richard McIntosh was beaten and choked by one or more Harris County Sheriff's Deputy; *see McIntosh v. Ray*, No. 4:21-CV-00455, 2022 WL 408637, at *1 (S.D. Tex. Feb. 10, 2022), appeal dismissed, No. 22-20137, 2022 WL 4138353 (5th Cir. Apr. 19, 2022)

417.    Ester Gonzalez, a 19-year old woman who suffers from a mental illness, was beaten while she was being apprehended by Harris County.

418.    Other civilians in Harris County have been beaten, brutalized, or killed by Harris County Sheriff's Deputies for some time as result of the earlier identified policies or customs.

> **(b)    Failure to Provide Basic Human Needs Including Medical Care, Protection from Harm, and Un-Delayed Medical Care**

419.    Intervenor-Plaintiffs incorporate paragraphs 1-418 fully herein as if set forth verbatim where Intervenor-Plaintiffs assert Harris County, Texas, pursuant to 42 U.S.C. § 1983, who under the color of state law and based upon their deprivation of and violation of Mr. Kenneth Anderson's clearly established rights, under the Fourth, Fourteenth, and the Eighth Amendments to the United States Constitution, to be entitled to due process during his detention and/or arrest and/or pretrial detention protecting him from the failure to provide basic human needs including medical care, protection from harm and un-delayed medical care,  is liable to Intervenor-Plaintiffs for this, whose elements are established where: (1) Harris County, Texas exposed Mr. Anderson to a substantial risk of serious bodily harm and (2) Harris County, Texas acted or failed to act with deliberate indifference to that risk where deliberate indifference could be established by showing that (a) the

Harris County, Texas knew or had subjective knowledge of the risk such that Mr. Anderson faced a substantial risk of serious bodily harm and (b) disregarded that risk by failing to take reasonable measures to abate it and that (3) the acts or omissions resulted from a policy or custom adopted or maintained with objective deliberate indifference to Mr. Anderson's constitutional rights.

420.    Here, Harris County, Texas especially the state official Harris County Sheriff Ed Gonzalez knew or should have known that given the totality of the circumstances, Mr. Anderson faced a substantial risk of serious bodily harm as described throughout this complaint, but Harris County Sheriff Ed Gonzalez disregarded the risk by failing to take reasonable measures to abate it such as enforcing written policy and/or eradicating policy and/or practice and/or custom and/or culture where the acts and omissions of Harris County, Texas including the Deputy Defendants resulted from one or more of policy and/or practice and/or custom and/or culture adopted or maintained with deliberate indifference to Mr. Anderson's constitutional rights as more particularly described in Paragraph 396 of this complaint.

      **(c)**      **Failure to Supervise**

421.    Intervenor-Plaintiffs incorporate paragraphs 1-420 fully herein as if set forth verbatim where Intervenor-Plaintiffs Defendants Harris County, Texas has a constitutionally inadequate policy, custom, protocol, and/or training, supervising, and/or disciplining its employees which was the motivating force behind Mr. Anderson's injuries that results in employees believing that the following conduct, which constitutes evidence, in part, of the Deputy Defendants' inadequate training, supervision, and/or discipline such that:

      (a)      A reasonable employee would have known to not employ excessive or unreasonable force to Mr. Anderson;

      (b)      A reasonable employee would have known to not use a taser on Mr. Anderson under the circumstances;

(c)     A reasonable employee would have known to not refuse to provide Mr. Anderson with medical attention within a reasonable amount of time;

(d)     A reasonable employee would not have deployed a taser under the facts and circumstances;

(e)     A reasonable employee would not have deployed a taser upon a citizen whose medical assessment was incomplete;

(f)     A reasonable employee would not have deployed a taser upon a citizen whose mental capacity was not reasonably assessed;

(g)     A reasonable employee would not have deployed a taser upon a citizen who showed signs of mental impairment;

(h)     A reasonable employee would not have deployed a taser upon a citizen who was securely in custody;

