# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| ESTATE OF KENNETH ANDERSON, JR., KENNETH DARIUS ANDERSON, KRISTEN SANDOVAL, A/N/F OF N.B.A. AND N.K.A., AND ALL WRONGFUL DEATH BENEFICIARIES OF KENNETH ANDERSON JR. | § | |
| *Plaintiffs,* | § | |
| VS. | § | CIVIL ACTION NO. 4:21-cv-3730 |
| HARRIS COUNTY, TEXAS, DEPUTY MOHANAD ALOBAIDI, DEPUTY CRYSTAL ESTRADA, DEPUTY VICTOR PAGE, AND DEPUTY MERCY GARCIA-FERNANDEZ | § | |
| *Defendants* | § | |

## INTERVENOR-PLAINTIFFS' RESPONSE TO DEFENDANT MOHANAD ALOBAIDI'S MOTION TO DISMISS (DOC. 236)

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, Intervenor-Plaintiffs Evelyn Fay Ayers-Woods and Kenneth Anderson, Sr., and file, **INTERVENOR-PLAINTIFFS' RESPONSE TO DEFENDANT MOHANAD ALOBAIDI'S MOTION TO DISMISS (DOC. 236)**, and would respectfully show the Court the following**:**

# TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ........................................................................ 3
LEGAL STANDARD ............................................................................................................ 3
INTERVENORS' OBJECTION TO CONSIDERATION OF VIDEO FOOTAGE ............... 4
FACTS ALLEGED ................................................................................................................. 6
    A.    Defendant Cristal Estrada Finds an Injured and Disoriented Mr. Anderson. ......... 6
    B.    Deputies From the Harris County Sheriff's Office Fail to Send Mr. Anderson to a Hospital or Emergency Room. ................................................................................ 7
    C.    Defendant Alobaidi Unnecessarily Escalates the Conflict. ..................................... 8
    D.    Defendant Alobaidi Uses a Taser on Mr. Anderson, Not to Immobilize Him, But For the Sole Purpose of Inflicting Pain. .................................................................. 9
ARGUMENT & AUTHORITIES ......................................................................................... 10
    I.    Intervenors Pled a Plausible Claim for Relief That Defendant Alobaidi Used Excessive Force. .................................................................................................... 10
    II.    Intervenors Plead Facts That Demonstrate Qualified Immunity Should be Denied. 13
        A.    Qualified Immunity Does Not Impose a Heightened Pleading Standard. .............. 14
        B.    Deputy Alobaidi Violated a Clearly Established Constitutional Right When He Used Excessive Force Against Mr. Anderson. ...................................................... 15
    III.    Intervenors Plead Plausible Facts to State a § 1983 Claim Against Alobaidi for Failure to Provide Medical Care. ........................................................................... 17
        A.    The Moment He Was Detained by Harris County Deputies, Mr. Anderson Had a Constitutional Right to Medical Care. .................................................................... 17
        B.    There is No Question That Intervenors Alleged That Deputy Alobaidi Demonstrated Deliberate Indifference Toward Mr. Anderson's Obvious Need for Medical Care. ........................................................................................................ 17
    IV.    Intervenors Plead Plausible Facts to State a § 1983 Claim Against Defendant Alobaidi for Bystander Liability. ............................................................................ 17
        A.    Deputy Alobaidi Knew That Choking Mr. Anderson Was Use of Excessive Force and an Unconstitutional Violation of His Fourth Amendment Rights. ................... 18
        B.    Intervenors Plead That Deputy Alobaidi Had The Opportunity to Prevent Harm to Mr. Anderson But Chose to Do Nothing. ........................................................... 18
CONCLUSION ..................................................................................................................... 19

## NATURE AND STAGE OF PROCEEDINGS

1. Kenneth Anderson, Jr., died as a result of excessive use of force while in the custody of the Harris County Sheriff's Office and its deputies. The foundation of this case is the allegation that Defendants' use of excessive force and/or failure to provide medical care violated the Fourth and Fourteenth Amendments to the United States Constitution.

2. Intervenors filed their live complaint on November 15, 2023. *See* Doc. 233. In their live complaint, they allege claims against Defendant Harris County, Mohanad Alobaidi, Cristal Estrada, Mercy Garcia-Fernandez, and Victor Page. Defendant Mohanad Alobaidi filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and in the alternative, Motion for Judgment on the Pleadings. *See* Doc. 236.

