UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KENNETH D. ANDERSON, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-03730 |
| | § | |
| HARRIS COUNTY, TEXAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are several Motions: (1) Defendant Harris County, Texas' ("Harris County") Motion to Dismiss Plaintiffs' First Amended Complaint[1] (Doc. #167) and Motion to Dismiss Intervenors' Amended Complaint (Doc. #237); (2) Defendant Cristal Estrada's ("Estrada") Motion for Judgment on the Pleadings (Doc. #163) and Motion to Dismiss Intervenors' Amended Complaint (Doc. #234); (3) Defendant Mercy Garcia-Fernandez's ("Garcia") Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. #168) and Motion to Dismiss Intervenors' Amended Complaint (Doc. #235); (4) Defendant Victor Page's ("Page") Motion for Judgment on the Pleadings (Doc. #172) and Motion to Dismiss Intervenors' Amended Complaint, or in the Alternative, Motion for Judgment on the Pleadings (Doc. #238); and (5) Defendant Mohanad Alobaidi's ("Alobaidi") Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. #175) and

---

[1] In its Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. #167), Harris County also moved to dismiss claims asserted in Intervenors' First Amended Complaint (Doc. #91). However, Intervenors have since filed an Amended Complaint (Doc. #233), and Harris County has filed a separate Motion to Dismiss that Complaint (Doc. #237). Thus, Harris County's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. #167) is DENIED as MOOT to the extent Harris County seeks dismissal of claims asserted in Intervenors' First Amended Complaint (Doc. #91).

Motion to Dismiss Intervenors' Amended Complaint (Doc. #236).[2]

Having considered the parties' arguments, submissions, and the applicable legal authority, the Court grants in part Harris County's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. #167) and grants Harris County's Motion to Dismiss Intervenors' Amended Complaint (Doc. #237). Furthermore, the Court grants in part Estrada's Motion for Judgment on the Pleadings (Doc. #163) and Motion to Dismiss Intervenors' Amended Complaint (Doc. #234), Garcia's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. #168) and Motion to Dismiss Intervenors' Amended Complaint (Doc. #235), Page's Motion for Judgment on the Pleadings (Doc. #172) and Motion to Dismiss Intervenors' Amended Complaint (Doc. #238), and Alobaidi's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. #175) and Motion to Dismiss Intervenors' Amended Complaint (Doc. #236).

## I. Background

### a. Factual Background

This case arises from the death of Kenneth Anderson, Jr. ("Anderson") after he was arrested by Harris County deputies. Doc. Nos. 30, 233. In the early morning of October 10, 2021, Anderson was involved in a single-vehicle accident in Houston, Texas. Doc. #30 ¶ 25; Doc. #233

---

[2] Also before the Court are the following: (1) Garcia's Motion for Leave to File Renewed 12(b)(6) Motion (the "Motion for Leave") (Doc. #161); (2) Garcia's Motion for Judgment on the Pleadings ("Garcia's Motion for Judgment") (Doc. #169); (3) Alobaidi's Motion for Judgment on the Pleadings ("Alobaidi's Motion for Judgment") (Doc. #176); and (4) Plaintiffs and Intervenors' Motion to Strike Defendants' Designation of Experts and Motion for Protective Order (the "Motion to Strike") (Doc. #226). Garcia's Motion for Leave (Doc. #161) is DENIED as MOOT because she has since filed Motions to Dismiss both Plaintiffs' and Intervenors' live Amended Complaints (Doc. Nos. 168, 235). Garcia's Motion for Judgment (Doc. #169) and Alobaidi's Motion for Judgment (Doc. #176) are DENIED as MOOT because Intervenors have since filed an Amended Complaint (Doc. #233). Finally, the Motion to Strike (Doc. #226) is DENIED as MOOT because the Court has since entered a revised Scheduling Order (Doc. #232), and Harris County has withdrawn its expert designations (Doc. #231).

¶ 18. Anderson had a history of mental illness. Doc. #30 ¶ 26; Doc. #233 ¶ 17. Defendant Cristal Estrada was among the Harris County deputies who initially responded to the accident. Doc. #30 ¶ 29; Doc. #233 ¶ 18. Estrada approached Anderson's vehicle and directed him to get out. Doc. #30 ¶ 29; Doc. #233 ¶¶ 42–51. Anderson eventually complied, and he was handcuffed by another deputy. Doc. #30 ¶ 29; Doc. #233 ¶¶ 42–51. Emergency medical services ("EMS") also responded to the accident. Doc. # 233 ¶ 81; *see also* Doc. #163, Ex. 1.

Anderson remained in handcuffs near the location of the accident for approximately one hour. Doc. #30 ¶¶ 27–29; Doc. #233 ¶ 130. During that one-hour window, Harris County Deputies Mercy Garcia-Fernandez, Victor Page, and Mohanad Alobaidi (collectively with Estrada, the "Deputy Defendants"), also arrived at the scene. Doc. #30 ¶ 25; Doc. #233 ¶¶ 87, 101. While waiting to be transported, Anderson remained peaceable but appeared disoriented. Doc. #30 ¶ 29–33; Doc. #233 ¶¶ 59, 99, 104, 110. Various deputies also commented that Anderson was bleeding. Doc. #233 ¶¶ 22, 124, 147.

At about 4:25 A.M., Anderson was placed in the back of Estrada's patrol vehicle without incident. Doc. #30 ¶ 27–28; Doc. #233 ¶ 130–33; Doc. #163, Ex. 1 at 4:25:30. At that point, Estrada told emergency medical personnel that they could leave. Doc. #233 ¶ 136; Doc. #163, Ex. 1 at 4:26:50. Estrada then transported Anderson to a nearby gas station. Doc. #30 ¶ 28; Doc. #233 ¶ 145. The remaining Deputy Defendants also went to the gas station. Doc. #30 ¶ 28; Doc. #233 ¶ 149–50. Anderson was removed from Estrada's vehicle and continued to appear disoriented. Doc. #30 ¶ 30; Doc. #233 ¶ 151. Anderson then admitted that he had taken a controlled substance that night. Doc. #30 ¶ 30; Doc. #233 ¶ 154. Anderson also asked for water on multiple occasions. Doc. #30 ¶¶ 30, 164; Doc. #233 ¶¶ 170–72, 447. At some point, Alobaidi gave Anderson some water. Doc. #30 ¶ 30; Doc. #233 ¶ 168.