(i)     A reasonable employee would have developed and coordinated a restraint plan;

(j)     A reasonable employee would have concluded that Mr. Anderson was not resisting arrest;

(k)     A reasonable employee would not have deployed a taser upon a citizen whose compliance response was delayed or impaired;

(l)     A reasonable employee would not have deployed a taser upon a citizen whose potential threat was adequately managed;

(m)     A reasonable employee would not have made reasonable attempts to de-escalate the situation;

(n)     A reasonable employee would have discouraged another employee from deploying a taser under the facts and circumstances;

(o)     A reasonable employee would have verbalized opposition to the deployment of a taser under the facts and circumstances;

(p)     A reasonable employee would have recognized the limited risk posed by Kenneth Anderson;

(q)     A reasonable employee would have promoted a policy favoring transport to a care facility rather than jail under appropriate circumstances as here in Mr. Anderson's case;

(r)     A reasonable employee would have promoted a policy favoring the investigation and/or need for medical and/or psychological care over penal confinement.

422.    Harris County's policies of improper and inadequate supervision of deputies in the treatment of arrestees, the proper use of taser weapons, the proper arrests and detention procedures particularly for those with physical injury and/or intoxication, the use of supplemental restraints, prevention of sudden in-custody death, and the use of excessive force resulted in the constitutional deprivations and damages alleged herein by Plaintiffs.

423.    The actions and/or omissions of Harris County's policymakers and supervisors and/or the Deputies, can be characterized as supervisory encouragement or acquiescence in the use of excessive force and/or gross negligence amounting to deliberate indifference. This grossly inadequate supervision resulted from and was caused by Defendants' deliberate indifference to the rights of individuals not to be subjected to deprivation of their constitutional rights. Such inadequate supervision was a direct and proximate cause of the death of Mr. Anderson.

### C.  Claims Against Harris County, Texas for Violating the Americans with Disabilities Act and Rehabilitation Act of 1973

424.    Intervenor-Plaintiffs incorporate paragraphs 1-423 fully herein as if set forth verbatim where without waiving any of the other causes of action pled herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein (including all allegations in the Statement of Underlying Facts section above) to the extent they are not inconsistent with the cause of action pled here, Harris County is liable to Intervenor-Plaintiffs pursuant to the Americans with Disabilities Act ("ADA") and federal Rehabilitation Act. Deputy Defendants acted within the scope of their office or employment under the circumstances, and thus, Harris County, Texas is subject to vicarious liability for these ADA and RA claims made by Plaintiffs.

425.    Harris County, Texas is a public entity as that term is defined under Title II of the

Americans with Disabilities Act.

426.    Mr. Anderson was a "qualified individual with a disability" as that term is understood and defined under Title II of the Americans with Disabilities Act.

427.    Defendant Mohanad Alobaidi, Defendant Cristal Estrada, Defendant Mercy Garcia-Fernandez, and/or Defendant Victor Page failed make a reasonable accommodation for Mr. Anderson on account of his mental disability.

428.    Harris County, Texas failed to make a reasonable accommodation for Mr. Anderson on account of his mental disability.

429.    Harris County, Texas failed to adequately train Defendant Mohanad Alobaidi, Defendant Cristal Estrada, Defendant Mercy Garcia-Fernandez, and/or Defendant Victor Page to investigate and/or handle situations involving mentally ill individuals in a manner that reasonably accommodates their disability.

430.    Harris County, Texas failed to adequately train Defendant Mohanad Alobaidi, Defendant Cristal Estrada, Defendant Mercy Garcia-Fernandez, and/or Defendant Victor Page to investigate and/or handle situations involving mentally ill individuals in a manner that reasonably accommodates their disability insofar as Mr. Anderson, after being secured, should have been transported directly to a care facility rather than a jail.

431.    Mr. Anderson's conduct during the evening and before the use of deadly force while handcuffed cleared showed that he was impaired and/or did not have the normal use of his faculties and/or suffered a traumatic brain injury and/or was in distress and/or was an individual with an intellectual disability.