3. In his motion[1], Defendant Alobaidi asserts the Court should dismiss Intervenors' claims for the following reasons:

- Intervenors fail to allege sufficient facts to support of their claim of excessive force;
- Intervenors fail to allege sufficient facts to support their of claim bystander liability;
- Intervenors fail to plead facts to overcome qualified immunity;
- Intervenors fail to allege sufficient facts to support their claim for failure to provide medical care.

## LEGAL STANDARD

4. In order to state a claim, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 705 (5th Cir. 2017). To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), therefore, a plaintiff must state a claim for relief that is facially plausible by

---

[1] In his motion, Defendant Alobaidi states that the issue to be ruled on is whether Intervenors' claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), but at multiple points in his motion, also asserts that there is "no evidence" to support Intervenors' claims. This mischaracterizes the test under a Rule 12(b)(6) motion to dismiss, which focuses on the contents of the compliant, not extrinsic evidence.

pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). When the cause of action requires specific elements to be proven, the plausibility "standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

5. A well-pleaded complaint may therefore proceed even if it appears "that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–556. Further, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) *abrogated by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

6. Where the motion to dismiss involves a civil rights complaint, **there is no heightened pleading standard**. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (a federal court may not apply a standard "more stringent than the usual pleading requirements of Rule 8(a)" in "civil rights cases alleging municipal liability"); *see also Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11, 135 S.Ct. 346, 190 L.Ed.2d 309 (2014) (per curiam).

### INTERVENORS' OBJECTION TO CONSIDERATION OF VIDEO FOOTAGE

7. Defendant Alobaidi makes it abundantly clear that he wants the Court to use footage from the body cameras of deputies at the scene of the incident in adjudicating his Rule 12(b)(6) motion to dismiss.

8. First, this Court is not required to review body camera footage because the video was not attached to Intervenors' pleadings, and the law permits the Court to consider the footage only if it

blatantly contradicts the allegation, which it does not, but not when the video brings up additional facts. *Waller v. Hanlon*, 922 F.3d 590, 600 (5th Cir. 2019). Defendant cherry-picks references to the body camera footage in order to attempt to exonerate his acts and omissions, or to provide a narrow, alternative version of the incident, but not to directly contradict the veracity of Intervenors' allegations. Because Defendant's appeal to the body camera footage violates the rules of a Rule 12(b)(6) motion to dismiss, this Court should sustain this objection.

9. Second, considering the video footage changes the procedural posture of Defendant's motion in a manner that severely prejudices Intervenors. Defendant failed to mention the dramatic shift that occurs when matters outside the pleadings are presented to and considered by the court: the motion to dismiss transforms into a motion for summary judgment under Federal Rule of Procedure 56. FED. R. CIV. P. 12(d). Rule 12(d) states as follows:

> **Result of Presenting Matters Outside the Pleadings.** If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion *must* be treated as one for summary judgment under Rule 56. *All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion*.
>
> FED. R. CIV. P. 12(d) (emphasis added).

10. This Court has stayed discovery while Defendant's motion to dismiss has been pending. See Doc. 214. Only limited discovery has occurred, and no depositions have been taken. Now, after stopping Intervenors from conducting discovery regarding the merits of their claims, Defendant wants this Court to evaluate the merits of this case by attaching cherry-picked video footage of the incident. This is fundamentally unfair, and a violation of Rule 12(d), as Intervenors were never given a reasonable opportunity to present material relevant to a motion for summary judgment, because they were never allowed to conduct discovery. FED. R. CIV. P. 12(d). Intervenors object to the consideration of the video footage on the basis that a conversion to a summary judgment unfairly prejudices Intervenors.

11. Even though Defendant attached evidence to its motion to dismiss, the court is not required to consider it, even if referenced in a plaintiff's pleading. *Brackens v. Stericycle, Inc.*, 829 F.App'x 17, 21 (5th Cir. 2020). Rather than force Intervenors to enter the ring with both hands tied behind their backs, this Court should adjudicate Defendant's motion to dismiss solely on the sufficiency of Intervenors' live complaint, which is true, correct and accurately depicts the truth of the hours-long encounter that officers killing Mr. Anderson without cause.

## **FACTS ALLEGED**

12. Intervenors attach their live complaint (Doc. 233) containing the facts upon which Intervenors rely in making this response, and incorporate the same herein as if set forth verbatim. See Exhibit A, Intervenors' Live Complaint (Doc. 233). Intervenors rely on all facts asserted therein, even if not entirely repeated in the body of this instant response to Defendant's motion to dismiss, as well as all reasonable inferences in a light most favorable to Intervenors.