The Deputy Defendants then tried to put Anderson in the back of Alobaidi's patrol vehicle. Doc. #30 ¶ 30; Doc. #233 ¶ 158. Anderson did not follow instructions to get fully inside the vehicle and used his body to attempt to keep the vehicle door open. Doc. #30 ¶ 38; Doc. #30, Ex. 1 at 6; Doc. #233 ¶ 176; Doc. #172, Ex. 1 at 4:47:00–4:51:00. As the Deputy Defendants attempted to get Anderson situated fully inside in the vehicle, Alobaidi used a taser to drive-stun[3] Anderson at least four times in quick succession.[4] Doc. #30 ¶ 31; Doc. #233 ¶ 196. The Deputy Defendants were able to get Anderson fully in the vehicle. Doc. #173, Ex. 1 at 4:52:00. Anderson was laying in the car at an odd position, and Page asked him to sit upright. *Id.* at 4:52:40. Page then put his hands on the back of Anderson's neck to attempt to place him in an upright position.[5] *Id.* at 4:53:00. Anderson appeared disoriented, and EMS was called to the gas station. Doc. #30 ¶ 36; Doc. #233 ¶ 206. The Deputy Defendants did not request that Anderson be taken to a medical facility. Doc. #30 ¶ 36; Doc. #233 ¶ 207. Rather, Alobaidi and Garcia transported Anderson to the Harris County Joint Processing Center ("JPC"). Doc. #30 ¶ 39; Doc. #233 ¶ 208. Anderson was unresponsive when Alobaidi and Garcia arrived with him at the JPC, and EMS was called

---

[3] "Drive-stunning" refers to the act of pressing a taser directly against a person's body without the taser's cartridge containing the metal probes. Doc. #30 ¶ 27; Doc. #233 ¶ 184; *Carroll v. Ellington*, 800 F.3d 154, 164 (5th Cir. 2015). This method of tasing "inflicts a painful electric shock on contact, but does not cause the same seizing" or immobilizing effect as deploying a taser with prongs. *Cloud v. Stone*, 993 F.3d 379, 382 n.2 (5th Cir. 2021); Doc. #233 ¶ 186.

[4] At this stage of the case, the number of times Anderson was drive-stunned is unclear. In Plaintiffs' Amended Complaint, they note that Alobaidi told other deputies he drive-stunned Anderson twelve times, and Plaintiffs describe at least three instances. Doc. #30 ¶ 31. Intervenors' Amended Complaint alleges that Anderson was drive-stunned five times, and notes that Alobaidi also remarked he tased Anderson four times. Doc. #233 ¶¶ 196, 204. Upon review of Page's body-worn camera video, the Court has identified at least four instances where Alobaidi drive-stunned Anderson. Doc. #173, Ex. 1 at 4:50:30–4:51:35.

[5] Plaintiffs and Intervenors allege that Page choked Anderson or placed him in a chokehold. Doc. #30 ¶ 33; Doc. #233 ¶ 202. However, this allegation is clearly contradicted by the video evidence before the Court, which shows Page using his hands at the back of Anderson's neck to support him in sitting upright. Doc. #173, Ex. 1 at 4:53:00.

again.  Doc. #30 ¶ 39; Doc. #30, Ex. 1 at 6–7; Doc. #233 ¶¶ 208–12.  Personnel at the JPC attempted to resuscitate Anderson while they waited for EMS.  Doc. #30 ¶ 39; Doc. #233 ¶ 213. It is unclear exactly when Anderson died, but Plaintiffs and Intervenors allege it was while he was being transported to the JPC by Garcia and Alobaidi.  Doc. #30 ¶ 40; Doc. #233 ¶ 214.  After EMS arrived at the JPC, Anderson was transported to a nearby hospital, where he was pronounced dead at approximately 7:28 A.M.  Doc. #30 ¶ 42; Doc. #30, Ex. 1 at 6–7.

**b.    Procedural History**

On December 19, 2021, the family and estate of Anderson ("Plaintiffs") filed their Amended Complaint, which is their live pleading.  Doc. #30.  Anderson's parents, Evelyn Fay Ayers-Woods and Kenneth Anderson, Sr. ("Intervenors"), intervened in the case and filed their Amended Complaint on November 15, 2023, which is their live pleading.  Doc. #233.  In their respective Amended Complaints, Plaintiffs and Intervenors bring claims against Harris County, Alobaidi, Page, Garcia, and Estrada.  Doc. Nos. 30, 233.  As to the Deputy Defendants, Plaintiffs bring state law claims for loss of consortium, wrongful death, survival, and assault and battery, as well as excessive force, failure to intervene, and failure to provide medical care claims under 42 U.S.C. § 1983 ("Section 1983").[6]  Doc. #30 ¶¶ 45–104.  As to Harris County, Plaintiffs bring claims for loss of consortium, wrongful death, survival, negligence, and gross negligence, as well as various claims pursuant to Section 1983, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act of 1973 ("RA").  *Id.* ¶¶ 45–169.  Plaintiffs also seek punitive damages with

---

[6] Plaintiffs' Amended Complaint includes several claims that have since been abandoned.  First, Plaintiffs have abandoned their negligence and gross negligence claims against the Deputy Defendants.  Doc. #191 at 7; Doc. #30 ¶¶ 69–89.  Second, Plaintiffs have abandoned their intentional tort claims, Eighth Amendment claims, and vicarious liability claims brought pursuant to Section 1983 against Harris County.  Doc. #191 at 9, 12.  Finally, Plaintiffs have abandoned their claims for punitive damages under Section 1983 and the Texas Tort Claims Act.  Doc. #191 at 12.  Thus, these claims are hereby DISMISSED.

respect to some of these claims. *Id.* In their Amended Complaint, Intervenors bring Section 1983 claims against the Deputy Defendants for excessive force, failure to provide medical care, and bystander liability. Doc. #233 ¶¶ 217–294. With respect to Harris County, Intervenors assert claims pursuant to Section 1983, the ADA, and the RA, as well as wrongful death, survival, and negligence claims. *Id.* ¶¶ 395–481.