432.    Mr. Anderson was secured immediately upon arrival and posed no threat to law enforcement.

433.     Defendant Mohanad Alobaidi and/or Defendant Cristal Estrada and/or Defendant Mercy Garcia-Fernandez and/or Defendant Victor Page made a decision, individually or collectively, to secure Mr. Anderson with handcuffs and place him in the back of a cruiser and then remove him from that cruiser.

434.     Defendant Mohanad Alobaidi and/or Defendant Cristal Estrada and/or Defendant Mercy Garcia-Fernandez and/or Defendant Victor Page then created this entire situation by then attempting to place Mr. Anderson in the back of a Tahoe to be taken to jail rather than a care facility.

435.     A person who is not impaired and/or did have the normal use of their faculties and/or had not suffered from a traumatic brain injury and/or was not in distress and/or was not an individual with an intellectual disability would simply not have appeared and acted as Mr. Anderson did such that they would: not appear vacant and/or reply "birthday" when asked "when's your birthday" and/or say "help me" as often as he did  'help me take this seatbelt off' and say "tase me" when threatened with 50,000 volts from a taser and things of that nature that appear all throughout these pleadings.

436.     Without exception, at some point or another, one of us or someone we know, by reason of age, trauma, declining health, or some other event may well be alone in public and have no one else to rely upon but law enforcement and with our ever-expanding aging population, law enforcement must be more discerning, well-trained, and acutely aware that a person's health and mental health is just as important factor to consider in considering where to transport someone as is criminal history or alleged drug use and we must progress in this regard or more and more Americans like Mr. Anderson will continue to die unnecessarily at the hands of those who are sworn to protect and serve.

437.    Upon information and belief, Harris County has been and is a recipient of federal funds. Therefore, it is covered by the mandate of the federal Rehabilitation Act. The Rehabilitation Act requires recipients of federal monies to reasonably accommodate persons with mental and physical disabilities in their facilities, program activities, and services, and also reasonably modify such facilities, services, and programs to accomplish this purpose. Further, Title II of the ADA applies to Harris County, Texas and has the same mandate as the Rehabilitation Act. Claims under both the Rehabilitation Act and ADA are analyzed similarly.

438.    The JPC is a "facility" for both the Rehabilitation Act and ADA purposes. The Center's operation comprises a program and services for Rehabilitation Act and ADA purposes.

439.    Mr. Anderson is a qualified individual for purposes of the Rehabilitation Act and ADA, regarded as having a mental impairment and/or medical condition that substantially limits one or more of his major life activities—bipolar disorder and major depressive disorder. Mr. Anderson was therefore disabled.

440.    Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

441.    The ADA prohibits discrimination by public entities, such as Harris County. Policing and processing are a program and service provided by Harris County for ADA purposes. To establish such discrimination, a plaintiff must allege: (1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability.

442.    A majority of circuits have held, for purposes of Rehabilitation Act of 1973 and ADA claims, that one may prove intentional discrimination by showing that a defendant acted with deliberate indifference. The Fifth Circuit has, as yet declined to follow the majority view. Nevertheless, intent can never be shown with certainty. Direct and circumstantial evidence can be used to support an "intent" jury finding, and allegations in this pleading show that there is more than enough of both.

443.    The Rehabilitation Act and the ADA are judged under the same legal standard.

444.    Mr. Anderson was a qualified individual with a disability within the meaning of the ADA in that he had mental impairment that substantially limited one or more major life activities—here his bipolar disorder and major depressive disorder. Mr. Anderson was discriminated against by reason of his disability.