### **A. Defendant Cristal Estrada Finds an Injured and Disoriented Mr. Anderson.**

13. On October 10, 2021, shortly after 3:24 a.m., Defendant Estrada, who at the time was working in the course and scope of her job as a Deputy with the Harris County Sheriff's Office, arrived at the scene of a single-vehicle motor vehicle collision near the intersection of Kuykendahl Road and Bammelwood Drive. See Doc. 233, ¶ 18.

14. Mr. Kenneth Anderson Jr. was the lone occupant of the crashed vehicle. *See* Doc. 233, ¶ 22. Defendant Estrada approached the vehicle and found Mr. Anderson to be bleeding and unresponsive. *See* Doc. 233, ¶ 22-26, 64. When Mr. Anderson finally became responsive, he obeyed the orders of Defendant Estrada, who instructed him to turn down the radio and take off his seatbelt. *See* Doc. 233, ¶ 32. Despite his desire to do so, Mr. Anderson said he was not able to take off his seatbelt and asked Defendant Estrada to do it for him. *See* Doc. 233, ¶ 33. Any reasonable officer would have recognized at this point that Mr. Anderson required some degree of medical care and/or should have facilitated the care. Doc. 233, ¶¶81-86. Defendant Mercy Garcia-

Fernandez even exclaimed that they were not going to take Mr. Anderson to the jailhouse in his present condition, but did nothing. Doc. 233, ¶ 88.

### B. Deputies From the Harris County Sheriff's Office Fail to Send Mr. Anderson to a Hospital or Emergency Room.

15. Other Harris County Sheriff's Deputies started to appear at the scene of the collision. See Doc. 233, ¶ 34. Mr. Anderson eventually exited his vehicle. See Doc. 233, ¶ 35. Defendants cannot reasonable dispute that Mr. Anderson at the time: was unarmed, respectful, did not physically or verbally threaten anyone at all, and never attempted to flee the scene. See Doc. 233, ¶¶ 36-39. Despite being visibly injured and peaceable, Mr. Anderson was shoved up against his own vehicle and handcuffed. See Doc. 233, ¶¶ 40-47, see also ¶¶ 50-51. At this point in time, no officer at the scene offered medical treatment, nor did they even so much as ask Mr. Anderson about his injuries. See Doc. 233, ¶¶ 48-56.

16. Despite being in obvious need of medical attention, the Deputies hold Mr. Anderson at the scene of the collision for an extended period of time under the guise of conducting a "murder investigation", instead of taking him to a hospital or emergency room. *See* Doc. 233, ¶ 58-71. After a while, Mr. Anderson (who is still handcuffed) is led to sit on a police vehicle. *See* Doc. 233, ¶ 103. While sitting on the vehicle, Mr. Anderson collapsed face down on the head of the cruiser. *See* Doc. 233, ¶ 104.

17. When the Deputies ask Mr. Anderson questions about his well-being, Mr. Anderson, seemingly conscious, is unresponsive. *See* Doc. 233, ¶¶ 111-117, 127. Mr. Anderson was then placed in the back of Defendant Estrada's police vehicle without incident. *See* Doc. 233, ¶ 133. Defendant Estrada then instructed the emergency medical personnel at the scene to leave, which they did. *See* Doc. 233, ¶ 136.

18. At this point, Defendant and the other Deputies had observed that Mr. Anderson was (1) in need of medical attention, (2) was mentally impaired, (3) unable to process simple communications

and instructions. *See* Doc. 233, ¶ 139-142. Despite this knowledge, Mr. Anderson was not taken to an emergency room, but rather Defendant Estrada transported him to a nearby gas station. *See* Doc. 233, ¶ 145. Traumatic brain injury victims and/or those suffer from impairment and/or a mental disability oftentimes are unable to respond to verbal cues or commands as may be expected. Doc. 233, ¶ 68.

### C. Defendant Alobaidi Unnecessarily Escalates the Conflict.

19. Defendant Alobaidi then creates a situation by ordering that Mr. Anderson be removed from the back of the police vehicle. See Doc. 233, ¶ 151. At this point, Mr. Anderson's deteriorating condition is more than readily apparent. See Doc. 233, ¶ 151. The Deputies begin to load Mr. Anderson into the back of yet another police vehicle, but due to his condition, Mr. Anderson is disoriented and unable to process simple requests. See Doc. 233, ¶ 158-161.