Harris County has moved to dismiss certain claims in Plaintiffs' and Intervenors' Amended Complaints. Doc. Nos. 167, 237. Each of the Deputy Defendants have asserted qualified immunity and move to dismiss Plaintiffs' and Intervenors' Amended Complaints in their entireties. Doc. Nos. 163, 234, 168, 235, 172, 238, 175, 236. The Court will first address Harris County's Motions together. Then, the Court will evaluate the Deputy Defendants' Motions.

## II. Legal Standard

### a. Federal Rule of Civil Procedure 12(b)(6)[7]

Rule 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claim. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

---

[7] The Court notes that certain Deputy Defendants have sought dismissal pursuant to Federal Rule of Civil Procedure Rule 12(c). Doc. Nos. 163, 172, 178. Courts "evaluate a motion under Rule 12(c) for judgment on the pleadings using the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010). The Court therefore evaluates all of the Deputy Defendants' Motions, even those filed pursuant to Rule 12(c), under the Rule 12(b)(6) standard.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss under Rule 12(b)(6), courts must liberally construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Id.* at 662. The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* at 678. In addition, all reasonable inferences must be drawn in the plaintiff's favor. *Severance v. Patterson*, 566 F. 3d. 490, 501 (5th Cir. 2009).

Additionally, courts may "consider documents attached to the Rule 12(b)(6) motion 'that are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Allen v. Hays*, 812 F. App'x 185, 189 (5th Cir. 2020) (quoting *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010)). "When the material in question is video footage of the event at issue, the district court 'should not discount the nonmoving party's story unless the video evidence provides so much clarity that a reasonable jury could not believe [the plaintiff's] account.'" *Castillanos v. Faiura*, No. CV H-22-1442, 2022 WL 6766160, at \*3 (S.D. Tex. Oct. 11, 2022) (quoting *Darden v. City of Fort Worth*, 880 F.3d 722, 730 (5th Cir. 2018)). In other words, courts should only discount the plaintiff's version of events to the extent the video clearly contradicts the allegations in the complaint. *Id.*

### b. Qualified Immunity

Qualified immunity protects government officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an "immunity from suit rather than a mere defense

to liability." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009). Once a defendant has invoked the defense of qualified immunity, the plaintiff carries the burden of demonstrating its inapplicability. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

In *Saucier v. Katz*, the Supreme Court established a two-part framework to determine if a plaintiff has overcome a qualified immunity defense. 533 U.S. 194 (2001). First, the court asks whether, taken in the light most favorable to the injured party, "the facts alleged show the officer's conduct violated a constitutional right." *Id.* at 201. Second, the court considers whether the allegedly violated right was "clearly established." *Id.* at 201. When deciding whether the constitutional right was clearly established, the court asks whether the law so clearly and unambiguously prohibited the conduct such that a reasonable official would understand that what she was doing violated the law. *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013). "Answering in the affirmative requires the court to be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity. This requirement establishes a high bar." *Id.*

Furthermore, even if "the defendant's actions violated a clearly established constitutional right," the court will then ask whether qualified immunity is nevertheless "appropriate because the defendant's actions were 'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'" *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (quoting *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004)).

### III. Analysis

As a preliminary matter, Intervenors object to the Court's consideration of the body-worn camera footage that Harris County and the Deputy Defendants have incorporated into their various Motions. *See* Doc. #163, Ex. 1 (footage from Estrada's body-worn camera); Doc. #173, Ex. 1

(footage from Page's body-worn camera). Plaintiffs and Intervenors referenced body-worn camera video in their respective Amended Complaints and it is central to their claims. Doc. #30 ¶ 29; Doc. #233 ¶¶ 19, 72–73, 101, 445–46. The Court is therefore permitted to consider the footage that is incorporated in the various Motions, but the videos will only control to the extent that they contradict the allegations in the Amended Complaints. *See Darden*, 880 F.3d at 730.

### a. Harris County's Motions to Dismiss

Harris County moves to dismiss the following claims in Plaintiffs' and Intervenors' Amended Complaints: (1) tort claims asserted against the Deputy Defendants, (2) state law claims asserted against Harris County, (3) Eighth Amendment claims under Section 1983, and (4) claims for punitive and exemplary damages.[8] Doc. #167 at 3–4; Doc. #237 at 4. In addition, Harris County seeks dismissal of Intervenors' survival claim. Doc. #237 at 4. The Court will address each issue presented in Harris County's Motions in turn.

### 1. Tort Claims Asserted Against the Deputy Defendants

Harris County seeks dismissal of all claims brought under the Texas Tort Claims Act ("TTCA") against the Deputy Defendants pursuant to the TTCA's "election-of-remedies" provision. Doc. #167 at 4; Doc. #237 at 7. In their Response, Intervenors clarify that they do not bring any TTCA or common law claims against the Deputy Defendants. Doc. #243 at 11–12. Plaintiffs voluntarily dismissed their unintentional tort claims against the Deputy Defendants, but maintain that their intentional tort claims should not be dismissed. Doc. #191 at 7–9.

---

[8] Plaintiffs argue that Harris County's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. #167) is untimely. Doc. #191 at 6–7. This argument is meritless, as the Court allowed Harris County to file an amended motion for dismissal upon the completion of Court-ordered discovery, without setting a particular deadline. Doc. #120. Because Harris County filed its Motion within a reasonable period of time after said discovery was complete, the Court deems the Motion timely filed.

The TTCA "provides a limited waiver of immunity for certain suits against Texas governmental entities." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 462 (5th Cir. 2010) (citing TEX. CIV. PRAC. & REM. CODE § 101.021). Under the TTCA's election-of-remedies provision, "[i]f a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE § 101.106(e). In Texas, "all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under [the Tort Claims Act]' for purposes of section 101.106." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008). Thus, "if a plaintiff brings virtually any state common law tort claim against both a governmental unit and its employees, § 101.106(e) will allow the employee defendants to be dismissed if the governmental unit so moves. That this holding applies to intentional torts is clear . . . ." *Bustos*, 599 F.3d at 463 (internal citation omitted).