445.    Upon information and belief, Deputies knew that Mr. Anderson suffered from a mental disorder. As is apparent on Alobaidi's body worn camera footage, Alobaidi is holding a report of Mr. Anderson's history. Upon information and belief, this is a JIMS report, a report compiled and produced by the Harris County Justice Information Management System ("JIMS"). This report would include his criminal history, which includes proceedings and resolution of a suit in the Felony Mental Health Court in Harris County. The Felony Mental Health Court "is designed for defendants who have been charged with a felony offense (assaultive offenses and offenses involving possession or use of a firearm will be considered on a case by case basis) and <u>diagnosed with a serious and persistent mental illness</u>." FELONY MENTAL HEALTH COURT PROGRAM DESCRIPTION, Harris County District Courts, Criminal Division, https://www.justex.net/Courts/Drug/MentalHealth/Default.aspx (emphasis added).

446.    Further, it is apparent from the body worn camera footage that the Deputies knew that Mr.

Anderson was suffering from a mental disability and/or was impaired and/or was in distress and/or significant distress.

447.    Mr. Anderson repeatedly asked for water and had difficulty breathing. Further, following the repeated tasing events, three of which were in quick succession resulting in him being tased for an extended period of time, he was not responding to questions from the Deputies, and the Deputies knew that at the very least, he was not conscious. However, the Deputies never released Mr. Anderson into the care of medical personnel, even following the tasing incident, in violation of Harris County policy.

448.    Upon information and belief, discovery in this case will show that the Deputies all neglected to provide Mr. Anderson reasonable access to medical care, ultimately resulting in Mr. Anderson's wrongful death. Deputies violated Mr. Anderson's Title II protections by intentionally failing to provide him with reasonable accommodations that were needed and available to allow Mr. Anderson to receive the benefits of Harris County's programs and services.

449.    Harris County, Texas's failure and refusal to accommodate Plaintiff's mental and/or physical disabilities while in custody violated the Rehabilitation Act and the ADA. Deputies chose to first, tase Mr. Anderson, after he was already restrained using handcuffs and confined to the Deputies' patrol vehicle. Deputies had not tried a different technique to gain compliance.

450.    Then, following the tasing incident, Alobaidi refused promote and/or facilitate and/or insist on the transport of Mr. Anderson to a care facility rather than a jail. Defendant Page then placed Mr. Anderson in a choke hold to get him to sit up. The Deputies waited a long time under the circumstances, between knowing he was non-responsive, and administering CPR.  Harris County, through the Deputies, deliberately chose to deny Mr. Anderson access to appropriate treatment. Such a failure and refusal caused, proximately caused, and was a producing cause of Anderson's

suffering, injury, and damages, as well as Intervenor-Plaintiffs' resultant suffering, injuries, and damages through resultant claims of loss of consortium, survival, and wrongful death.

451.   Harris County's violations of the Rehabilitation Act and the ADA included the failure to provide services and accommodations, for Mr. Anderson's disabilities. Harris County should have accommodated Mr. Anderson by: Refraining from using violence against Mr. Anderson by using a taser on him and/or in a manner that was used on him, and placing him in a choke hold, even after they knew he presented as impaired; Using de-escalation tactics when Mr. Anderson's mental disabilities left him disoriented and confused; Providing prompt medical attention following the single car accident; and Providing prompt medical attention following Harris County's finding that he was unresponsive.

452.   Failure to provide these reasonable accommodations was intentional and illegal discrimination under the ADA against Mr. Anderson, resulting in his death, and entitling Plaintiffs to compensatory relief.

453.   These failures and refusals, which were intentional, proximately caused Plaintiff's damages. Because Mr. Anderson's death resulted from Harris County's intentional discrimination against him, Intervenor-Plaintiffs are entitled to the maximum amount of compensatory and exemplary damages allowed by law.

454.   Intervenor-Plaintiffs seek all such damages itemized in the prayer and or body in this pleading (including sections above giving appropriate and fair notice of the 1983 claims and resulting damages) to the extent allowed by the Rehabilitation Act and the ADA.

455.   Intervenor-Plaintiffs also seek reasonable and necessary attorney's fees and other remedies afforded by those laws.