20. Despite the fact that Mr. Anderson is in a terrible condition, unable to respond to basic commands, and still handcuffed, Defendant Alobaidi escalates his hostility unnecessarily toward Mr. Anderson by "asking" him if they have to fight. *See* Doc. 233, ¶ 163-166. Mr. Anderson, in the sense of a most macabre premonition, asks Defendant Mohanad Alobaidi, 'you ain't gonna tase me?'. Doc. 233, ¶ 156 and Defendant Alobaidi lies and says, 'I ain't gonna tase you.'. Doc. 233, ¶ 157 and then after experiencing some degree of passive resistance, Defendant Alobaidi threatened Mr. Anderson, 'I'll f****** tase you, I don't care' which is proof positive for deliberate indifference. Doc. 233, ¶ 159.

21. The Deputies ignore Mr. Anderson's obvious need for medical attention and keep attempting to shove him in the back of the police vehicle. *See* Doc. 233, ¶ 169-170. Once shoved in the back of the police vehicle, Mr. Anderson passively used his feet to keep the car door propped open, but the Deputies kept using the door to smash his feet. *See* Doc. 233, ¶ 176. Some of the Deputies go to the other side of the vehicle in an attempt to pull Mr. Anderson away from the door he is trying to keep open. *See* Doc. 233, ¶ 178.

### D. Defendant Alobaidi Uses a Taser on Mr. Anderson, Not to Immobilize Him, But For the Sole Purpose of Inflicting Pain.

22. The taser used by Defendant Alobaidi was an Axon taser that delivers 50,000 volts. See Doc. 233, ¶ 182. The taser can be used to (1) immobilize a person by shooting out electrodes for neuro-muscular incapacitation or (2) inflict pain using pressing the taser's two electrode contacts against a person's skin (drive stun). See Doc. 233, ¶ 182-184; see also *Mattos v. Agarano*, 661 F.3d 433, 443 (9th Cir. 2011 (en banc). The drive stun function only causes pain and is not designed or intended to cause immobilization. See Doc. 233, ¶ 185; *see also Mattos*, 661 F.3d at 443. The two different functions of the taser are known to Defendants. See Doc. 233, ¶ 187. Furthermore, Defendants, especially Alobaidi knew that a taser used in drive stun mode was lethal. See Doc. 233, ¶ 197-198.

23. Despite the fact that Mr. Anderson was handcuffed and in the backseat of a police vehicle, thereby possessing minimal danger to the Deputies and no plausible chance of fleeing, Defendant Alobaidi pressed a taser against Mr. Anderson multiple times, and used the drive stun mode. *See* Doc. 233, ¶181. This was not just a one-time use of the taser. Defendant Alobaidi used the drive stun function on Mr. Anderson's (1) upper torso, (2) hip, and (3) neck. *See* Doc. 233, ¶ 190-194. Defendant Alobaidi used the drive stun function of his taser five times for at least twenty-four seconds total in a span of two minutes. *See* Doc. 233, ¶ 196. During this time, none of the other Defendants at the scene did anything to stop Defendant Alobaidi from using his taser on Mr. Anderson. *See* Doc. 233, ¶ 203.

24. After being repeatedly tased, Mr. Anderson lost consciousness and not even one officer tried to or suggested that Mr. Anderson needed to be revived. *See* Doc. 233, ¶ 205. However, none of the Defendants did anything to help transport Mr. Anderson to a facility where he could receive medical care. *See* Doc. 233, ¶ 207. Instead, Defendants decided to take him to jail in downtown Houston. *See* Doc. 233, ¶ 208. However, when Defendants arrived at the Joint Processing Center

with Mr. Anderson, he was unresponsive. Mr. Anderson had died while in the custody of Defendants. *See* Doc. 233, ¶ 214.

## ARGUMENT & AUTHORITIES

   I. **Intervenors Pled a Plausible Claim for Relief That Defendant Alobaidi Used Excessive Force.**

25. To state a claim for excessive force, a claimant must allege (1) an injury, (2) which resulted directly from the use of force that was clearly excessive to the need, and (3) the excessiveness of which was objectively unreasonable. *Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018). The second and third elements collapse into a single objective-reasonableness inquiry guided by the *Graham* factors. *See Scott v. Harris*, 550 U.S. 372, 381, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); *see also Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

26. The *Graham* factors are (1) the severity of the crime at issue, (2) whether the victim poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396.