Here, Plaintiffs have asserted their intentional tort claims against both a governmental unit and its employees. Doc. #30 ¶¶ 45–89. Harris County, as the governmental unit, has moved to dismiss the intentional tort claims asserted against its employees, Reyes and the Deputy Defendants. Doc. #18 ¶ 23. Thus, pursuant to Section 101.106(e), the Court finds that the state tort claims Plaintiff asserts against Reyes and the Deputy Defendants, including his intentional infliction of emotional distress claim, should be dismissed. *See Bustos*, 599 F.3d at 463.

### 2. State Law Claims Asserted Against Harris County

Harris County next moves to dismiss the state law tort claims Plaintiffs and Intervenors have asserted against it based on sovereign immunity. Doc. #167 at 5–10; Doc. #237 at 8–11. Plaintiffs have abandoned their intentional tort claims against Harris County, leaving only their negligence, gross negligence, wrongful death, and survival claims. Doc. #191 at 9. In their

Amended Complaint, Intervenors assert state law claims for wrongful death, survival, and negligence. Doc. #233 ¶¶ 456–81. However, while Intervenors argue they are entitled to wrongful death damages pursuant to Section 1983, they do not defend their *state law* claims. *See* Doc. #243 at 15–16. Because "failure to respond to arguments raised in a motion to dismiss constitutes waiver or abandonment of those issues at the district court level," the Court finds that Intervenors' state law claims should be dismissed. *Lewis v. City of Houston*, No. 4:22-CV-00844, 2023 WL 2249991, at *4 (S.D. Tex. Feb. 27, 2023), *aff'd sub nom. Lewis v. Inocencio*, No. 23-20098, 2024 WL 229274 (5th Cir. Jan. 22, 2024); *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006). But even if Intervenors did not abandon these claims, the Court's analysis as to Plaintiffs' state law claims applies to Intervenors.

"In Texas, a governmental entity has sovereign immunity and cannot be held liable for the actions of its employees unless there is a constitutional or statutory provision waiving such immunity." *Casanova v. City of Brookshire*, 119 F. Supp. 2d 639, 664 (S.D. Tex. 2000). Relevant to this case, the TTCA waives sovereign immunity and makes the governmental entity liable for "property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment" if the injury "arises from the operation or use of a motor-driven vehicle" or "by a condition or use of tangible real or personal property." TEX. CIV. PRAC. & REM. CODE § 101.021(1)(A). This provision "waives governmental immunity for certain negligent conduct, but it does not waive immunity for claims arising out of intentional torts." *City of Watauga v. Gordon*, 434 S.W.3d 586, 594 (Tex. 2014). Accordingly, even when a plaintiff frames a claim as one of negligence, that claim will be barred by the TTCA if the pleaded facts amount to an intentional tort. *Saenz v. City of El Paso*, 637 F. App'x 828, 830 (5th Cir. 2016) (citing *Harris Cty. v. Cabazos*, 177 S.W.3d 105, 111 (Tex.App.—Houston [1st

Dist.] 2005)).

In their Amended Complaint, Plaintiffs allege that Harris County's immunity is waived because the Deputy Defendants "used a taser (conducted electrical device) to injure Mr. Anderson and cause his needless death." Doc. #30 ¶ 77. To the extent Plaintiffs' negligence and gross negligence claims are based on the tasing of Anderson, those claims are for an intentional tort and therefore barred by the TTCA because the "gravamen" of Plaintiffs' claim is that Alobaidi "used excessive force." *See Saenz*, 637 F. App'x at 830–31.

Plaintiffs also allege that sovereign immunity is waived because the Deputy Defendants "used a patrol vehicle to deny Mr. Anderson necessary medical care." Doc. #33 ¶ 77. In essence, Plaintiffs argue that the patrol vehicle was used to imprison Anderson and keep EMS personnel from properly evaluating him. Doc. #192 at 10–12. However, with respect to the TTCA's motor-vehicle waiver, "Texas law does not waive sovereign immunity where a vehicle is used tangentially and does not directly cause injury." *Pizana v. City of Brownsville*, Tex., No. CIV.A. B-08-97, 2008 WL 2369816, at *2 (S.D. Tex. June 10, 2008) (citing *City of Orange v. Jackson*, 927 S.W.2d 784, 786 (Tex. App.—Beaumont 1996) (holding that the motor-vehicle waiver did not apply where the plaintiff alleged that "because he was transported in a police vehicle and during that time was 'wrongfully detained and prevented . . . from receiving immediate and necessary medical attention' his injuries were aggravated"). Rather, Texas law requires "a nexus between the operation or use of the motor-driven vehicle or equipment and a plaintiff's injuries" that is "more than mere involvement of property." *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003).

Here, Plaintiffs do not allege that the patrol vehicle itself caused Anderson's death. Instead, Plaintiffs allege the vehicle was used tangentially to keep Anderson from receiving medical

attention. This does not trigger the TTCA's motor-vehicle waiver of sovereign immunity. *See Pizana*, 2008 WL 2369816, at *2. Therefore, the Court finds that Plaintiffs' negligence and gross negligence claims must be dismissed because Harris County's sovereign immunity was not waived. In addition, to the extent that Plaintiffs plead wrongful death and survival claims based on Harris County's alleged tortious conduct, those claims must also be dismissed because "[w]rongful death and survival claims do not fall under" the TTCA's waiver, and all of Plaintiffs' state law tort claims against Harris County have been dismissed. *See Petersen v. Montgomery Cnty., Tex.*, No. CV H-20-4243, 2021 WL 4555234, at *3 (S.D. Tex. Oct. 5, 2021), *aff'd sub nom. Petersen v. Johnson*, 57 F.4th 225 (5th Cir. 2023). Harris County's Motions are therefore granted as to the state law tort claims asserted against it.

### 3. Section 1983 Eighth Amendment Claims

Harris County moves to dismiss Plaintiffs' and Intervenors' Eighth Amendment claims brought pursuant to Section 1983. Doc. #167 at 11; Doc. #237 at 13. Plaintiffs voluntarily dismissed their Eighth Amendment claims against Harris County. Doc. #191 at 15. Intervenors did not respond or otherwise defend their Eighth Amendment claims against Harris County. *See* Doc. #243. Therefore, those claims are deemed waived or abandoned. *See* Doc. #243; *Lewis*, 2023 WL 2249991, at *4. Harris County's Motions are therefore granted with respect to Plaintiffs' and Intervenors' Eighth Amendment claims.