### D. State Claims Against Harris County, Texas

#### (a)    Wrongful Death

456.    Intervenor-Plaintiffs incorporate paragraphs 1-455 fully herein as if set forth verbatim where in the alternative, Intervenor-Plaintiffs allege that Harris County caused the wrongful death of Kenneth Anderson by reason of negligence through the tangible use of property; namely the use or operation of the Harris County vehicles where the vehicles were used as an incubator or hot box to aggravate Mr. Anderson's failing health condition.

457.    Here, Harris County could not reasonably deny that Mr. Anderson required medical attention and did not use ordinary care in how they used or operated the vehicles in connection with Mr. Anderson's detention.

458.    Intervenor-Plaintiffs are each individually entitled to bring this action pursuant to TEX. CIV. PRAC. & REM. CODE § 71.004(a), as they are each a rightful survivor of the decedent, Mr. Anderson.

459.    Here, (1) Intervenor-Plaintiffs are the surviving parents of the decedent; (2) the defendant is a person or corporation; (3) the defendant's wrongful act caused injury to the decedent; (4) the injury resulted in the death of the decedent; (5) the decedent would have been entitled to bring an action for the injury if he or she had lived; and (6) the plaintiff suffered actual injuries. *See id.*; *Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 345-46 (Tex. 1992).

460.    Mr. Anderson's suffering, injuries and death were caused by the wrongful acts or omissions of Harris County, Texas when they failed to provide him with adequate medical and mental health treatment.

461.    Defendant Harris County, Texas' acts or omissions caused injuries that resulted in Mr. Anderson's death.

462.     Mr. Anderson would have been entitled to bring various causes of action against Defendant Harris County, Texas had he lived through his ordeal.

463.     Intervenor-Plaintiffs in this death action can recover actual damages of the following four basic types: (1) pecuniary losses (e.g., loss of care, maintenance, support, services, advice and counsel); (2) mental anguish; (3) loss of companionship and society; and (4) loss of inheritance. *Moore v. Lillebo*, 722 S.W.2d 683, 687 (Tex. 1986).

        **(b)**      **Survival**

464.     Intervenor-Plaintiffs incorporate paragraphs 1-463 fully herein as if set forth verbatim where Harris County caused the death of Kenneth Anderson.

465.     The elements of a survival action are: (1) Intervenor-Plaintiffs are heirs of the estate of the decedent because Mr. Anderson died intestate; (2) the decedent had a cause of action for personal injury to his or her health, reputation or person before he died; (3) the decedent would have been entitled to bring a cause of action for the injury if he had lived; and (4) the defendant's wrongful act caused the decedent's injury. *See* TEX. CIV. PRAC. & REM. CODE §71.021; *Russell*, at 345. Exemplary damages are recoverable. *See Hofer v. Lavender*, 679 S.W.2d 470, 475 (Tex. 1984).

466.     Mr. Anderson's parents are the lawful heirs of the estate of Mr. Anderson under the statutes of descent and distribution.  *See* TEX. PROB. CODE §38 (distribution upon intestacy).  There is currently an estate administration pending. On December 8, 2021, Kenneth Darius filed an Application for Letters of Administration. The Application is pending in Probate Court No. 4 and is assigned No. 501254. Further, on December 8, 2021, Kenneth Darius filed an Application to Determine Heirship.

467.     Mr. Anderson would have had a cause of action for injuries he suffered to his health, reputation, and person.

468.    Mr. Anderson would have been entitled to bring the cause of action for the injury had he lived through his interactions with Defendant Harris County, Texas.

469.    Mr. Anderson's suffering, injuries and death were caused by the wrongful acts or omissions of Harris County, Texas, when it was negligent in its use of tangible property of the police Tahoe that was used or operated by Harris County employees, and/or that Harris County, Texas failed to provide him with adequate medical treatment.

470.    The Harris County vehicles where the vehicles were used as an incubator or hot box to aggravate Mr. Anderson's failing health condition.

471.    Here, Harris County could not reasonably deny that Mr. Anderson required medical attention and did not use ordinary care in how they used or operated the vehicles in connection with Mr. Anderson's detention.