27. There is no question that Mr. Anderson suffered an injury, so the first element is satisfied. But in their 72-page complaint, Intervenors sufficiently alleged facts that, when assumed to be true, demonstrate that Defendant Alobaidi used excessive force that was objectively unreasonable given the circumstances. The following chart applies the *Graham* factors to the facts pled by Intervenors that demonstrates the sufficiency of their complaint:

| GRAHAM FACTOR | INTERVENORS' PLEADING |
|---|---|
| Severity of the crime at issue | • Although Mr. Anderson was not presented with any warrant or charges, he appears to have been arrested for having an unpaid traffic ticket, although the officers amongst themselves held a discussion regarding driving while intoxicated.<br><br>• Mr. Anderson was not a true murder suspect and was not charged or arrested for murder. |

|  |  |
|---|---|
|  | - Mr. Anderson had never been charged with a crime prior to this incident, let alone convicted of a crime. *See* Doc. 233, ¶ 476;<br><br>- Mr. Anderson was discovered as the lone occupant of a vehicle that had crashed. *See* Doc. 233, ¶ 18, 22;<br><br>- It was visibly apparent that Mr. Anderson was bleeding, unresponsive, and in need of immediate medical attention. *See* Doc. 233, ¶ 22-26, 64;<br><br>- Mr. Anderson was not physically capable of following simple commands such as being ordered to take off his seat belt. *See* Doc. 233, ¶ 33; and<br><br>- At the scene of the collision, there was a point in time when an officer expressed that Mr. Anderson was a murder suspect, but prior to the use of excessive force, it was discovered that this accusation was unsubstantiated or false. *See* Doc. 233, ¶ 71, 95, 130. |
| Whether the suspect poses an immediate threat to the safety of officers or others | - At the outset, , Mr. Anderson was discovered to be unarmed, and did not physically or verbally threaten anyone, nor did he attempt to flee. *See* Doc. 233, ¶ 36-39;<br><br>- Mr. Anderson was handcuffed with his wrists around his back. *See* Doc. 233, ¶ 40-47;<br><br>- Mr. Anderson is held at the scene, in handcuffs, for an extended period of time where he makes no attempt to resist or flee. *See* Doc. 233, ¶ 103;<br><br>- While detained, Mr. Anderson, collapses face down, demonstrating that his physical condition makes him no threat to an officer, let alone a group of them. *See* Doc. 233, ¶ 104;<br><br>- Defendant Alobaidi aggressively confronts Mr. Anderson for no good reason. *See* Doc. 233, ¶ 123;<br><br>- Defendant Alobaidi observes and remarks that Mr. Anderson is bleeding. *See* Doc. 233, ¶ 124;<br><br>- Mr. Anderson is placed into the back of Deputy Estrada's police vehicle without putting up any resistance. *See* Doc. 233, ¶ 133;<br><br>- Rather than take Mr. Anderson to a hospital where he could get the medical attention he desperately needed, the Defendant Page is one of the Deputies that tells the on-site emergency medical service to leave. *See* Doc. 233, ¶ 144; |

|  | • Mr. Anderson is taken from the scene of the collision to a nearby gas station by Deputy Estrada. *See* Doc. 233, ¶ 145; and<br><br>• Despite the fact that he is already secured in the back of a police vehicle, **Mr. Anderson is removed from the police vehicle** while at the gas station. *See* Doc. 233, ¶ 151. |
|---|---|
| Whether the victim is actively or passively resisting | • After being removed from the police vehicle, Mr. Anderson repeatedly verbalizes his deteriorating condition. *See* Doc. 233, ¶ 151;<br><br>• Defendant Alobaidi verbally abuses Mr. Anderson without provocation. *See* Doc. 233, ¶ 152;<br><br>• The Deputies proceed to load Mr. Anderson into the back of an entirely different police vehicle, but due to his rapidly declining physical condition, Mr. Anderson cannot perform simple requests. *See* Doc. 233, ¶ 158-161;<br><br>• Because Mr. Anderson is not immediately responsive to the Deputies' commands, the Deputies proceed to physically manhandle him to put him back in the police vehicle. *See* Doc. 233, ¶ 169-170, 176, 178;<br><br>• Even though Mr. Anderson was in the back of the vehicle, Defendant Page placed him in a choke hold to get him to sit up. *See* Doc. 233, ¶ 202, 450;<br><br>• Defendant Alobaidi repeatedly used the drive stun function of his taser on a contained, handcuffed Mr. Anderson on his upper torso, hip, and neck, eventually using it five times for at least twenty-four seconds in a span of two minutes. *See* Doc. 233, ¶ 181, 190-194, 196;<br><br>• Defendant Alobaidi uses the drive stun on Mr. Anderson multiple times out of anger. *See* Doc. 233, ¶ 181; and<br><br>• Had the Deputies never removed Mr. Anderson from Officer Estrada's vehicle, there would have been no need to use any amount of force on him. |

28. "Officers may consider a suspect's refusal to comply with instructions ... in assessing whether physical force is needed," though they "must assess not only the need for force, but also 'the relationship between the need and the amount of force used.' " *Deville v. Marcantel*, 567 F.3d

12

156, 167 (5th Cir. 2009) (quoting *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999)). Noncompliance is resistance, but it is a form of passive resistance, not active resistance. *Becker v. Elfreich*, 821 F.3d 920, 927 (7th Cir. 2016) (internal quotations and alterations omitted) ("Willful non-compliance is not the same as actively resisting but instead a passive resistance requiring the minimal use of force."). "[W]here an individual's conduct amounts to mere 'passive resistance,' use of force is not justified." *Trammell v. Fruge*, 868 F.3d 332, 341 (5th Cir. 2017).