### 4. Punitive and Exemplary Damages

Harris County also seeks dismissal of Plaintiffs' and Intervenors' claims for punitive and exemplary damages, arguing such damages cannot be recovered from a government entity under Section 1983 and the TTCA. Doc. #167 at 11–12; Doc. #237 at 13–14. Plaintiffs have voluntarily dismissed their claims for exemplary and punitive damages under Section 1983 and the TTCA,

but still seek such damages pursuant to the ADA and RA. Doc. #191 at 15–16. Intervenors maintain that they may seek punitive damages pursuant to Section 1983. Doc. #243 at 13–14.

It is well-established in the Fifth Circuit that "[a]lthough punitive damages can be assessed against an individual defendant sued in his individual capacity," a plaintiff "cannot recover punitive damages" from a government entity under Section 1983. *Stern v. Hinds Cnty., Miss.*, 436 F. App'x 381, 382 (5th Cir. 2011). Additionally, government entities are "not liable for punitive damages under the ADA." *Liner v. Hosp. Serv. Dist. No. 1 of Jefferson Par.*, 230 F. App'x 361, 365 (5th Cir. 2007) (citing 42 U.S.C. § 1981a(b)(1)). Nor are punitive damages recoverable under the RA. *Yoakum v. Splendora Indep. Sch. Dist.*, No. CV H-17-3914, 2019 WL 13401725, at *2 (S.D. Tex. Jan. 11, 2019) (citing *Barnes v. Gorman*, 536 U.S. 181, 188–89 (2002)). Thus, Plaintiffs' and Intervenors' claims for punitive and exemplary damages against Harris County are dismissed.

### 5. Intervenors' Survival Claim

Finally, Harris County moves to dismiss Intervenors' survival claim, arguing that intervenors lack capacity. Doc. #237 at 11–12. Intervenors do not offer a response to Harris County's capacity argument but maintain that their survival claim under Section 1983 should not be dismissed. Doc. #243 at 15–16. "Standing under the Civil Rights Statutes is guided by 42 U.S.C. § 1988, which provides that state common law is used to fill the gaps in administration of civil rights suits." *Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir. 2004). Thus, to bring a survival claim under Section 1983, "a party must have standing under the state . . . survival statutes." *Id.* "Texas authorizes survival actions by the estate's personal representatives and heirs at law." *Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 212 (5th Cir. 2016) (citing TEX. CIV. PRAC. & REM. CODE § 71.021(b)). Typically, "only a personal representative may bring a survival

action, but '[h]eirs at law can maintain a survival suit . . . if they allege and prove that there is no administration pending and none necessary.'" *Id.* (citing *Shepherd v. Ledford*, 962 S.W.2d 28, 31–32 (Tex. 1998)).

In their Amended Complaint, Intervenors allege that they are the heirs of Anderson's estate, but specifically note that "[t]here is currently an estate administration pending." Doc. #233 ¶ 465. Intervenors have therefore not demonstrated they have capacity to bring a Section 1983 survival action. *See White v. Livingston*, No. CIV.A. H-08-2413, 2009 WL 2900771, at *4 (S.D. Tex. Sept. 3, 2009) (holding that the plaintiff lacked standing to bring a Section 1983 survival claim because she did not plead that administration of the decedent's estate was not pending or that none was necessary).

### b. The Deputy Defendants' Motions to Dismiss

All of Plaintiffs' state common law tort claims have been dismissed as to all Deputy Defendants. *Supra* pp. 9–10. What remains are Plaintiffs' Fourth and Fourteenth Amendment excessive force, failure to provide medical care, and bystander liability claims brought pursuant to Section 1983. Doc. #30 ¶¶ 90–94, 97–104. Intervenors have brought Fourth, Eighth, and Fourteenth Amendment claims under Section 1983 for excessive force, failure to medical care, and bystander liability. Doc. #233 ¶¶ 217–394. The Deputy Defendants have each individually moved to dismiss all of the claims asserted against them. Doc Nos. 163, 234, 168, 235, 172, 238, 175, 236. The Court will evaluate each claim in turn.

### 1. Excessive Force

To plead a Section 1983 claim, a plaintiff is required to allege facts demonstrating that: (1) the defendant violated the Constitution or federal law; and (2) the defendant was acting under the color of state law while doing so. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "When a plaintiff

alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). To state a claim for the use of excessive force under the Fourth Amendment, Plaintiffs must allege an "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017). "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Hanks v. Rogers*, 853 F.3d 738, 745 (5th Cir. 2017) (quoting *Graham v. Connor*, 490 U.S. 386 (1989)). Courts consider three factors when determining whether force was excessive or unreasonable: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

### i. Deputies Estrada and Garcia

Estrada and Garcia argue they are entitled to qualified immunity with respect to Plaintiffs' and Intervenors' excessive force claims. Doc. Nos. 163, 168, 234, 235. In their Responses, Intervenors do not address or otherwise defend their excessive force claims against Estrada and Garcia, and instead rely on a theory of bystander liability. Doc. Nos. 242, 244. Therefore, those claims are deemed waived or abandoned. *See Lewis*, 2023 WL 2249991, at *4. Plaintiffs, on the other hand, maintain their excessive force claims against Estrada and Garcia. Because the facts and issues pertaining to Estrada and Garcia are similar, the Court analyzes the excessive force claims asserted against them together.

In the first prong of the qualified immunity analysis, the Court asks whether, taken in the light most favorable to the injured party, "the facts alleged show the officer's conduct violated a

constitutional right." *Saucier*, 533 U.S. at 201. While Plaintiffs plead that Anderson suffered an injury, they do not sufficiently allege that Garcia and Estrada used excessive and unreasonable force, as required to plead an excessive force claim. *See Trammell*, 868 F.3d at 340. In their Amended Complaint, Plaintiffs allege two uses of force: (1) Alobaidi's use of the taser to drive-stun Anderson multiple times, and (2) Page placing Anderson in a chokehold. Doc. #30 ¶¶ 31, 33. There are no specific references to Garcia or Estrada using excessive force. Thus, Plaintiffs' excessive force claims against Estrada and Garcia are dismissed.