472.    Here, Defendant Harris County's negligent acts or omissions caused the injuries that resulted in Mr. Anderson's death.

(c)    **Negligence**

473.    Intervenor-Plaintiffs incorporate paragraphs 1-472 fully herein as if set forth verbatim where Harris County was negligent such that (1) defendant owed Intervenor-Plaintiff a legal duty, (2) defendant breached that duty, and (3) defendant's breach proximately caused damages to the Intervenor-Plaintiff. *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017).

474.    Harris County's negligence arose through the tangible use of property; namely the use or operation of the Harris County vehicles where the vehicles were used as an incubator or hot box to aggravate Mr. Anderson's failing health condition.

475.    Here, Harris County could not reasonably deny that Mr. Anderson required medical attention and did not use ordinary care in how they used or operated the vehicles in connection

with Mr. Anderson's detention.

476.    Defendant Harris County, Texas owed a legal duty of care to Mr. Anderson as an individual in their custody—an individual who had not even been charged or convicted of a crime.

477.    Defendant Harris County breached the duty owed to Mr. Anderson when they tased him while restrained in handcuffs and confined to the Deputies' patrol vehicle and failed to provide reasonably timely medical care.

478.    Defendant Harris County proximately caused Mr. Anderson's injuries when they unreasonably and unjustifiably tasered him while restrained in handcuffs and already confined in the Deputies' patrol vehicle. Additionally, Deputies' ' failure to provide Mr. Anderson with reasonably timely medical care in these circumstances proximately caused Mr. Anderson's injuries and resulted in his death.

479.    The Deputies are not entitled to qualified immunity.[1] Their denial of reasonable medical

---

[1] The defense of qualified immunity is, and should be held to be, a legally impermissible defense. In the alternative, it should be held to be a legally impermissible defense except as applied to state actors protected by immunity in 1871 when 42 U.S.C. § 1983 was enacted. Congress makes laws. Courts do not. However, the qualified immunity defense was invented by judges. When judges make law, they violate the separation of powers doctrine of the United States Constitution. Plaintiffs respectfully makes a good faith argument for the modification of existing law, such that the court–created doctrine of qualified immunity be abrogated or limited.

The natural person Defendants cannot show that they would fall within the category of persons referenced in the second sentence of this footnote. This would be Defendants' burden if they choose to assert the alleged defense. Qualified immunity, as applied to persons not immunized under common or statutory law in 1871, is untethered to any cognizable legal mandate and is flatly in derogation of the plain meaning and language of Section 1983. *See Ziglar v. Abassi*, 137 S. Ct. 1843, 1870-72 (2017) (Thomas, J., concurring). Qualified immunity should have never been instituted as a defense, without any statutory, constitutional, or long-held common law foundation, and it is unworkable, unreasonable, and places too high a burden on Plaintiffs who suffer violation of their constitutional rights. Joanna C. Schwartz, *The Case Against Qualified Immunity,* 93 Notre Dame L. Rev. 1797 (2018) (observing that qualified immunity has no basis in the common law, does not achieve intended policy goals, can render the Constitution "hollow," and cannot be justified as protection for governmental budgets); and

and mental health care following the Deputies' unreasonable and unjustifiable tasing and other actions and/or inaction set forth in this pleading, actually caused, proximately caused, and/or were producing causes of Mr. Anderson's suffering, injury, and horrific death. Thus, Plaintiffs are entitled to all damages permitted by law.

480.    Further, he is now one of the over 233 deaths occurring in the custody of Defendant Harris County between 2005 and 2020.  See St. John Barned-Smith, Man Arrested By Harris County Sheriff's Deputies Sunday Morning Dies After Collapsing Suddenly At Joint Processing Center, HOUS. CHRON., Oct. 10, 2021, https://www.houstonchronicle.com/news/houston-texas/houston/article/Man-arrested-by-Harris-County-sheriff-s-16523284.php.