29. Consider the circumstances at the time of Defendant Alobaidi's use of force: Mr. Anderson was (1) physically injured from having just been in a motor vehicle collision, (2) demonstrating severe symptoms of disorientation, (3) physically restrained by handcuffs, (4) unarmed, and (5) contained within the back seat of a police vehicle. He was not a threat to any Deputy, let alone a group of them, and he certainly was not a flight risk. If Mr. Anderson's actions could be considered to constitute resistance, given the circumstances, it was passive resistance at best.

30. In light of Mr. Anderson's passive resistance, the *Graham* factors weigh heavily in favor of determining that Deputy Alobaidi used excessive force. There was no need to place Mr. Anderson, who again, was in handcuffs and in the back of a police vehicle, in a chokehold, nor was there any reason to use a taser to inflict pain if the goal was to use "measured and ascending actions that correspond to escalating verbal and physical resistance, as required by *Poole v. City of Shreveport*, 691 F.3d 624 (5th Cir. 2012).

## II. Intervenors Plead Facts That Demonstrate Qualified Immunity Should be Denied.

31. To overcome a qualified immunity defense, the plaintiff must show (1) the officer violated a constitutional right and (2) that the right at issue was "clearly established" at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). For a legal principle to be clearly established, the law "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond

debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)); *see also Club Retro, L.L.C. v. Hilton*, 568 F.3d, 181, 194 (5th Cir. 2009) ("The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions . . . so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.' ") (quoting *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc)).

32. It is obvious and free from debate that a pretrial detainee surrounded by at least four officers wearing handcuffs behind his back and not verbally resisting or attempting to flee who could be passively resisting should never be over-tased with an agonizing drive-stunning, but rather immobilized with neuro-muscular incapacitation as recommended by the manufacture by using the proper stun feature with a 12-inch spread of electrodes. *See* Doc. 233, ¶ 183-188;

33. Those standards are plainly met at the pleading stage here, where Defendant Alobaidi is alleged to have used the drive-stun mode of his taser on Mr. Anderson after he ceased to be a threat and was, at most, passively resisting. The illegality of such conduct was clearly established by a long line of the Fifth Circuit's controlling decisions by the time of the events at issue here.

### A. Qualified Immunity Does Not Impose a Heightened Pleading Standard.

34. To begin, it is important to emphasize that this Court's approach to pleading in qualified immunity cases affects what must be pleaded (i.e. facts that would defeat immunity if proven), but it does not change how those facts must be pleaded, or with what level of specificity. That issue is controlled by the familiar Iqbal/Twombly standard, interpreting Rule 8. Indeed, the Fifth Circuit made the proper approach abundantly clear: "Section 1983 claims implicating qualified immunity are subject to the same Rule 8 pleading standard set forth in Twombly and Iqbal as all other claims; an assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) (citing *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016)).

35. Thus, while a Section 1983 plaintiff "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity," the level of specificity required in pleading these "qualified-immunity facts" is nothing more than "the minimal specificity that would satisfy *Twombly* and *Iqbal*." *Arnold*, 979 F.3d at 267 (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)).

36. In other words, a defendant who asserts qualified immunity is not entitled to more specific allegations than any other civil defendant; if the plaintiff pleads facts that (1) negate the qualified immunity defense, with (2) "the minimal specificity that would satisfy *Twombly* and *Iqbal*" (*Arnold*, 979 F.3d at 267), the defendant's motion to dismiss must be denied. To the extent Defendant here suggests something more is required, they are wrong.

### B. Deputy Alobaidi Violated a Clearly Established Constitutional Right When He Used Excessive Force Against Mr. Anderson.

37. The Supreme Court has proclaimed that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard ..." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). Of course, the protections of the Fourth Amendment extend to the states pursuant to the Fourteenth Amendment. *Dunaway v. New York*, 442 U.S. 200, 207, 99 S.Ct. 2248, 2253-2254, 60 L.Ed.2d 824 (1979) (citation omitted).