### ii. Deputy Alobaidi

Alobaidi argues that the excessive force claims against him should be dismissed because (1) Plaintiffs and Intervenors did not properly plead excessive force claims, and (2) Alobaidi is entitled to qualified immunity. Doc. #175. First, the Court turns to Alobaidi's argument that Plaintiffs and Intervenors have not sufficiently pleaded claims for excessive force under Section 1983. To plead an excessive force claim, a plaintiff must allege an "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Trammell*, 868 F.3d at 340. To determine whether force was excessive or unreasonable, the Court is guided by the three *Graham* factors in its analysis. *See Graham*, 490 U.S. at 396.

Plaintiffs and Intervenors allege that Alobaidi drive-stunned Anderson using his taser at least four times, causing Anderson's death. Doc. #30 ¶ 31, 91–92; Doc. #233 ¶ 196, 223. With respect to the first *Graham* factor regarding severity of the crime at issue, Plaintiffs allege that Anderson was arrested because he had an open warrant for nonappearance in court for failure to have a driver's license. Doc. #30 ¶ 26. Intervenors do not allege what Anderson was arrested for in their Amended Complaint. However, Intervenors allege that deputies suspected Anderson

might be a murder suspect, which was later discovered to be unsubstantiated. Doc. #233 ¶¶ 71, 95, 130. As to the second *Graham* factor regarding the level of threat Anderson posed, Plaintiffs and Intervenors allege that, when Alobaidi deployed his taser, Anderson was: (1) disoriented and injured from a car accident; (2) handcuffed; (3) unarmed; and (4) in Alobaidi's vehicle. Doc. #30 ¶¶ 30–33; Doc. #233 ¶¶ 179–201. As to the final *Graham* factor regarding whether Anderson was actively resisting arrest, Plaintiffs and Intervenors allege Anderson was trying to keep the door to the vehicle open when the Deputy Defendants were trying to shut it. Doc. #30 ¶ 92; Doc. #233 ¶¶ 176–77.

Based on the facts alleged, the severity of the crime for which Anderson was arrested is low. In addition, when Alobaidi deployed his taser, Anderson was handcuffed and subdued. At most, Anderson was passively resisting by trying to keep the patrol vehicle door open. Given these allegations, Plaintiffs and Intervenors have sufficiently pleaded an excessive force claim against Alobaidi at the motion to dismiss stage. *See Trammell*, 868 F.3d at 340.

Next, Alobaidi asserts qualified immunity. Once the issue of qualified immunity is raised, "[t]he plaintiff has the burden to negate the defense." *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016). Plaintiffs and Intervenors therefore must show (1) a constitutional violation that is (2) clearly established. *Griggs v. Brewer*, 841 F.3d 308, 312–13 (5th Cir. 2016). "In excessive force cases, 'the second prong of the analysis is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law.'" *Id.* (quoting *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005)). As discussed, Plaintiffs and Intervenors have sufficiently alleged a constitutional violation against Alobaidi. *Supra* pp. 17–19.

The next question is whether the alleged constitutional violation was clearly established, and if so, whether Alobaidi's conduct was objectively unreasonable. "An official violates clearly established law if 'then-existing precedent' establishes that the officer's conduct constituted a constitutional violation." *Boyd v. McNamara*, 74 F.4th 662, 667 (5th Cir. 2023) (quoting *City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 11 (2021)). Various Fifth Circuit cases put Alobaidi on notice that his actions constituted unconstitutionally excessive force. For example, in *Hanks v. Rogers*, the Fifth Circuit held that "an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance, and whom the officer stopped for a minor traffic violation." 853 F.3d 738, 747 (5th Cir. 2017). Likewise, in *Ramirez v. Martinez*, the Fifth Circuit held that it was a violation of the plaintiff's clearly established constitutional rights where the officer tased the plaintiff twice, even though the plaintiff pulled his arm out of the officer's grasp and exchanged profanities with the officer. 716 F.3d 369, 378–79 (5th Cir. 2013). Even where a seemingly intoxicated suspect failed to follow an officer's instructions, the Fifth Circuit held it was "clearly established that it was objectively unreasonable for several officers to tackle an individual who was not fleeing, not violent, not aggressive, and only resisted by pulling his arm away from an officer's grasp." *Trammell*, 868 F.3d at 343.

These cases put Alobaidi on notice that he could not constitutionally drive-stun a handcuffed, disoriented, non-violent suspect who had just been in a car accident. Anderson trying to keep the door to the patrol vehicle open "did not, standing alone, constitute the kind of threatening behavior or belligerence that justifies the use of force." *See Boyd v. McNamara*, 74 F.4th 662, 668 (5th Cir. 2023) (holding that *Ramirez*, *Hanks*, and *Trammel* put an officer on notice that "he could not constitutionally fire a taser at a non-threatening, compliant subject" even after

19

the plaintiff had jerked his hand away because he was in pain). Furthermore, even assuming that it was objectively reasonable for Alobaidi to drive-stun Anderson once to subdue him enough to close the door of his patrol vehicle, it was certainly not objectively reasonable to then drive-stun Anderson at least three more times in quick succession without pausing to see if Anderson was subdued enough to close the door. Therefore, the Court finds that Alobaidi is not entitled to qualified immunity with respect to the excessive force claims at this stage of the litigation.

### iii. Deputy Page

Page argues that Plaintiffs and Intervenors did not sufficiently plead an excessive force claim against him. Doc. #172 at 6–8; Doc. #238 at 7–9. As to the first element of an excessive force claim, Plaintiffs and Intervenors clearly allege an injury because they allege Page's actions caused Anderson's death. *See Trammell*, 868 F.3d at 340. In addition, Plaintiffs and Intervenors allege that Page placed Anderson in a "chokehold" or "choked" him. Doc. #30 ¶ 33; Doc. #233 ¶ 202. However, these allegations are clearly contradicted by the video evidence before the Court, which at no point shows Page placing Anderson in a chokehold or at all choking him. *See supra* p. 4 n.5. Instead, the video shows that Page put his hands on the back of Anderson's neck while trying to get him to sit upright in the patrol vehicle. *Id.* Given that Anderson was struggling to sit upright in the patrol vehicle and his position may have been causing him more distress, it was not excessive nor unreasonable for Page to put his hands on the back of Anderson's neck to assist him in sitting upright. *See Graham*, 490 U.S. at 396 (noting that determining whether force is excessive depends on the "facts and circumstances" of the particular case). Thus, Plaintiffs and Intervenors have not sufficiently alleged excessive force claims against Page, and those claims must therefore be dismissed.