481.    Mr. Anderson is now one of the over 500 deaths caused by tasers since 2010. Jo Ciavaglia, Josh Salman and Katie Wedel, Lethal Force? Tasers Are Meant To Save Lives, Yet Hundreds Die After Their Use By Police, USA TODAY NETWORK, April 26, 2021, https://www.usatoday.com/in-depth/news/investigations/2021/04/23/police-use-tasers-ends-hundreds-deaths-like-daunte-wright/7221153002/.

---

William Baude, *Is Qualified Immunity Unlawful?*, 106 Calif. L. Rev. 45, 82 (2018) (noting that, as of the time of the article, the United States Supreme Court decided 30 qualified immunity cases since 1982 and found that defendants violated clearly established law in only 2 such cases). Justices including Justice Thomas, Justice Breyer, Justice Kennedy, and Justice Sotomayor have criticized qualified immunity. *Schwartz, supra* at 1798–99; *see*. See *also Cole v. Carson*, _ F.3d _, 2019 WL 3928715, at * 19-21, & nn. 1, 10 (5th Cir. Aug. 21, 2019) (en banc) (Willett, J., Dissenting). Additionally, qualified immunity violates the separation of powers doctrine of the Constitution. *See generally* Katherine Mims Crocker, *Qualified Immunity and Constitutional Structure*, 117 Mich. L. Rev. 1405 (2019) (*available at* https://repository.law.umich.edu/mlr/vol117/iss7/3). Plaintiffs include allegations in this footnote to assure that, if legally necessary, the qualified immunity abrogation or limitation issue has been preserved.

## V.
## DEMAND FOR JURY TRIAL

482.　Intervenor-Plaintiffs incorporate paragraphs 1-481 fully herein as if set forth verbatim. Intervenor-Plaintiffs respectfully assert their right, pursuant to the Seventh Amendment to the United States Constitution, for a jury trial on all issues of fact and law to which they are entitled. Such jury demand is timely and properly made pursuant to Fed. R. Civ. P. 38(a) and (b)(1) and Local Rule 38, (LR 38.1), of this Honorable Court.

## VI.
## PRAYER FOR RELIEF

483.　Intervenor-Plaintiffs incorporate paragraphs 1-482 fully herein as if set forth verbatim. Upon trial of this case by a jury of the Parties' peers, Intervenor-Plaintiffs that they have and recover judgment of and from the Defendants and pray for relief in an amount in excess of the minimum jurisdictional limits of this Court for compensatory damages, including but not limited to the following, arising from the wrongful acts of the Defendants:

(a)　Past and future loss of earnings;

(b)　Reputational harm;

(c)　Mental and emotional distress;

(d)　Loss of consortium and loss of companionship;

(e)　Pre-judgment interest at the highest prevailing rate, as permitted by applicable and controlling law;

(f)　Post-judgment interest at the highest prevailing rate, as permitted by applicable and controlling law;

(g)　Attorney's fees;

(h)　Court costs, expert fees, and related costs of asserting the instant claims, to the extent permitted by 42 U.S.C. § 1988(b) and (c);

(i)　Exemplary damages; and

(j)     All such other relief to which Intervenor-Plaintiffs may find themselves to be justly entitled.

Respectfully submitted,

**THE ZWERNEMANN LAW FIRM**

/S/Allen H. Zwernemann
Allen H. Zwernemann
FID No. 2851120
SBN: 24034755
114 Byrne Street
Houston, Texas 77009
Phone: (281) 221-7168
Fax: (281) 783-4247
Email: az@azlf.com

**ATTORNEYS FOR INTERVENOR-PLAINTIFFS**

**<u>CERTIFICATE OF SERVICE</u>**

A true and correct copy of the foregoing instrument has been provided to all parties by and through the Court's ECF system as prescribed by the Federal Rules of Civil Procedure on November 15, 2023.

<u>*/s/ Allen H. Zwernemann*</u>
**Allen H. Zwernemann**