38. "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement, through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 127 S.Ct. 2400, 2405, 168 L.Ed.2d 132 (2007) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868 (1968)) (internal quotation marks omitted).

39. The Fifth Circuit has repeatedly made explicit that, as early as 2013, "it was clearly established that violently slamming or striking a suspect who is not actively resisting arrest constitutes excessive use of force." *Darden v. City of Fort Worth, Texas,* 880 F.3d 722, 733 (5th Cir. 2018); *see also id*. at 732 ("[W]e have found that a police officer uses excessive force when the officer strikes, punches, or violently slams a suspect who is not resisting arrest."). This is not a new rule. To the contrary, "*Darden* repeated what had long been established in our circuit: Officers engage in excessive force when they physically strike a suspect who is not resisting arrest." *Joseph v. Bartlett*, 981 F.3d 319, 342 (5th Cir. 2020).

40. Additional cases tell the same story. *See, e.g.*, *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (rejecting qualified immunity because "[Detective] Galloway should have known that he could not forcefully slam Bush's face into a vehicle while she was restrained and subdued"); *Anderson v. McCaleb*, 480 F. App'x 768, 773 (5th Cir. 2012) (rejecting qualified immunity because "Officer Brant Smith should have known that he could not beat Anderson after he stopped resisting arrest," and "Officer Lanie Smith should have known that he could not continue to shock Anderson with the taser after he was no longer resisting arrest."). In short, a "group of precedents" from this Court "recognize[] that officers violate the Fourth Amendment when they tase, slam, or strike suspects or arrestees who are not actively resisting arrest or attempting to flee." *Batyukova v. Doege*, 994 F.3d 717, 727 (5th Cir. 2021).

41. That is precisely what is alleged here: Even though Mr. Anderson was in handcuffs and in the backseat of a police vehicle, Defendant Alobaidi used the most painful function of his taser on Mr. Anderson. *See* Doc. 233, ¶ 181, 204; *see also supra*. This alleged conduct plainly violates the clearly established rule set out in *Darden* and *Joseph*.

42. The facts pled by Intervenors sufficiently alleges a violation of clearly established Fourth Amendment rights, and requires this Court to deny Defendant Alobaidi's motion to dismiss.

### III. Intervenors Plead Plausible Facts to State a § 1983 Claim Against Alobaidi for Failure to Provide Medical Care.

43. Section 1983 provides a claim against anyone who "under color of any statute, ordinance, regulation, custom, or usage, of any State" violates another's constitutional rights. 42 U.S.C. § 1983. "To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.' " *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir.2008) (quoting *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir.2000)).

#### A. The Moment He Was Detained by Harris County Deputies, Mr. Anderson Had a Constitutional Right to Medical Care.

44. Suspects detained by law enforcement have a constitutional right to medical care and protection from harm during their detention. *Brumfield v. Hollins*, 551 F.3d 322, 327 (5th Cir. 2008) (citing *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996)).

#### B. There is No Question That Intervenors Alleged That Deputy Alobaidi Demonstrated Deliberate Indifference Toward Mr. Anderson's Obvious Need for Medical Care.

45. Defendant Alobaidi could immediately see that Mr. Anderson was bleeding, a clear sign that medical care was necessary. See Doc. 233, ¶ 22. Additionally, Mr. Anderson's general demeanor demonstrated that he was mentally impaired, as he was unresponsive to basic instructions, and frequently seemed disoriented. See Doc. 233, generally. Moreover, even though Mr. Anderson's condition constantly deteriorated, when Defendant Estrada instructed the medical personnel at the scene to leave, Defendant Alobaidi did nothing to intervene to keep the medical personnel on-site. See Doc. 233, ¶ 136.

### IV. Intervenors Plead Plausible Facts to State a § 1983 Claim Against Defendant Alobaidi for Bystander Liability.

46. An "officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v.*

*Townley*, 45 F.3d 914, 919 (5th Cir. 1995). The rationale behind this bystander liability theory is that the bystanding officer functionally participates in the unconstitutional act by choosing to not intervene. *Whitley v. Hanna*, 726 F.3d 631, 647 (5th Cir. 2013) (quoting *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 204 n. 24 (4th Cir. 2002). To state a plausible claim under a bystander theory of liability, a party must plead that the law enforcement official (1) knew that a fellow officer was violating an individual's constitutional rights, (2) had reasonable opportunity to prevent the harm, and (3) choose not to act. *Whitley*, 726 F.3d at 646.