## 2. Bystander Liability: Excessive Force

"[A]n officer may be liable under § 1983 under a theory of bystander liability where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (quoting *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002)). Bystander liability requires more than mere presence in the vicinity of the violation; the Fifth Circuit also considers whether an officer "acquiesced in" the alleged constitutional violation. *Id.* at 647. With respect to qualified immunity, "Fifth Circuit case law requires a plaintiff pursuing a § 1983 claim based on a theory of bystander liability to show that the bystander officer had a clearly established constitutional duty to intervene, in addition to showing the acting officer was violating a clearly established constitutional right." *Howard v. City of Hous., Tex.*, No. CV H-21-1179, 2022 WL 479940, at *12 (S.D. Tex. Feb. 16, 2022) (citing *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020)).

### i. Deputies Garcia, Estrada, and Page

The Court will address the excessive force bystander liability claims asserted against Garcia, Estrada, and Page together because their motions for dismissal present similar facts and arguments. Doc. Nos. 163, 168, 172, 233, 234, 238. Particularly, Garcia, Estrada, and Page each move to dismiss the bystander liability claims asserted against them based on qualified immunity. *Id.* The Court has already determined that Plaintiffs and Intervenors have sufficiently pleaded claims for excessive force against Alobaidi for drive-stunning Anderson. *Supra* pp. 17–20. That is the only instance of excessive force that Plaintiffs and Intervenors have identified that the remaining Deputy Defendants could be held liable for under a bystander liability theory.

The Court now turns to the first prong of the qualified immunity analysis, which asks whether "the facts alleged show the officer's conduct violated a constitutional right." *Saucier*, 533 U.S. at 201. With regard to the drive-stun incident, Plaintiffs allege that all of the Deputy Defendants moved Anderson from Estrada's car to Alobaidi's car. Doc. #30 ¶ 30. Plaintiffs also allege that shortly after Anderson was moved, Alobaidi threatened to tase Anderson before drive-stunning him multiple times, covering a span of about two minutes. *Id.* ¶¶ 31–33. Plaintiffs further allege that Garcia, Estrada, and Page "viewed the excessive force used against Mr. Anderson" and "had time to intervene yet failed to do so." *Id.* ¶ 98. Plaintiffs specifically allege that "Deputies Page, Garcia and Estrada failed in their duty to stop Alobaidi from drive stunning Mr. Anderson." *Id.* ¶ 104. Intervenors allege that, shortly before the drive-stun incident, Garcia, Estrada, and Page "manhandle[d]" Anderson to place him fully inside Alobaidi's vehicle. Doc. #233 ¶ 178. Intervenors also allege that Estrada, Garcia, and Page are "responsible for bystander liability during the episodes of use of force where" Alobaidi threatened to tase Anderson and tased Anderson. *Id.* ¶¶ 234, 238, 242. In their Amended Complaint, Intervenors allege that Alobaidi drive-stunned Anderson multiple times "in the span of just two minutes." *Id.* ¶ 196.

Drawing all reasonable inferences in favor of Plaintiffs and Intervenors, the Court finds that they have sufficiently alleged bystander liability claims because they alleged that Estrada, Garcia and Page knew Alobaidi was violating Anderson's constitutional rights, and they had a reasonable opportunity to prevent the harm but chose not to. *See Whitley*, 726 F.3d at 646. In addition, when an official witnesses the use of excessive force, as is alleged here, and does "nothing to stop it, an inference is raised that they acquiesced in the attack." *Rivera v. Cameron Cnty., Tex.*, No. 1:19-CV-141, 2021 WL 8531607, at *8 (S.D. Tex. Jan. 27, 2021) (citing *Whitley*,

726 F.3d at 646). Thus, the Court finds that Plaintiffs and Intervenors have sufficiently alleged a constitutional violation.

Because Estrada, Garcia, and Page have asserted qualified immunity, the law must be clearly established such that, as of the date that Anderson was drive-stunned by Alobaidi, "any reasonable officer would have known that the Constitution required them to intervene." *Joseph on behalf of Est. of Joseph*, 981 F.3d at 345. It is clearly established law that "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). The Fifth Circuit has noted that "*Hale* is clearly established law that provides fair notice to officers of their duty to intervene, rather than to acquiesce, in the unconstitutional conduct of others." *Austin v. City of Pasadena, Tex.*, 74 F.4th 312, 331 (5th Cir. 2023). In light of this clearly established law, it was objectively unreasonable for Estrada, Garcia, and Page to fail to intervene when Alobaidi drive-stunned Anderson multiple times. At this stage of the case, Estrada, Garcia, and Page are not entitled to qualified immunity with respect to Plaintiffs' and Intervenors' bystander liability claims based on excessive force.

### ii. Deputy Alobaidi

The Court has held Plaintiffs and Intervenors have sufficiently pleaded an excessive force claim against Alobaidi for drive-stunning Anderson. An officer may only be liable under Section 1983 under a bystander liability theory where the officer "knows that a *fellow* officer is violating an individual's constitutional rights." *Whitley*, 726 F.3d at 646 (emphasis added). Thus, because Plaintiffs and Intervenors have not sufficiently alleged an instance of excessive force by any of the other Deputy Defendants, they have not sufficiently alleged a bystander liability claim against

Alobaidi. Accordingly, the bystander liability claims asserted against Alobaidi premised on failure to intervene are dismissed.

### 3. Failure to Provide Medical Care

The Deputy Defendants separately move to dismiss Plaintiffs' and Intervenors' Section 1983 claims for failure to provide medical care. Doc. Nos. 163, 234, 168, 235, 172, 238, 175, 236. Particularly, each of the Deputy Defendants argue that Plaintiffs and Intervenors have not sufficiently plead a failure to provide medical care claim and assert qualified immunity. As a matter of efficiency and clarity, the Court analyzes the Deputy Defendants' failure to provide medical care arguments simultaneously due to their similar facts and application of law.