### A. Deputy Alobaidi Knew That Choking Mr. Anderson Was Use of Excessive Force and an Unconstitutional Violation of His Fourth Amendment Rights.

47. Going back to 2013, there are three cases from the Fifth Circuit that put law enforcement officials on notice that they cannot use excessive force on a non-threatening subject: (1) *Ramirez v. Martinez*, (2) *Hanks v. Rogers*, and (3) *Trammel v. Fruge*. *Boyd v. McNamara*, 74 F.4th 662, 667-68 (5th Cir. 2023); *see also Ramirez v. Martinez*, 716 F.3d 369 (5th Cir. 2013); *Hanks v. Rogers*, 853 F.3d 738 (5th Cir. 2017); *Trammel v. Fruge*, 868 F.3d 332 (5th Cir. 2017).

48. In *Ramirez*, the Fifth Circuit held that it was a violation of clearly established law to tase the plaintiff even though the plaintiff pulled his arm from the officer's grasp, exchanged profanities with the officer, and questioned the officer's presence at his place of business. *Ramirez*, 716 F.3d at 378. In *Hanks*, an officer violated clearly established law when he resorted to sudden use of force on a plaintiff that was passively resisting. *Hanks*, 853 F.3d at 741-47. In *Trammel*, the Fifth Circuit held that an officer's use of force was excessive under clearly established law despite the plaintiff's failure to follow the officer's instructions. *Trammel*, 868 F.3d at 337-43.

49. In *Boyd v. McNamara*, the Fifth Circuit held that these three cases put an officer "on notice that [they] could not constitutionally fire a taser at a non-threatening, compliant subject." *Boyd*, 74 F.4th at 668.

### B. Intervenors Plead That Deputy Alobaidi Had The Opportunity to Prevent Harm to Mr. Anderson But Chose to Do Nothing.

50. Intervenors plead the following facts:

- Defendant Estrada drove Mr. Anderson away from the scene where she found him to a nearby gas station. *See* Doc. 233, ¶ 145;

- Defendant Alobaidi also went to the gas station. *See* Doc. 233, ¶ 149;

- While at the gas station, Defendant Alobaidi begins to escalate his hostility toward Mr. Anderson. *See* Doc. 233, ¶ 152;

- The other Deputies, including Defendants Estrada, Page, and Fernandez-Garcia are at the scene and in the vicinity of Defendant Alobaidi and Mr. Anderson. *See* Doc. 233, ¶ 164, 169-171, 227, 231-234.

- The Defendants surround the vehicle in their attempt to get a handcuffed Mr. Anderson into the back of a police vehicle. *See* Doc. 233, ¶ 178;

- Even though Mr. Anderson was in the back of the vehicle, Defendant Page placed him in a choke hold to get him to sit up. *See* Doc. 233, ¶ 202, 450;

- Defendant Alobaidi, in the presence of the other Defendant Deputies, tased Mr. Anderson multiple times. *See* Doc. 233, ¶ 181, 191-196.

51. Intervenors' pleadings, which should be taken as true, demonstrate that Intervenors have asserted allegation that demonstrate (1) in 2021, Deputy Alobaidi was on notice that excessive use of force against a non-resistant or minimally resistant suspect was unconstitutional, (2) he was in the immediate vicinity and would have been able to prevent Deputy Page from choking Mr. Anderson, and (3) chose not to act.

## **CONCLUSION**

52. Intervenors' live complaint sufficiently alleges a plausible claim for relief that Deputy Alobaidi violated Mr. Anderson's constitutional rights pursuant to Section 1983. Furthermore, their live complaint alleges facts that, which are taken as true, demonstrates that Deputy Alobaidi is not entitled to qualified immunity. Defendant Page's motion to dismiss should be denied.

Respectfully submitted,

**THE ZWERNEMANN LAW FIRM**

/S/Allen H. Zwernemann
Allen H. Zwernemann
FID No. 2851120
SBN: 24034755
114 Byrne Street
Houston, Texas 77009
Phone: (281) 221-7168
Fax: (281) 783-4247
Email: az@azlf.com

**KETKAR LAW FIRM PLLC**

/S/Ajay K. Ketkar
Ajay K. Ketkar
FID No. 3545468
SBN: 24102801
1005 Heights Blvd
Houston, Texas 77009
Phone: (832) 729-1057
Email: ajay@ketkarlaw.com

**ATTORNEYS FOR INTERVENOR-PLAINTIFFS**

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument has been provided to all parties by and through the Court's ECF system as prescribed by the Federal Rules of Civil Procedure on January 5, 2024.

*/s/ Allen H. Zwernemann*
**Allen H. Zwernemann**