To assert a Section 1983 claim, a plaintiff must allege facts demonstrating that: (1) the defendant violated the Constitution or federal law; and (2) the defendant was acting under the color of state law while doing so. *Gomez*, 446 U.S. at 640. Under the Fourteenth Amendment's Due Process Clause, "pretrial detainees have a constitutional right . . . not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001). When the claim is failure to provide reasonable medical care to a pretrial detainee, "deliberate indifference" means that (1) the official "was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed" and (2) "the official drew that inference." *Allen v. Hays*, 65 F.4th 736, 747 (5th Cir. 2023). Courts may not infer deliberate indifference "merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 457. "Deliberate indifference remains 'an extremely high standard.'" *Allen*, 65 F.4th at 747 (quoting *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020)).

Plaintiffs allege that, after Alobaidi drive-stunned Anderson, he became unresponsive.

24

Doc. #30 ¶ 83. Plaintiffs further allege that each of the Deputy Defendants "were objectively and subjectively aware that failing to render timely medical and necessary treatment or call for an ambulance to transport him to a hospital . . . posed an extreme risk of harm." *Id.* Further, Plaintiffs allege that, despite this knowledge, the Deputy Defendants "continued with their unreasonable decision to withhold timely medical treatment." *Id.* Likewise, Intervenors allege that each of the Deputy Defendants were "deliberately indifferent to the medical needs" of Anderson. Doc. #233 ¶¶ 287, 315, 343, 371 376. Intervenors also allege that the Deputy Defendants "could have allowed Mr. Anderson to be taken by the emergency medical technicians to a care facility but made a choice to not allow him access to proper medical care" and "did not facilitate and/or promote and/or insist on the transport of Mr. Anderson to a care facility but rather the [JPC]." *Id.* ¶¶ 143, 207. Taking all of these allegations as true, the Court finds that Plaintiffs and Intervenors have not sufficiently alleged a failure to provide medical care claim.

Given that EMS was on the scene and available to evaluate Anderson, both when he initially got in the car accident and after the drive-stun incident, Plaintiffs and Intervenors allegations amount to, at best, negligence by the Deputy Defendants in not *insisting* that EMS take Anderson to a hospital. *See Thompson*, 245 F.3d at 457 (holding that deliberate indifference cannot be inferred from "negligent or even a grossly negligent response to a substantial risk of serious harm"). These allegations do not meet the "extremely high" deliberate indifference standard. *See Allen*, 65 F.4th at 747. Thus, Plaintiffs' and Intervenors' failure to provide medical care claims are dismissed.

### 4. Bystander Liability: Failure to Provide Medical Care

The Deputy Defendants also seek dismissal of Intervenors' bystander liability claims based

on failure to provide medical care.[9] Doc. #233 ¶¶ 373–94. In order for an officer to be liable under a theory of bystander liability pursuant to Section 1983, the officer must know that a fellow officer is violating an individual's constitutional rights. *Whitley*, 726 F.3d at 646. As discussed, the Court has found that Intervenors failed to sufficiently allege a failure to provide medical care claim, and thus there is no constitutional violation. Because Intervenors' failure to provide medical care claims fail, so too do their bystander liability claims.

### 5. Leave to Amend

The Court also notes that Plaintiffs requested leave to amend only in response to Garcia's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. #168). The request for leave is based on the fact that "Plaintiffs have amended their complaint only once" and "Federal Rule of Civil Procedure 15(a)(2) states that the 'court should freely give leave [to amend] when justice so requires.'" Doc. #188 at 19. However, a "bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought, *cf.* FED. R. CIV. P. 7(b)—does not constitute a motion within the contemplation of Rule 15(a)." *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (internal quotations and citation omitted); *see also Douglas v. DePhillips*, 740 F. App'x 403, 406 (5th Cir. 2018) (unpublished) (denying leave to amend because the plaintiffs "failed to set forth with sufficient particularity the grounds for the amendment"). Thus, Plaintiffs' request for leave is denied because they do not state with particularity their grounds for amendment.

### IV.    Conclusion

In conclusion, the Court finds that Harris County's Motion to Dismiss Plaintiffs' First

---

[9] Nowhere in Plaintiffs' Amended Complaint do they assert bystander liability claims based on failure to provide medical care. *See* Doc. #30.

Amended Complaint is GRANTED IN PART. Doc. #167. Harris County's Motion to Dismiss Intervenors' Amended Complaint is GRANTED. Doc. #237. Accordingly, the Court finds that the following claims are DISMISSED: (1) the state law tort claims Plaintiffs and Intervenors have asserted against the Deputy Defendants, (2) the state law claims Plaintiffs and Intervenors have asserted against Harris County, (3) the Eighth Amendment claims Plaintiffs and Intervenors have asserted against Harris County pursuant to Section 1983, (4) Plaintiffs' and Intervenors' claims for punitive and exemplary damages against Harris County, and (5) Intervenors' survival claim against Harris County.

Furthermore, the Court finds that each of the Deputy Defendants' Motions are GRANTED IN PART. Doc. Nos. 163, 234, 168, 235, 172, 238, 175, 236. Plaintiffs' and Intervenors' excessive force claims, failure to provide medical care claims, and bystander liability claims based on failure to provide medical care against Estrada, Garcia, and Page are DISMISSED. However, Plaintiffs and Intervenors have stated plausible bystander liability claims for failure to intervene against Estrada, Garcia, and Page. As to Alobaidi, Plaintiffs and Intervenors have failed to state a claim for failure to provide medical care and bystander liability, and those claims are therefore DISMISSED. However, Plaintiffs have stated plausible excessive force claims against Alobaidi.

Finally, Garcia's Motion for Leave (Doc. #161), Garcia's Motion for Judgment (Doc. #169), Alobaidi's Motion for Judgment (Doc. #176), and Plaintiffs and Intervenors' Motion to Strike (Doc. #226) are DENIED as MOOT.

It is so ORDERED.

MAR 0 8 2024
_____
Date

_____
The Honorable Alfred H. Bennett
United States District Judge

27